# Exhibit A-2

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                 Plaintiff                              Case No: 21CV01942

       vs                                             Division:   7

                                                       K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
                 Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for BLUE VALLEY SCHOOL DISTRICT
USD 229 whose address for service is:

      15020 METCALF AVE
      OVERLAND PARK, KS 66223

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

SB40 PETITION

                                  By: /s/ LINUS L BAKER
                                  LINUS L BAKER, #18197
                                  6732 W 185TH TER
                                  STILWELL, KS 660858922
                                  913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                   Plaintiff                              Case No: 21CV01942

         vs                                            Division:   7

                                               K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
                    Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for BLUE VALLEY BOARD OF
EDUCATION whose address for service is:

     15020 METCALF AVE
     OVERLAND PARK, KS 66223

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

By: /s/ LINUS L BAKER
LINUS L BAKER, #18197
6732 W 185TH TER
STILWELL, KS 660858922
913-486-3917

*Clerk of the District Court, Johnson County Kansas*
*05/03/21  01:59pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                Plaintiff

    vs

BLUE VALLEY SCHOOL DISTRICT USD 229
           Defendant

Case No: 21CV01942
Division:   7
K.S.A. Chapter 60

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for LAURA BREWER whose address for service is:

    150 W. SANTA FE ST
    OLATHE, KS 66061

Certified mail service by the undersigned attorney, who understands that it is their responsibility to obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the Clerk's office to prove service.

By: /s/ LINUS L BAKER
LINUS L BAKER, #18197
6732 W 185TH TER
STILWELL, KS 660858922
913-486-3917

*Clerk of the District Court, Johnson County Kansas*
*05/03/21  01:59pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                    Plaintiff                    Case No: 21CV01942
        vs                                       Division:  7
                                                 K.S.A. Chapter 60
BLUE VALLEY SCHOOL DISTRICT USD 229
                    Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS and PETITION in this action for AMY TYSSELING whose address for
service is:

        15020 METCALF AVE
        OVERLAND PARK, KS 66223


Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.


SB40


                                By: /s/ LINUS L BAKER
                                LINUS L BAKER, #18197
                                6732 W 185TH TER
                                STILWELL, KS 660858922
                                913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                              Plaintiff                          Case No: 21CV01942
             vs                                                  Division:   7
                                                                 K.S.A. Chapter 60
BLUE VALLEY SCHOOL DISTRICT USD 229
                              Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for OLATHE PUBLIC SCHOOLS USD 233
whose address for service is:

        4160 BLACK BOB ROAD
        OLATHE, KS 66063

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

                              By: /s/ LINUS L BAKER
                              LINUS L BAKER, #18197
                              6732 W 185TH TER
                              STILWELL, KS 660858922
                              913-486-3917

                                                    *Clerk of the District Court, Johnson County Kansas*
                                                    *05/03/21  01:59pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                Plaintiff                          Case No: 21CV01942

      vs                                          Division:   7
                                                        K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
                Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for OLATHE PUBLIC SCHOOLS BOARD
OF EDUCATION whose address for service is:

     4160 BLACK BOB ROAD
     OLATHE, KS 66063

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

SB40 PETITION

                              By: /s/ LINUS L BAKER
                              LINUS L BAKER, #18197
                              6732 W 185TH TER
                              STILWELL, KS 660858922
                              913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT


TERRI E BAKER

               Plaintiff                                Case No: 21CV01942

      vs                                                Division:   7

                                                 K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
               Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS and PETITION in this action for JOE BEVERIDGE whose address for service is:

     4160 BLACK BOB ROAD
     OLATHE, KS 66063


Certified mail service by the undersigned attorney, who understands that it is their responsibility to obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the Clerk's office to prove service.


SB40


                          By: /s/ LINUS L BAKER
                          LINUS L BAKER, #18197
                          6732 W 185TH TER
                          STILWELL, KS 660858922
                          913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

               Plaintiff                             Case No: 21CV01942

       vs                                        Division:   7

                                              K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
               Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for BOARD OF COMMISSIONERS OF
JOHNSON COUNTY, KANSAS whose address for service is:

      111 SOUTH CHERRY, SUITE 3300
      OLATHE, KS 66061

Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.

SB 40 PETITION

                                   By: /s/ LINUS L BAKER
                                   LINUS L BAKER, #18197
                                   6732 W 185TH TER
                                   STILWELL, KS 660858922
                                   913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                    Plaintiff

          vs

                                                    Case No: 21CV01942
                                                    Division:   7
                                                    K.S.A. Chapter 60

BLUE VALLEY SCHOOL DISTRICT USD 229
                    Defendant

REQUEST AND SERVICE INSTRUCTION FORM

To:  Clerk of the District Court:

Please issue a SUMMONS and PETITION in this action for JOHNSON COUNTY DEPARTMENT OF HEALTH AND ENVIRONMENT whose address for service is:

          111 SOUTH CHERRY, SUITE 3300
          OLATHE, KS 66061

Certified mail service by the undersigned attorney, who understands that it is their responsibility to obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the Clerk's office to prove service.

                    By: /s/ LINUS L BAKER
                    LINUS L BAKER, #18197
                    6732 W 185TH TER
                    STILWELL, KS 660858922
                    913-486-3917

*Clerk of the District Court, Johnson County Kansas*
*05/03/21  01:59pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

TERRI E BAKER

                        Plaintiff                      Case No: 21CV01942
        vs                                             Division:   7
                                                       K.S.A. Chapter 60
BLUE VALLEY SCHOOL DISTRICT USD 229
                        Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS and PETITION in this action for SANMI AREOLA whose address for
service is:

        111 SOUTH CHERRY, SUITE 3300
        OLATHE, KS 66061


Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.


                              By: /s/ LINUS L BAKER
                              LINUS L BAKER, #18197
                              6732 W 185TH TER
                              STILWELL, KS 660858922
                              913-486-3917

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT


TERRI E BAKER

                    Plaintiff                              Case No: 21CV01942
          vs                                              Division:   7
                                                          K.S.A. Chapter 60
BLUE VALLEY SCHOOL DISTRICT USD 229
                    Defendant


REQUEST AND SERVICE INSTRUCTION FORM


To:  Clerk of the District Court:


Please issue a SUMMONS and PETITION in this action for TENTH JUDICIAL DISTRICT whose
address for service is:

          150 W. SANTA FE ST
          OLATHE, KS 66061


Certified mail service by the undersigned attorney, who understands that it is their responsibility to
obtain service and to make the return to the clerk.  The postal receipt for service must be filed with the
Clerk's office to prove service.


SB40


                              By: /s/ LINUS L BAKER
                              LINUS L BAKER, #18197
                              6732 W 185TH TER
                              STILWELL, KS 660858922
                              913-486-3917


*Clerk of the District Court, Johnson County Kansas*
*05/03/21  01:59pm MM*

21CV01942
Div7

# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

BAKER, TERRI E ET AL,
    Plaintiff,

            Case No. 21CV01942
vs.           Division 7
            KSA Chapter 60
BLUE VALLEY SCHOOL DISTRICT USD 229, ET AL,

    Defendant,

## ORDER

   In reviewing the active case docket, the court has set the captioned matter for a status

conference on **May 6, 2021, 02:30pm**, Division 7. <u>Failure to appear at that time may result in</u>

<u>dismissal of the case or entry of judgment without further notice.</u> The plaintiff shall provide

notice of this hearing date and the failure to appear warning to all other parties and file a

certificate of service. This notice is not to be construed as an extension of any time limits

otherwise imposed by law.  If you are not represented by counsel a personal appearance is

required.

         /s/ David W. Hauber
         DAVID W. HAUBER
         District Court Judge, Div. 7

## NOTICE OF SERVICE

Copies of the above and foregoing have been sent by the court to counsel and/or self-represented
litigants at the email address(es) provided by them as of record this date of filing.

*Clerk of the District Court, Johnson County Kansas*
*05/03/21  04:32pm NG*

21CV01942
Div7

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

Terri E. Baker and her special
needs son "Silo" et al,

                  Plaintiffs,

    vs.

Blue Valley et al

             Defendants.

Case No. 21CV01942
Div 7

### <u>Second Brief in Support of SB 40 Relief</u>

### "Petition" and "Action" In SB40 Mean It is an Independent Action

SB 40 states that a plaintiff "may file a *civil action* in the district court" and "the court shall conduct a hearing within 72 hours after receipt of a *petition* in any such *action.*"[1] SB40 provides a specific venue provision for this independent action.

The word "action" and "petition" in Kansas, as well as every other jurisdiction, is a legal term of art in law. "A civil 'action' is a well understood term of art under the Federal Rules of Civil Procedure." *O'Neal v. Price*, 531 F.3d 1146, 1156 (9th Cir. 2008). An "action" is commenced by filing a petition. "A civil action is commenced at the time

---

[1] The determination of whether a private right of action exists under a statute is a question of law. *Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004). A private right of action exists if the legislature intended to give such a right.  Id.

of: (1) Filing a petition with the court, if service of process is obtained."
K.S.A. 60-203. *See also TLI, Inc. v. United States*, 100 F.3d 424, 427 (5th
Cir.1996) ("an 'action' in its usual legal sense means a lawsuit brought in
a court; a formal complaint brought within the jurisdiction of a court of
law. Rule 3 of the Federal Rules of Civil Procedure, titled 'Commencement
of Action,' defines it thus: A civil action is commenced by filing a complaint
with the court").

A party commences a judicial proceeding when he takes the first
step that invokes the judicial process.  See Black's Law Dictionary 183
(6th ed.1991) (defining "commence" as "[t]o initiate by performing the first
act or step; [t]o begin, institute or start"); *See United States v. Currency*,
330 F.3d 141, 159 (3d Cir. 2003) ("the word commence does not encompass
broad concepts, but rather requires 'invocation of the judicial process.'")
"Used in a statute, the term 'action' traditionally connotes a formal
adversarial proceeding under the jurisdiction of a court of law." *Peterson
v. Cont'l Cas. Co.*, 282 F.3d 112, 119-20 (2d Cir.2002). "The phrase 'bring
an action' is defined as 'to sue; institute legal proceedings.'" *Jonathan H.
v. The Souderton Area School Dist.*, 562 F.3d 527, 530 (3d. Cir. 2009)
(quoting Black's Law Dictionary (8th ed. 2004)).

If the legislature had intended "action" to mean something it normally is not (such as "appeal" or ""judicial review") it would have said so but did not. The "rule of statutory interpretation that the expression of one thing excludes the other." *In re W.H.,* 274 Kan. 813, 823, 57 P.3d 1 (2002). "Actions" are not appeals, motions, or applications. *S.E.C. v. McCarthy*, 322 F.3d 650, 657 (9th Cir.2003) (An "application" is not a "lawsuit" or a "formal complaint." It does not necessarily include or trigger "all the formal proceedings in a court of justice" as does the filing of an "action").

And correlating to the word and "petition" only "actions" are permitted to be consolidated K.S.A. 60-242. Clearly "petition" does not mean "appeal." See K.S.A. 60-203  (action commenced with "filing a petition with the court"). "Action" and "Petition" of course go together hand in glove in filing an original action.

The legal and equitable relief requested in this petition should be granted as to each plaintiff.

3

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

Certificate of Service

The Court's order has been emailed to the parties on May 4, 2021, and a copy of this supporting memorandum provided to counsel who have entered their appearance.

4       *Clerk of the District Court, Johnson County Kansas*
        *05/04/21  11:51am ML*

21CV01942
Div7

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

| | |
|---|---|
| BAKER, TERRI, et al.,      ) | |
| ) | |
| Plaintiffs,     ) | |
| ) | |
| v.     ) | Case No. 21CV01942 |
| ) | Division 7 |
| BLUE VALLEY BOARD OF     ) | |
| EDUCATION, et al.,     ) | |
| ) | |
| Defendants.     ) | |

### VERIFIED ANSWER OF NAMED DEFENDANTS OLATHE
### PUBLIC SCHOOLS USD 233 AND OLATHE BOARD OF EDUCATION

COME NOW these separately named defendants, Olathe Public Schools USD 233 and

Olathe Board of Education (collectively "Olathe School District" and/or "Olathe BOE"

respectively) and for this their Verified Answer to the Verified Petition for Legal and Equitable

Relief ("Petition") allege and state as follows:

[sic]    1.      There are no allegations made against these defendants in paragraph 1 of the

Petition that require an answer. To the extent an answer is required, defendants state that SB 40

speaks for itself.

[sic]    2.      There are no allegations made against these defendants in paragraph 2 of the

Petition that require an answer. To the extent an answer is required, defendants state that SB 40

speaks for itself.

[sic]    3.      With respect to the allegations contained in paragraph 3 of the Petition, these

defendants have insufficient information to admit or deny the allegations made against the Blue

Valley School District.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

[sic]   4.      There are no allegations made against these defendants in paragraph 4 of the Petition that require an answer. To the extent an answer is required, defendants state that SB 40 speaks for itself.

[sic]   5.      Defendants deny the allegations contained in paragraph 5 of the Petition.

[sic]   6.      Defendants deny the allegations contained in paragraph 6 of the Petition.

[sic]   7.      Defendants deny the allegations contained in paragraph 7 of the Petition.

[sic]   8.      With respect to the allegations contained in paragraph 8 of the Petition, defendants state that grievants have been timely notified and have been provided a hearing.

[sic]   9.      Defendants deny the allegations contained in paragraph 9 of the Petition.

[sic]   10.     Defendants deny the allegations contained in paragraph 10 of the Petition.

[sic]   11.     With respect to the allegations contained in paragraph 11 of the Petition, defendants state that SB 40 speaks for itself.

[sic]   12.     Defendants deny the allegations contained in paragraph 12 of the Petition.

[sic]   13.     Defendants deny the allegations contained in paragraph 13 of the Petition.

[sic]   14.     Defendants deny the allegations contained in paragraph 14 of the Petition.

[sic]   15.     Defendants deny the allegations contained in paragraph 15 of the Petition.

With respect to the unnumbered paragraphs between paragraph 15 and before "Parties" there are no allegations made against these defendants such that an answer is not required. To the extent these paragraphs could be construed to make allegations against these defendants, these defendants deny the allegations in their entirety.

16.     With respect to the allegations contained in paragraph 1 on page 8 of the Petition, the allegations are admitted.

17.     The allegations contained in paragraph 2 of the Petition are admitted.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

18.    The allegations contained in paragraph 3 of the Petition are admitted.

19.    With respect to the allegations contained in paragraph 4 of the Petition, defendants admit that Mr. Snider filed a request for another hearing identical to his first request, and that second request for hearing was denied as authorized by SB 40.

20.    With respect to the allegations contained in paragraph 5 of the Petition, defendants admit that CarrieAnn Baumgarten is a resident of Johnson County, Kansas, resides in the Olathe School District, and is the parent of E.B. and J.B., students in the Olathe School District. The balance of the allegations are denied.

21.    The allegations contained in paragraph 6 of the Petition are admitted.

22.    The allegations contained in paragraph 7 of the Petition are admitted.

23.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 8 of the Petition and therefore deny same.

24.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 9 of the Petition and therefore deny same.

25.    Defendants are without sufficient information to admit or deny the allegations contained in "paragraph 18" of the Petition and therefore deny the same. This paragraph 18 appears to be mis-numbered and appears out of order between paragraph 9 and paragraph 10 of Plaintiff's petition.

26.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 10 of the Petition and therefore deny same.

27.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 11 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

28.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 12 of the Petition and therefore deny same.

29.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 13 of the Petition and therefore deny same.

30.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 14 of the Petition and therefore deny same.

31.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 15 of the Petition and therefore deny same.

32.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 16 of the Petition and therefore deny same.

33.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 17 of the Petition and therefore deny same.

34.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 18 of the Petition and therefore deny same.

35.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 19 of the Petition and therefore deny same.

36.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 20 of the Petition and therefore deny same.

37.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 21 of the Petition and therefore deny same.

38.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 22 of the Petition and therefore deny same.

{0261508.DOCX}

39.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 23 of the Petition and therefore deny same.

40.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 24 of the Petition and therefore deny same.

41.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 25 of the Petition and therefore deny same.

42.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 26 of the Petition and therefore deny same.

43.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 27 of the Petition and therefore deny same.

44.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 28 of the Petition and therefore deny same.

45.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 29 of the Petition and therefore deny same.

46.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 30 of the Petition and therefore deny same.

47.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 31 of the Petition and therefore deny same.

48.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 32 of the Petition and therefore deny same.

49.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 33 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

50.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 34 of the Petition and therefore deny same.

51.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 35 of the Petition and therefore deny same.

52.     With respect to the allegations contained in paragraph 36 of the Petition, these defendants state that defendant Olathe Public Schools USD 233 is not the real party in interest. The real party in interest is Unified School District No. 233, Johnson County, Kansas.

53.     With respect to the allegations contained in paragraph 37 of the Petition, these defendants admit that the Olathe School District has a Board of Education.

54.     The allegations contained in paragraph 38 in the Petition are admitted.

55.     The allegations contained in paragraph 39 in the Petition are admitted.

56.     The allegations contained in paragraph 40 in the Petition are admitted.

57.     The allegations contained in paragraph 41 in the Petition are admitted.

58.     The allegations contained in paragraph 42 in the Petition are admitted.

59.     The allegations contained in paragraph 43 in the Petition are admitted.

60.     The allegations contained in paragraph 44 in the Petition are admitted.

61.     The allegations contained in paragraph 45 in the Petition are admitted.

62.     The allegations contained in paragraph 46 in the Petition are admitted.

63.     The allegations contained in paragraph 47 in the Petition are admitted.

64.     With respect to the allegations contained in paragraph 48 of the Petition, upon information and belief, the allegations are admitted.

65.     With respect to the allegations contained in paragraph 49 of the Petition, defendants admit that SB 40 became effective on or about March 25, 2021.

6

{0261508.DOCX}

66.     With respect to the allegations contained in paragraph 50 of the Petition, defendants state that SB 40 speaks for itself.

67.     With respect to the allegations contained in paragraph 51 of the Petition, defendants state that SB 40 speaks for itself.

68.     With respect to the allegations contained in paragraph 52 of the Petition, defendants state that SB 40 speaks for itself.

69.     With respect to the allegations contained in paragraph 53 of the Petition, defendants state that SB 40 speaks for itself.

70.     With respect to the allegations contained in paragraph 54 of the Petition, defendants state that SB 40 speaks for itself.

71.     The allegations contained in paragraph 55 of the Petition are denied.

72.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 56 of the Petition and therefore deny same.

73.     With respect to the allegations contained in paragraph 57 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

74.     With respect to the allegations contained in paragraph 58 of the Petition, defendants admit that the Olathe School Board referred to KDHE guidelines but otherwise has insufficient information to admit or deny the balance of the allegations.

75.     With respect to the allegations contained in paragraph 59 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

76.     With respect to the allegations contained in paragraph 60 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

7

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

77.     With respect to the allegations contained in paragraph 61 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

78.     With respect to the allegations contained in paragraph 62 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

79.     The allegations contained in paragraph 63 of the Petition are denied.

80.     The allegations contained in paragraph 64 of the Petition are denied.

81.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 65 of the Petition and therefore deny same.

82.     With respect to the allegations contained in paragraph 66 of the Petition, defendants deny each and every allegation except those allegations hereinbefore specifically admitted.

83.     With respect to the allegations contained in paragraph 67 of the Petition, defendants state that SB 40 speaks for itself and allows the utilization of a hearing officer to conduct a hearing.

84.     The allegations contained in paragraph 68 of the Petition are denied.

85.     The allegations contained in paragraph 69 of the Petition are denied.

86.     The allegations contained in paragraph 70 of the Petition are denied.

87.     With respect to the allegations contained in paragraph 71 of the Petition, defendants state that a quorum of a Board of Education was not required to conduct the hearing of the grievances filed by Joshua Snider and CarrieAnn Baumgarten.

88.     The allegations contained in paragraph 72 of the Petition are denied.

89.     The allegations contained in paragraph 73 of the Petition are denied.

90.     The allegations contained in paragraph 74 of the Petition are denied.

91.     The allegations contained in paragraph 75 of the Petition are denied.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

92.     With respect to the allegations contained in paragraph 76 of the Petition, K.S.A. 75-4317a speaks for itself.

93.     The allegations contained in paragraph 77 of the Petition are denied.

94.     The allegations contained in paragraph 78 of the Petition are denied.

95.     The allegations contained in paragraph 79 of the Petition are denied.

96.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 80 of the Petition and therefore deny same.

97.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 81 of the Petition and therefore deny same.

98.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 82 of the Petition and therefore deny same.

99.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 83 of the Petition and therefore deny same.

100.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 84 of the Petition and therefore deny same.

101.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 85 of the Petition and therefore deny the same.

102.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 86 of the Petition and therefore deny same.

103.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 87 of the Petition and therefore deny same.

104.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 88 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

105.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 89 of the Petition and therefore deny same.

106.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 90 of the Petition and therefore deny same.

107.    With respect to the allegations contained in paragraph 91 of the Petition, defendants deny each and every allegation except those allegations hereinbefore specifically admitted.

108.    With respect to the allegations contained in paragraph 92 of the Petition, the SB 40 grievance submitted by Joshua Snider speaks for itself.

109.    With respect to the allegations contained in paragraph 93 of the Petition, the SB 40 grievance submitted by CarrieAnn Baumgarten speaks for itself.

110.    There are no allegations made against these defendants in paragraph 94 of the Petition that require an answer. To the extent an answer is required, defendants state T.M. Snider submitted an exemption request that was granted and thus he is not required to wear a mask as a condition of attending school in the Olathe School District.

111.    With respect to the allegations contained in paragraph 95 of the Petition, defendants admit that CarrieAnn Baumgarten has submitted a second grievance to the defendants, which is pending and not ripe.

112.    With respect to the allegations contained in paragraph 96 of the Petition, defendants admit that Joshua Snider and T.M. Snider sought an exemption from the requirement to wear a mask, supplied medical verification, and that request was granted.

113.    The allegations contained in paragraph 97 of the Petition are denied.

114.    The allegations contained in paragraph 98 of the Petition are denied.

115.    The allegations contained in paragraph 99 of the Petition are denied.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

116.    The allegations contained in paragraph 100 of the Petition are denied.

117.    The allegations contained in paragraph 101 of the Petition are denied.

118.    The allegations contained in paragraph 102 of the Petition are denied.

119.    The allegations contained in paragraph 103 of the Petition are denied.

120.    The allegations contained in paragraph 104 of the Petition are denied.

121.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 105 of the Petition and therefore deny same.

122.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 106 of the Petition and therefore deny same.

123.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 107 of the Petition and therefore deny same.

124.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 108 of the Petition and therefore deny same.

125.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 109 of the Petition and therefore deny same.

126.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 110 of the Petition and therefore deny same.

127.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 111 of the Petition and therefore deny same.

128.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 112 of the Petition and therefore deny same.

129.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 113 of the Petition and therefore deny same.

11

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

130.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 114 of the Petition and therefore deny same.

131.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 115 of the Petition and therefore deny same.

132.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 116 of the Petition and therefore deny same.

133.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 117 of the Petition and therefore deny same.

134.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 118 of the Petition and therefore deny same.

135.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 119 of the Petition and therefore deny same.

136.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 120 of the Petition and therefore deny same.

137.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 121 of the Petition and therefore deny same.

138.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 122 of the Petition and therefore deny same.

139.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 123 of the Petition and therefore deny same.

140.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 124 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

141.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 125 of the Petition and therefore deny same.

142.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 126 of the Petition and therefore deny same.

143.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 127 of the Petition and therefore deny same.

144.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 128 of the Petition and therefore deny same.

145.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 129 of the Petition and therefore deny same.

146.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 130 of the Petition and therefore deny same.

147.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 131 of the Petition and therefore deny same.

148.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 132 of the Petition and therefore deny same.

149.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 133 of the Petition and therefore deny same.

150.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 134 of the Petition and therefore deny same.

151.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 135 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

152.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 136 of the Petition and therefore deny same.

153.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 137 of the Petition and therefore deny same.

154.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 138 of the Petition and therefore deny same.

155.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 139 of the Petition and therefore deny same.

156.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 140 of the Petition and therefore deny same.

157.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 141 of the Petition and therefore deny same.

158.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 142 of the Petition and therefore deny same.

159.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 143 of the Petition and therefore deny same.

160.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 144 of the Petition and therefore deny same.

161.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 145 of the Petition and therefore deny same.

162.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 146 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

163.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 147 of the Petition and therefore deny same.

164.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 148 of the Petition and therefore deny same.

165.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 149 of the Petition and therefore deny same.

166.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 150 of the Petition and therefore deny same.

167.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 151 of the Petition and therefore deny same.

168.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 152 of the Petition and therefore deny same.

169.    There are no allegations made against these defendants in paragraph 153 that require an answer. To the extent an answer is required, the allegations are denied.

170.    The allegations contained in paragraph 154 of the Petition are denied.

171.    The allegations contained in paragraph 155 of the Petition are denied.

172.    The allegations contained in paragraph 156 of the Petition are denied.

173.    The allegations contained in paragraph 157 of the Petition are denied.

174.    The allegations contained in paragraph 158 of the Petition are denied.

175.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 159 of the Petition and therefore deny same.

176.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 160 of the Petition and therefore deny same.

{0261508.DOCX}

177.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 161 of the Petition and therefore deny same.

178.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 162 of the Petition and therefore deny same.

179.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 163 of the Petition and therefore deny same.

180.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 164 of the Petition and therefore deny same.

181.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 165 of the Petition and therefore deny same.

182.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 166 of the Petition and therefore deny same.

183.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 167 of the Petition and therefore deny same.

184.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 168 of the Petition and therefore deny same.

185.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 169 of the Petition and therefore deny same.

186.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 170 of the Petition and therefore deny same.

187.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 171 of the Petition and therefore deny same.

16

{0261508.DOCX}

188.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 172 of the Petition and therefore deny same.

189.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 173 of the Petition and therefore deny same.

190.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 174 of the Petition and therefore deny same.

191.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 175 of the Petition and therefore deny same.

192.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 176 of the Petition and therefore deny same.

193.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 177 of the Petition and therefore deny same.

194.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 178 of the Petition and therefore deny same.

195.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 179 of the Petition and therefore deny same.

196.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 180 of the Petition and therefore deny same.

197.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 181 of the Petition and therefore deny same.

198.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 182 of the Petition and therefore deny same.

{0261508.DOCX}

199.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 183 of the Petition and therefore deny same.

200.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 184 of the Petition and therefore deny same.

201.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 185 of the Petition and therefore deny same.

202.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 186 of the Petition and therefore deny same.

203.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 187 of the Petition and therefore deny same.

204.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 188 of the Petition and therefore deny same.

205.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 189 of the Petition and therefore deny same.

206.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 190 of the Petition and therefore deny same.

207.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 191 of the Petition and therefore deny same.

208.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 192 of the Petition and therefore deny same.

209.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 193 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

210.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 194 of the Petition and therefore deny same.

211.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 195 of the Petition and therefore deny same.

212.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 196 of the Petition and therefore deny same.

213.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 197 of the Petition and therefore deny same.

214.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 198 of the Petition and therefore deny same.

215.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 199 of the Petition and therefore deny same.

216.    With respect to the allegations contained in paragraph 200 of the Petition, defendants state that Administrative Order 2021-PR-021 speaks for itself.

217.    With respect to the allegations contained in paragraph 201 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

218.    With respect to the allegations contained in paragraph 202 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

219.    With respect to the allegations contained in paragraph 203 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

220.    With respect to the allegations contained in paragraph 204 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

221.    The allegations contained in paragraph 205 of the Petition are denied.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

222.    There are no allegations made against these defendants in paragraph 206 of the Petition that require an answer. To the extent an answer is required, the allegations are denied.

223.    Defendants deny each and every other allegation contained in the Petition except those allegations hereinbefore specifically admitted.

## AFFIRMATIVE DEFENSES

1.    The Petition fails to state claims upon which relief can be granted, including for the reason that the Petition filed by plaintiffs was not verified as required by Administrative Order 21-01 signed by Chief Justice Thomas Kelly Ryan.

2.    The Petition should be dismissed for the reason plaintiffs have failed to meet the requirements for consolidation as provided by K.S.A. 60-242.

3.    The court lacks jurisdiction over these defendants for the reason of insufficiency of process and insufficiency of service of process.

4.    One or more of the claims of plaintiff Baumgarten is barred for like of ripeness and failure to exhaust administrative remedies.

5.    One or more of plaintiffs' claims is barred by immunity.

6.    One or more of the claims of plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B. and J.B. are barred by consent, acquiescence, waiver and estoppel. Further the claims of plaintiffs Joshua Snider and T.M. Snider are moot for the reason that T.M. was allowed to opt out of the defendants' facemask requirement after he submitted an exemption form on April 16, 2021.

7.    The claims of plaintiffs Joshua Snider and T.M. Snider are barred by the expiration of the applicable statute of limitations for the reason that their requests or grievances were not filed within thirty (30) days of the action taken, order issued, or policy adopted by the Olathe BOE as

20

provided by SB 40 and thus those requests or grievances are time-barred. Plaintiff Joshua Snider submitted his request for hearing on April 2, 2021, which was not within thirty (30) days after the Olathe BOE originally adopted its policy on August 6, 2020 requiring facemasks and reaffirmed on February 4, 2021. See Exhibit A attached. The Olathe BOE dismissed Snider's request on April 12, 2021, for the reasons that the request was time-barred, plaintiff Snider lacked standing, and for the further reason that the policy adopted by the Olathe BOE was narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. See Exhibit B attached.

8.     The claims of plaintiffs CarrieAnn Baumgarten, E.B., and J.B. are barred by the expiration of the applicable statute of limitations for the reason that their requests or grievances were not filed within thirty (30) days of the action taken, order issued, or policy adopted by the Olathe BOE as provided by SB 40 and thus those requests or grievances are time-barred. Plaintiff CarrieAnn Baumgarten submitted her request for hearing on April 8, 2021, which was not within thirty (30) days after the Olathe BOE originally adopted its policy on August 6, 2020 requiring facemasks and reaffirmed on February 4, 2021. See Exhibit C attached. The Olathe BOE dismissed Baumgarten's request on April 19, 2021, for the reasons that the request was time-barred, plaintiff Baumgarten lacked standing, and for the further reason that the policy adopted by the Olathe BOE was narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. See Exhibit D attached.

9.     The action taken, order issued, or policy adopted by the Olathe BOE with respect to facemasks is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose.

21

{0261508.DOCX}

10.      Plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B., and J.B. lack standing retrospectively to challenge the defendants' policy mandating facemasks that was adopted prior to the March 25, 2021 effective date of SB 40.

11.      Further answering, defendants state that the Petition fails to include factual allegations with specificity indicating how the plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B., and J.B. are substantially burdened or inhibited by specific provisions of any policies or orders issued by the defendants and/or the nature of "its business or individual activities so burdened" as required by Administrative Order No. 21-01.

12.      Further answering, defendants state that the Petition fails to show with specificity and not by mere conclusory language, how plaintiffs' burden is substantially different from the burden upon persons or entities similarly situated who are not included on the Petition, all as required by Administrative Order No. 21-01.

13.      Further answering, defendants state that the Petition does not adequately specify how the defendants' policy, which is the subject matter of this action, could be more narrowly tailored to respond to the disaster emergency addressed by the policy under review and suggests less restrictive means, if any, to achieve such purposes—all as required Administrative Order No. 21-01.

14.      Further answering, defendants state that plaintiffs have failed to certify whether they had an opportunity to appear and be heard prior to the adoption or issuance of the order or policy under review and, if so, whether they did appear and express their agreed burden and whether they suggested the alternatives expressed in the Petition—all as required by Administrative Order No. 21-01.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

15.     Further answering, to the extent the Petition seeks injunctive relief, the Petition fails to include all of the factual allegations necessary to support each and every element for injunctive relief.

16.     Further answering, only Count 3 asserted against these defendants is subject to an expedited hearing as provided by SB 40.

17.     SB 40 is unconstitutional in that it unduly interferes with or hamstrings the local school board in performing its constitutional duty under Kan. Const. at 6, Section 5 to maintain, develop, and operate the local public school system and control school district property.

18.     SB 40 is unconstitutional in that it requires a local school board's action, order, or policy relating to COVID-19 to be narrowly tailored using the least restrictive means even though such action does not involve a suspect class or impinge upon a fundamental right.

19.     Defendants reserve the right to raise additional affirmative defenses as discovery progresses.

**WHEREFORE,** having answered, these defendants pray that plaintiffs take nothing by their Petition, and that these defendants be discharged with their attorneys' fees, costs and expenses, and for such other relief as this Court deems just and equitable.

**NORRIS KEPLINGER HICKS & WELDER, LLC**

By:

Michael G. Norris, #07247
mnorris@nkfirm.com
Courtney McCray, #28347
cmccray@nkfirm.com
9225 Indian Creek Parkway
32 Corporate Woods, Suite 750

Overland Park, Kansas 66210
(913) 663-2000
(913) 663-2006 (Fax)
**ATTORNEYS FOR DEFENDANTS**
**UNIFIED SCHOOL DISTRICT NO. 233,**
**JOHNSON COUNTY, KANSAS AND**
**OLATHE BOARD OF EDUCATION**

## CERTIFICATE OF SERVICE

    I hereby certify that on this ___4___ day of _May_ , 2021 the above and foregoing
was filed via the court's electronic filing system (ECF), and a copy sent via electronic mail on to
the following:

Mr. Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
(913) 486-3913
(913) 232-8734 (Fax)
linusbaker@prodigy.net
**Attorney for Plaintiffs**

**Attorney for Defendants Unified School**
**District No. 233, Johnson County, Kansas**
**and Olathe Board of Education**

24

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

{0261508.DOCX}

## **VERIFICATION**

STATE OF KANSAS        )
                       )        ss:
COUNTY OF Johnson      )

The undersigned, being first duly sworn upon his oath, states that the factual information

in the foregoing Verified Answer of Named Defendants Olathe Public Schools USD 233 and

Olathe Board of Education is true and correct to the best of his knowledge, information and belief.

By: _____

**Christopher A. Pittman | Staff Counsel**
**Olathe Public Schools**

**SUBSCRIBED AND SWORN** to before me, a Notary Public in the aforesaid county and

state, on this 4th day of May, 2021.



_____
NOTARY PUBLIC

My Commission Expires:

April 14, 2022

{0261508.DOCX}

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

## Olathe Public Schools COVID-19 Health Emergency Hearing
## Request Form

Kansas Senate Bill No. 40 grants authority to the Olathe Public School District Board of Education to take any action, issue any order, or adopt any policy in response to a COVID-19 state of disaster emergency, which affects the operation of any school or attendance center of the school district.

An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued, or policy adopted by the Board of Education of the District or an action of an employee of the District violating any such action, order, or policy, may request a hearing by the District's Board of Education to contest the action taken, order issued, or policy was adopted by the Board of Education within thirty (30) days of the action.

The District's Board of Education designee will conduct a hearing for a valid request will occur within three (3) business days of receiving a request for hearing. USD 233 deems the request is filed once this form is properly filled out and turned into the Clerk of the Board at 14160 S Black Bob Road, Olathe, KS, or by email to jbondurantec@olatheschools.org. Requests received after the close of regular business hours, which is 5:00 p.m., will be deemed received at the start of the next business day.

All hearings shall be open to the public in accordance with the open meetings act K.S.A. 75-4317.

The District's Board of Education will issue a decision within seven (7) days after the hearing is conducted.

**REQUESTOR'S PERSONAL INFORMATION (Please Print):**

*Name: __Joshua Snider__

Please check which status you fall under: ___Student ___Employee _X_Parent/Guardian
___Other (Please specify) _____

*Email: __kumaximus@gmail.com__

*Home Address: _____

City: __Lenexa__     State: __KS__     Zip Code: __66227__

*Phone Numbers: (Cell)_____     _____Work:_____

*Student(s) Name: __Th__     _____

*School(s) of Attendance: _____

*Employee (Department or school site): __Olathe Board of Education__

**\*CONTESTED ACTION:**

Mask/Face Covering Mandate for my student

**\*DATE OF THE BOE MEETING OF CONTESTED ACTION:**
April 1st, 2021 (Ongoing order in lockstep with Johnson County Mask Mandate) — Johnson County, Kansas
05/04/21  03:28pm MI

EXHIBIT
A

*HOW WERE YOU AGRIEVED BY THE ACTION:

My son has complained of chronic headaches since the implementation of the mask

mandate.

_____

_____

_____

*WHAT RESOLUTION ARE YOU REQUESTING:

I want my son to be opted out of the Olathe School District's Mask Mandate.

_____

_____

_____

Please provide or attach any supportive documentation or information you wish to be to be considered.

In order to be considered, all documentation needs to be provided before the conclusion of the hearing.

_____        04/02/2021
Requestor's Signature                                                    Date

*REQUIRED INFORMATION

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

# Olathe Public Schools #233
# Minutes of Meeting

**Virtual Meeting**                                                      **April 12, 2021**
**Olathe Public Schools YouTube video**                          **Special Meeting**
                                                                            **8:00 a.m.**

| | |
|---|---|
| **Presiding Officer:** | Joe Beveridge, President |
| **Members:** | Joe Beveridge, Brian Geary |
| | Brad Boyd; LeEtta Felter; Brent McCune; |
| | Kristin Schultz; Shannon Wickliffe |

**MINUTES - Special Board of Education Meeting**
The Olathe Public School's Board of Education held a Special Meeting on Monday, April 12, 2021.  The meeting was held virtually.
A live broadcast was available on www.olatheschools.org.

**MEETING OPENING**
1.01 Call to Order and Roll Call
The meeting was called to order at 8:01 p.m.
Members present: Joe Beveridge, Brian Geary, LeEtta Felter, Brent McCune, Kristin L Schultz, Shannon Wickliffe
Member absent: Brad Boyd

**SENATE BILL 40 HEARING OFFICER REPORT**
2.01 Senate Bill 40 Hearing Officer Report and Discussion
Dr. Jim McMullen presented his report and made a recommendation to the board regarding the Senate Bill 40 Hearing that was held on April 6, 2021.

Mr. Beveridge asked if there was any discussion. With no questions or comments, a motion was requested.

**ACTION**
3.01 Action regarding April 6, 2021 Public Hearing
Motion by Brent McCune, second by LeEtta Felter to move that the Board of Education find that the hearing requests are dismissed on the basis that the complainant's either lack standing or the requests were not timely submitted under Senate Bill 40, and that the Board of Education maintain the mask requirement set out in the Public Health Recommendations for Safe School Reopening originally adopted on August 6, 2020 and reaffirmed on February 4, 2021. This action approved the return to full-time, in-person learning for secondary students with mitigation strategies, including masking, in place for the safety of students and staff on the basis that it is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to do so. Final Resolution: Motion Carries
Yes: Joe Beveridge, Brian Geary, LeEtta Felter, Brent McCune, Kristin L Schultz, Shannon Wickliffe

**ADJOURNMENT**
4.01 Adjournment
The special meeting was adjourned at 8:08 a.m.

_____              _____
Joe Beveridge, President                         Joy Bondurant, Clerk

EXHIBIT

B

ALL-STATE LEGAL®

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

## Olathe Public Schools COVID-19 Health Emergency Hearing
## Request Form

Kansas Senate Bill No. 40 grants authority to the Olathe Public School District Board of Education to take any action, issue any order, or adopt any policy in response to a COVID-19 state of disaster emergency, which affects the operation of any school or attendance center of the school district.

An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued, or policy adopted by the Board of Education of the District or an action of an employee of the District violating any such action, order, or policy, may request a hearing by the District's Board of Education to contest the action taken, order issued, or policy was adopted by the Board of Education within thirty (30) days of the action.

The District's Board of Education designee will conduct a hearing for a valid request will occur within three (3) business days of receiving a request for hearing. USD 233 deems the request is filed once this form is properly filled out and turned into the Clerk of the Board at 14160 S Black Bob Road, Olathe, KS, or by email to jbondurantec@olatheschools.org. Requests received after the close of regular business hours, which is 5:00 p.m., will be deemed received at the start of the next business day.

All hearings shall be open to the public in accordance with the open meetings act K.S.A. 75-4317.

The District's Board of Education will issue a decision within seven (7) days after the hearing is conducted.

---

**REQUESTOR'S PERSONAL INFORMATION (Please Print):**

*Name: **CarrieAnn Baumgarten**

Please check which status you fall under:  ☐ Student  ☐ Employee  ☑ Parent/Guardian
☐ Other (Please specify) _____

*Email: **carrieann71272@yahoo.com** _____

*Home Address: **5** _____

City: **Olathe** _____    State: **KS**    Zip Code: **66061**

*Phone Numbers: (Cell) _____    Work: **N/A** _____

*Student(s) Name: · _____

*School(s) of Attendance: · ____  __ · _____

*Employee (Department or school site): · _____

*CONTESTED ACTION:
Mandatory mask wearing while at school.

_____
_____
_____

*DATE OF THE BOE MEETING OF CONTESTED ACTION: _____

*HOW WERE YOU AGRIEVED BY THE ACTION:
It is not conducive to my childrens physical, emotional or mental health to continue to have to

My children are not able to properly focus during school as a result of the masks.

My children are not able to properly focus during school as a result of the masks.



EXHIBIT
C
ALL-STATE LEGAL

*Clerk of the District Court, Johnson County Kansas*
4-8-05/04/21 02:28pm ML

*WHAT RESOLUTION ARE YOU REQUESTING:

Initially, my children are exempt from wearing a face mask at school.

Secondarly, the mask mandate for school is lifted for all children.

Secondarly, the mask mandate for school is lifted for all children.

Please provide or attach any supportive documentation or information you wish to be to be considered.

In order to be considered, all documentation needs to be provided before the conclusion of the hearing.

Requestor's Signature _____   Date 4/8/21

*REQUIRED INFORMATION

-This document is subject to Kansas Open Records Requests-

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

# Olathe Public Schools #233
# Minutes of Meeting

**Virtual Meeting**                                    April 19, 2021
**Olathe Public Schools YouTube video**          Special Meeting
                                                       8:00 a.m.

**Presiding Officer:**      Joe Beveridge, President
**Members:**                Joe Beveridge, Brian Geary
                            Brad Boyd; LeEtta Felter; Brent McCune;
                            Kristin Schultz; Shannon Wickliffe

**MINUTES – Special Board of Education Meeting**
The Olathe Public School's Board of Education held a Special Meeting on Monday, April 19, 2021.  The meeting was held virtually.
A live broadcast was available on www.olatheschools.org.

**MEETING OPENING**
1.01 Call to Order and Roll Call
The meeting was called to order at 8:00 p.m.
Members present: Joe Beveridge, Brian Geary, Brad Boyd, LeEtta Felter, Brent McCune, Kristin L Schultz, Shannon Wickliffe

**SENATE BILL 40 HEARING OFFICER REPORT**
2.01 Senate Bill 40 Hearing Officer Report and Discussion
Dr. Jim McMullen presented his report and made a recommendation to the board regarding the Senate Bill 40 Hearing that was held on April 12, 2021.

Mr. Beveridge asked if there was any discussion. With no questions or comments, a motion was requested.

**ACTION**
3.01 Action regarding April 12, 2021 Public Hearing
Motion by Shannon Wickliffe, second by Kristin Schultz:  Upon receipt and review of the hearing officer's report, his findings and recommendation following the April 12 public hearing of the request of CarrieAnn Baumgarten, I move that the Board of Education deny and dismiss her request on the basis that the complaint lacks standing and her request was not timely submitted as required by Senate Bill 40, and further, the District's previously adopted face mask policy is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to do so. Final Resolution: Motion Carries
Yes: Joe Beveridge, Brian Geary, Brad Boyd, LeEtta Felter, Brent McCune, Kristin L Schultz, Shannon Wickliffe

**ADJOURNMENT**
4.01 Adjournment
The special meeting was adjourned at 8:04 a.m.

_____              _____
Joe Beveridge, President              Joy Bondurant, Clerk



EXHIBIT

D

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  02:28pm ML*

21CV01942
Div7

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

| | |
|---|---|
| Terri E. Baker, Silo Baker, Joshua Snider et. al.<br>      Plaintiffs, | )<br>)<br>)<br>) |
| v. | )  Case No. 21CV01942<br>)  Div. 7 |
| Blue Valley Board of Education, Blue Valley School District USD 229, et. al.<br>      Defendants. | )<br>)<br>)<br>)<br>) |

### Blue Valley Defendants' Joint Answer
### To Plaintiffs' Petition For Legal And Equitable Relief Under 2021 Senate Bill 40

Defendants Blue Valley U.S.D. 229, Blue Valley Board of Education, Amy Tysseling in her official capacity, Stacy Obringer-Varhall in her official capacity, Tom Mitchell in his official capacity, Patrick Hurley in his official capacity, Jodie Dietz in her official capacity, and Michele Benjamin in her official capacity (collectively these defendants will be referred to as "Blue Valley Defendants"), state the following as their Joint Answer to Plaintiffs' Petition under SB 40 (the "petition"). The only admissions contained herein are express admissions.

This answer responds solely to Plaintiffs' allegations and claims purportedly asserted under SB 40. Blue Valley Defendants do not waive but rather hereby retain and reserve their right to respond to Plaintiffs' allegations and claims asserted under other laws—Counts 6, 7, 8, 9, and 10—as provided in applicable civil rules. Blue Valley Defendants will file a responsive pleading to Plaintiffs' non-SB 40 claims, Counts 6-10, within the time set forth in K.S.A. § 60-212.

### Overview of SB 40 and Relief

The section of Plaintiffs' petition entitled "Overview of SB 40 and Relief"—which spans pages 1 to 8 of Plaintiffs' petition and ends right before the section entitled "Parties"—consists solely of legal argument and demands for relief. Accordingly, no response is required. To the extent a response is required, Blue Valley Defendants deny each allegation and statement

contained in the "Overview of SB 40 and Relief." Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

## PARTIES

1.      Joshua Snider is a resident of Johnson County Kansas, resides in the Olathe School district, and is the parent of T.M. Snider, a student at Canyon Creek Elementary in the Olathe School district.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 1 and therefore deny the same.

2.      T.M. Snider is the son of Joshua Snider.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 2 and therefore deny the same.

3.      The Olathe School Board denied his grievance on April 12, 2021.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 3 and therefore deny the same.

4.      Mr. Snider filed a second grievance with the Olathe School Board who refused to provide a hearing for that grievance.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 4 and therefore deny the same.

5.      CarrieAnn Baumgarten is a resident of Johnson County Kansas, resides in the Olathe School district, and is the parent of E.B. and J.B., students in the Olathe School district. In addition to SB40 relief, CarrieAnn seeks injunctive relief to require the Olathe School Board to provider her a hearing conducted at a meeting of the school board on her second SB40 grievance regarding quarantining her son.

2

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 5 and therefore deny the same.

6.    E.B. and J.B. are children of CarrieAnn Baumgarten.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 6 and therefore deny the same.

7.    Olathe School Board denied her grievance on April 19, 2021.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 7 and therefore deny the same.

8.    Julie Myrick is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 8.

9.    R.F. and L.P. are children of Julie Myrick and students in the Blue Valley school system.

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 9.

18.    Julie Myrick's grievances were denied by the Blue Valley School Board on April 13, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph "18", which is a mis-numbered paragraph.

10.    Rebecca Campbell is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 10.

11.    C.A.C., C.C., D.C., M.C., and R.C. are children of Rebecca Campbell.

3

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 11.

12.     Rebecca Campbell's grievance was denied by the Blue Valley School Board on April 27, 2021.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 12.

13.     Rebecca Campbell's children are classified as special needs students by Blue Valley pursuant to K.S.A. 72-3403 et. seq.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 13.

14.     Holly J. Rook is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 14.

15.     C.W.C. and C.C are children of Holly Rock and attend the Blue Valley School Sunrise.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 15; further answering, Ms. Rook's children attend Sunrise Point Elementary School.

16.     Holly Rook's SB 40 grievances were denied by the Blue Valley School Board on April 21, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 11.

17.     Matthew Couch is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 16.

18.     G.C. and J.C. are children of Matthew Couch and attend the Blue Valley School Sunrise.

4

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 18.

19.    Mathew Couch's SB 40 grievances were heard by Zoom conference on May 3, 2021. Couch was not provided a SB40 hearing conducted by a quorum of the Blue Valley School Board and, in addition to SB40, relief, seeks injunctive relief against Blue Valley to require a SB40 hearing conducted by a quorum of the Blue Valley School Board.

**RESPONSE:** Blue Valley Defendants admit Mr. Couch's SB 40 grievance was heard in a live hearing over Zoom videoconference on May 3, 2021. Blue Valley Defendants deny the remaining allegations contained in Paragraph 19.

20.    Laura Klingensmith is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 20.

21.    K.K. is the child of Laura Klingensmith and attends a Blue Valley school.

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 21.

22.    Klingensmith's SB 40 grievance was denied by the Blue Valley School Board on April 13, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 22.

23.    Terri E. Baker is a resident of Johnson County Kansas, resides in the Blue Valley School district, and is a parent of her six year old son Silo (pseudonym) who was and is enrolled in the Blue Valley School district (student number 10140955) as a special needs child pursuant to K.S.A. 72-3403 et seq.

**RESPONSE:** Blue Valley Defendants admit Ms. Baker is a resident of Johnson County, Kansas and resides in the Blue Valley U.S.D. 229 and is a parent/guardian of Silo who is currently

5

enrolled in Blue Valley U.S.D. 229 as a student with an IEP. Blue Valley Defendants deny the remaining allegations contained in Paragraph 23. Further answering, Blue Valley states that Silo was not enrolled in Blue Valley U.S.D. 229 at the time Ms. Baker filed her SB 40 grievance.

24. Terri's SB 40 grievance was denied by the Blue Valley School Board on April 13, 2021. Terri filed a second grievance which the Blue Valley School Board refused to conduct a hearing upon.

**RESPONSE:** Blue Valley Defendants admit the Blue Valley Board of Education denied Ms. Baker's first SB 40 grievance on April 8, 2021. Blue Valley Defendants admit the Blue Valley Board of Education did not conduct a hearing on Ms. Baker's second purported grievance under SB 40. Blue Valley Defendants deny the remaining allegations contained in Paragraph 24.

25. Silo was given an Individual Education Program (IEP) by the Blue Valley United School District on or about 4/27/2020, and it remains in effect until Blue Valley changes or eliminates it.

**RESPONSE:** Blue Valley Defendants admit Silo has an IEP dated on or about April 27, 2020. Blue Valley Defendants deny the remaining allegations contained in Paragraph 25.

26. Blue Valley School District USD 229 is a school district in Johnson County Kansas.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 26.

27. Brian Daley is an employee of Blue Valley and the records custodian designated by Blue Valley.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 27.

28. Blue Valley Board of Education is the board of education for Blue Valley School District USD 229.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16331584.1

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 28.

29.     Amy Tysseling is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 29.

30.     Mike Seitzis a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 30.

31.     Stacy Obringer-Varhall is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 31.

32.     Tom Mitchell is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 32.

33.     Patrick Hurley is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 33.

34.     Jodie Dietz is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 34.

35.     Michele Benjamin is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 35.

36.     Olathe Public Schools USD 233 is a school district in Johnson County Kansas.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 36.

37.     Olathe Public Schools Board of Education is the board of education for the Olathe Public Schools USD 233.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 37.

38.     Joe Beveridge is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 38.

39.     Brad Boyd is a board member of the Olathe Public Schools Board of Education.

7

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 39.

40.    LeEtta Felter is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 40.

41.    Brian Geary is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 41.

42.    Brent McCune is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 42.

43.    Kristin Schultz is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 43.

44.    Shannon Wickliffe is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 44.

45.    The Board of Commissioners of Johnson County, Kansas (the "County Board") is the legislative authority with administrative oversight of the Johnson County Department of Health and Environment. The County Board has legal authority to sue and be sued.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 45.

46.    Johnson County Department of Health and Environment is a department of Johnson County. Sanmi Areola is the director of the Johnson County Department of Health and Environment and is sued in his official capacity.

8

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 46.

47.     The Tenth Judicial District is a creation of the Kansas Constitution, which provides that the state be divided into judicial districts and that each judicial district have at least one district judge. There are 31 judicial districts in the state of Kansas.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 47.

48.     Laura Brewer is the records custodian for the Tenth Judicial District.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 48.

### 2021 SB 40

49.     The Kansas Senate finalized SB 40 on March 25, 2021.

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 49.

50.     SB 40 states in part that a local board of education in the only entity with authority to "take any action, issue any order or adopt any policy made or taken in response to" the Covid-19 health emergency that affects the operation of any school or attendance center of any school.

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 50.

51.     One example is an action or policy that "mandates any action by any students or employees of a school district while on school property."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 51.

52.     SB 40 states in part that "a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1)... may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was taken, order was issued or policy was adopted by the board of education."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 52.

53.     SB 40 provides that any parent or student "aggrieved" by the decision of a Board of Education  "may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the board."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 53.

54.     SB 40 states that "the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the board of education is narrowly tailored to

10

respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 54.

55.    All of the plaintiffs submitted grievances to each respective defendant Board of Education and are now aggrieved by the decisions of each Board of Education as defined under SB 40.

**RESPONSE:** Blue Valley Defendants lack sufficient knowledge regarding all of the plaintiffs in this action and therefore deny the allegations contained in Paragraph 55.

56.    Each of the plaintiffs have timely filed their respective SB40 claims in this Court of which this Court now has jurisdiction.

**RESPONSE:** Blue Valley Defendants lack sufficient knowledge regarding "each" of the plaintiffs in this action and therefore deny the allegations contained in Paragraph 56.

**School Policies on Masks**

57.    The Kansas Department of Education (KSDE) published "Navigating Change: Kansas Guide to Learning and School Safety Operations." The Navigating Change Operations did not provide requirements or contain mandates but instead provided guidance: "suggestions" and "best practices." In the prefatory letter from Dr. Randy Watson, he described it as a "guidance provides multiple options in order to help facilitate district-level discussions as contingency plans are developed." See attached Navigation Change Policy.

**RESPONSE:** Blue Valley Defendants admit Plaintiffs appear to have attached an accurate copy of KSDE's "Navigating Change" document. The remaining allegations in Paragraph 67

11

amount to legal argument and therefore Blue Valley Defendants deny the remaining allegations contained in Paragraph 57.

58.    The Blue Valley School District adopted the KSDE Navigating Change guidance policy as its own policy regarding mask wearing by students. The Olathe School Board referred to the KDHE guidelines which also refer to the Navigating Change policy but is unknown what written policy the Olathe School Board has adopted regarding student masking.

**RESPONSE:** Blue Valley Defendants admit that on August 18, 2020 the Blue Valley Board of Education voted to adopt the KSDE Navigating Change 2020 gating criteria utilizing local district data where available; further answering, Blue Valley U.S.D. 229 admits it has enforced its mask requirement since August 2020. Blue Valley Defendants are without knowledge sufficient to form a belief regarding Olathe School Board's actions and therefore deny the same. Blue Valley Defendants deny the remaining allegations contained in Paragraph 58.

59.    The Navigating Change policy on masks provides for individualized exemptions and does not require 100% participation of all students. In fact, the Navigating Change policy does not require any student to wear a mask – it only suggests "best practices." Moreover, the Navigating Change policy does not require mask wearing at all but that the school "strongly encourage masks or cloth face coverings."

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 59.

60.    The Navigating Change policy not only does not mandate continuous mask wearing by students, it provides discretion for a school not do so. For example, the Navigating policy specifically provides discretion for allowing "mask breaks." As to athletics, mask are suggested

12

"when 6 feet of personal distance isn't feasible." Similarly, in the performing arts mask are not suggested if there is "6 feet of personal distance" that is feasible. Regarding orchestra and bands, it suggests that masks should be used "when feasible" and that "when masks are not feasible, utilize outdoor locations and/or large indoor locations allowing for increased personal distance of greater than 6 feet," For theatre it states to "use masks or cloth face coverings when safety guidelines are in conflict with social distancing (.e.g. ladders, lighting rigs)." The audience is not required to wear masks but instead "strongly encourage audience members to wear masks or cloth face coverings."

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 60.

61.    The Navigating Change policy in fact provides that masks should not be required of any one student under certain conditions. It states mask should be worn inside school "**unless it inhibits the person's ability to perform his or her job, inhibits a student's ability to participate in the educational process** or is disruptive to the educational environment." "The person's ability" is an individualized exemption.

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 61.

62.    Thus, by its own terms the Navigating Change policy does not suggest or mandate any one student be required to wear a mask when it inhibits that particular student's ability to participate in the educational process.

13

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 62.

63.    All of the plaintiffs in this lawsuit were and are aggrieved because mask wearing for their student child inhibited and now inhibits the student's respective ability to participate in the educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 63.

64.    Yet their respective teachers and principals of the plaintiff students at each respective school refuse to follow the Navigating Change policy by still requiring each aggrieved student to wear a mask even though it is inhibiting each aggrieved student's participation in the educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 63.

65.    Blue Valley also has a de facto policy of allowing an unlimited number of students to attend school without a mask depending on qualifying for its medical reason exemption.

**RESPONSE:** Blue Valley Defendants admit that Blue Valley U.S.D. offers students a medical exemption process for the mask requirement. Blue Valley Defendants deny the remaining allegations contained in Paragraph 65.

### COUNT 1
### Statutory Right to Privacy and Violation of Student Privacy Joshua and T.M Snider / CarrieAnn Baumgarten E.B. J.B. v Olathe Board of Education and Board Members

66.    Plaintiffs Joshua and T.M. Snider (collectively referred to as "Joshua") and CarrieAnn Baumgarten E.B. J.B. (collectively as CarrieAnn) restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 65 of the petition.

14

67.     SB40 requires that any SB40 hearing be conducted in the context of a board of education meeting which must be open to the public.  Instead, the Olathe Board of Education (referred to as "OBE") decided to utilize a different procedure utilizing what it called a "hearing officer" to conduct a conference not during a board of education meeting.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 67.

68.     Joshua and CarrieAnn provided the OBE their respective grievances which contained information that was private under OBE board policy and the statutory authority cited therein. It contained student data as enumerated in K.S.A. 72-6313.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 68.

69.     OBE then chose to use an OBE employee to act as a "hearing officer" and then to conduct a conference on Joshua's and CarrieAnn's SB40 grievances in which the "hearing officer" would operate in a quasi-judicial manner. Under this made up procedure, the "hearing officer" would present his "recommendations" and "findings" to a quorum meeting of OBE in which OBE would then decide.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 69.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16531384.1

70.     OBE was not authorized to use a so-called "hearing officer" under SB 40 or to use an OBE employee to operate as a "hearing officer" to hear Joshua's and CarrieAnn's grievances. OBE chose to utilize a conference in which to address those grievances which OBE published.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 70.

71.     OBE only has two types of meetings: regular and special. Each meeting requires a quorum. There was no quorum present when the hearing officer conducted his conference with Joshua and CarrieAnn's grievances.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 71.

72.     Instead of conducting a meeting, OBE voluntary chose not to have the matter heard by a meeting of the OBE Board but instead to conduct a conference which was not a meeting and was not a meeting which was subject to any open meeting requirement.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 72.

73.     OBE has a Policy that requires minutes for all meetings. OBE did not identify Joshua's and CarrieAnn's grievances so called "hearing" as a meeting and consequently identifies no minutes for that conference.

16

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 73.

74.     There was no meeting in which OBE conducted a hearing.  There was no quorum of the Board present – there were no members of the Board present when both parents were required to present private student information.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 74.

75.     OBE stated in its SB 40 hearing request form that "All hearings shall be open to the public in accordance with the open meetings act K.S.A. 75-4317" but OBE did not comply with that statute because it did not conduct a hearing during a meeting of the OBE.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 75.

76.     Under 75-4317a. "Meeting" is defined as "any gathering or assembly in person or through the use of a telephone or any other medium for interactive communication by a majority of the membership of a public body or agency subject to this act for the purpose of discussing the business or affairs of the public body or agency."

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 76.

17

77.     At Joshua's and CarrieAnn's conference, there was not a majority of the membership of OBE present and those no "meeting" occurred that would be subject to an open meetings requirement.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 77.

78.     SB 40 required the Board to conduct a meeting to hear Joshua's and CarrieAnn's grievances but failed to do so. Instead, it chose not to meet but to have a hearing conducted by one of its employees it called a "hearing officer" quasi-judicial manner which cannot be delegated by the Board to an employee it calls a "hearing officer." Because there was no meeting, there was no requirement to conduct that conference as though it were subject to the open meeting requirement of SB 40. OBE should have conducted that hearing in private but failed to do so.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 78.

79.     Joshua and CarrieAnn and their student children had their rights of privacy violated and should not have been required to disclose private student information at the conference conducted by the OBE employee.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 79.

### COUNT 2
**Right to Privacy and Violation of Student Privacy Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children, Laura and son v Blue Valley Board of Education and Board Members**

18

80.     Plaintiffs Terri Baker (Terri) and Silo Baker, Rebecca Campbell (Rebecca) and her plaintiff student children, Holly Rook (Holly) and her plaintiff student children, and Julie Myrick (Julie) and her plaintiff student children, Matthew and his sons, restate and incorporate by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 80 of the petition.

81.     Terri and Julie provided Blue Valley their respective grievances which contained information that was private under Blue Valley policy 3905 and the statutory authority cited therein. It contained student data as enumerated in K.S.A. 72-6313.

**RESPONSE:** Blue Valley Defendants admit Ms. Baker and Ms. Myrick chose to include information about their children in their grievances. The remaining allegations contained in Paragraph 81 amount to legal conclusions and argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the remaining allegations contained in Paragraph 81.

82.     Blue Valley then chose to delegate its SB40 hearing obligations to a third party attorney, Roger Warren (Warren). Blue Valley made up this procedure not found in SB40 for Warren to act as a "hearing officer" and then to conduct a Zoom conference on Terri's and Julie's SB 40 grievances in which the hearing officer would operate in a quasi-judicial manner. The Blue Valley board was not authorized by the Kansas Senate under SB40 to delegate its obligation to meet and hear these grievances to a third party it calls a "hearing officer."

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 appointed Roger Warren as a hearing officer to preside over an SB40 hearing involving Ms. Baker's and Ms.

19

Myrick's grievances. Blue Valley Defendants deny the remaining allegations contained in Paragraph 82.

83.    Similarly, Blue Valley chose to hire a third party, Kevin Moriarty (Moriarty) to act as a "hearing officer" and then to conduct a Zoom conference on Holly's and Rebecca's respective SB 40 grievances.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 appointed Hon. Kevin Moriarty as a hearing officer to preside over an SB40 hearing involving Ms. Rook's and Ms. Campbell's grievances. Blue Valley Defendants deny the remaining allegations contained in Paragraph 83.

84.    Blue Valley then provided Warren and Moriarty with Terri's, Rebecca's, and Holly's grievances which contained private information covered under policy 3905.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 provided Warren and Moriarty the grievances that formed the basis for the SB40 hearings over which they respectively presided. Blue Valley Defendants deny the remaining allegations contained in Paragraph 84.

85.    Blue Valley was not authorized to create its "hearing officer" process under SB 40 and was not authorized to hire Warren or Moriarty to function or operate as a meeting of the board of education to hear those plaintiff parents respective SB 40 grievances.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 85.

86.    The Blue Valley Board only has two types of meetings: regular and special. Each meeting requires a quorum constituting four members.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 86.

20

87.     Instead of conducting a meeting, Blue Valley voluntary chose not to have the matter heard by a meeting of the Board but instead to conduct a Zoom conference which was not a meeting and not a meeting subject to an open meeting requirement.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 87.

88.     Policy 1690 requires minutes for all meetings. Blue Valley did not identify the April 7, 2021, Zoom conference as a meeting and consequently identifies no minutes for that hearing.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 88.

89.     There was no meeting on April 7, 2021, in which Warren conducted a hearing. There was no quorum of the Board present – there were no members of the Board present.

**RESPONSE:** The allegations in this paragraph amount to legal argument and conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 89.

90.     SB 40 required the Board to conduct a meeting to hear all of these plaintiffs grievances but failed to do so.  Instead, it chose not to meet but to have a Zoom conference conducted by a third party.  Because there was no meeting, there was no requirement to conduct that hearing as though it were subject to the open meeting requirement of SB 40. Blue Valley should have met and conducted a hearing that was open to the public but it was not authorized to disclose private student information at a Zoom conference conducted by Warren or Moriarty.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 90.

21

## COUNT 3
### Legal and Equitable SB40 Relief
### Joshua, T.M., CarrieAnn, E.B. J.B. v Olathe Board of Education and Board Members

91.     Plaintiffs Joshua, T.M., CarrieAnn, E.B., and J.B. restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 90 of the petition.

92.     Joshua submitted a SB40 grievance to OBE because he and his son were aggrieved by the actions, orders, and policies of OBE as applied to T.M. as mask wearing interfered with T.M.'s ability to learn or otherwise participate in the education process that took place within the last 30 days.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 92.

93.     CarrieAnn submitted a SB40 grievance to OBE because she and her sons were aggrieved by the actions, orders, and policies of OBE as applied to E.B. and J.B. as mask wearing interfered with E.B. and J.B.'s ability to learn or otherwise participate in the education process that took place in the last 30 days.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 93.

94.     Joshua, T.M., CarrieAnn, E.B., and J.B. are now aggrieved by the respective decisions OBE within the last 30 days to require T.M., E.B., and J.B. to wear a mask as a condition to obtain an education in the OBE school district.

22

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 94.

95.   CarrieAnn is further aggrieved because OBE is denying her child an education saying the child needs to be quarantined because she was "exposed" to student testing positive with Covid 19. CarrieAnn made a second grievance to OBE on April 29, 2021. The Johnson County Health Department sent the letter quarantining her child which that agency has no authority under SB40 to exclude her child from school. Further, the timing of this quarantine is suspect and retaliatory for CarrieAnn filing her first grievance and the determination of "exposed" is not defined but left to an arbitrary determination by each school. Her child suffers the loss of an education and is irreparably harmed.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 95.

96.   Because OBE refused to permit T.M. to attend school without a mask within the last 30 days, based on it interfering with T.M.'s ability to learn, Joshua sought a different exemption obtained from a doctor's opinion that the mask caused T.M. "anxiety that has resulted in self-mutilation behaviors" and that T.M. "should be Covid-19 immune." This required Joshua to incur expenses he would not otherwise be required to expend. OBE has required T.M., within the last 30 days, to constantly wear a mask as a condition to attend school pursuant to OBE orders and policies. Joshua and T.M. are aggrieved by that ongoing action in expending money and time in order to obtain the only individualized mask exemption OBE would allow rather than providing an individualized exemption based upon mask interfering with T.M.'s educational process.

23

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 96.

97.     It is unknown whether OBE will require yearly applications for a medical exemption and Joshua should not be required to expend the time and money for future doctor appointments in conjunction with obtaining OBE's mask exemption when OBE should now, and in the future, allow Joshua's son to attend school without a mask for all future school years.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 97.

98.     E.B., and J.B. should not be required to a mask as a condition to attend school when OBE allows T.M. and any number of other OBE students to attend school without a mask. CarrieAnn should not be required to incur the additional time and expense seeking a doctor who would say that masks interfere with E.B. and J.B.'s learning or that it is a medical necessity.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 98.

99.     The actions of OBE are not narrowly tailored to T.M., J.B., or E.B. and are not the least restrictive means available to OBE, as applied to T.M., J.B., or E.B. in providing an education to each while furthering OBE's mask policy. Joshua should not be required to incur additional expenses to justify OBE's one exemption when it could take Joshua's word as a parent that masks interfere with T.M.'s learning or that it causes T.M. anxiety and provide an individualized mask exemption for T.M. only.

24

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 99.

100.   CarrieAnn should not be required to incur additional expenses to justify OBE's one individualized mask exemption when it could take CarrieAnn's word as a parent that masks interfere with J.B.'s or E.B.'s learning and provide the individualized mask exemption for only her two children.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 100.

101.   OBE now has a less restrictive means available to it and actually uses it rather than to require Joshua or CarrieAnn to incur expenses and prove a medical or behavioral disorder as a condition not to wear a mask to school. OBE has already has discretion to allow a student such as J.B. or T.M. to attend school without a mask because it interferes with their respective learning and OBE's requirements for mask exemptions are not narrowly tailored to T.M., J.B., or E.B. and not the least restrictive means available to OBE to hinder the spread of Covid-19 while providing an education to each respective student.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 101.

102.   Further, OBE's policy now allows OBE to allow an unlimited number of students to attend school without a mask based upon one reason – but only if the parent incurs additional expense and obtains a doctor's opinion. OBE currently has discretion to more narrowly tailor the

25

manner in which it proves mask exemptions based upon a parent's reporting of the child's behavior, his reaction to mask wearing, and how it interferes with the student's learning without requiring the parent incur time and expenses in locating a doctor who will accept the parent's reporting of the child's behavior as a medical diagnosis or prognosis.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 102.

103.   There is a less restrictive way available to OBE in allowing T.M. to attend school without a mask because OBE currently tailors its mask policy to make individual exemptions allowing the one student to attend school unmasked while requiring other students to wear a mask. Allowing individual mask exceptions now demonstrates that OBE, by its own terms and discretion, can allow T.M., as an unmasked student to attend school, to attend without a mask without subverting its goal of hindering the spread of Covid-19 while providing an in person education to T.M.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 103.

104.   Once touched the masks are immediately contaminated and are no longer efficacious in any capacity let alone to mitigate the spread of a respiratory virus. J.B., E.B., and T.M. are incapable of keeping each respective mask sterilized for any amount of time, let alone for an entire day. By wearing a dirty mask, each is putting himself at greater risk of illness than if he didn't wear one at all. Even if that mask is changed out every day, the chance of his hands being sterile and the masks staying sterile for an entire day are improbable at best.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16531384.1

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 104.

105.   In Kansas, as of March 22, KDHE data shows the counties without a mandate added 5,441 cases per 100,000 of population since November 23. The counties that had a mandate in effect since July added 5,439 cases; that difference of just two cases over 17 weeks in 43 counties which is virtually unnoticeable. https://sentinelksmo.org/mask-mandates-had- no-impact-on-covid-case-growth/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 105.

106.   In a study referenced in a Montana Gazette article dated January 25th, 2021, it found the masks themselves are having wide-ranging and deleterious effect on children: "A new study, involving over 25,000 school- aged children, shows that masks are harming schoolchildren physically, psychologically, and behaviorally, revealing 24 distinct health issues associated with wearing masks. The health issues and impairments observed in this study were found to affect 68% of masked children who are forced to wear a face covering for an average of 4.5 hours per day. The study also includes 17,854 health complaints submitted by parents. Some of the health issues found in the study include: increased headaches (53%), difficulty concentrating (50%), drowsiness or fatigue (37%), malaise (42%), and nearly a third of children experience more sleep issues than they had previously and a quarter of children developed new fears. "The study also found that 29.7% of children experienced shortness of breath, 26.4% experienced dizziness, and hundreds of the participants experienced accelerated respiration, tightness in chest,

27

weakness,          and          short-term          impairment          of

consciousness."https://montanadailygazette.com/2021/01/25/new-study-finds-masks-

hurt-schoolchildren-physically-psychologically-and-behaviorally/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 106.

107.    As a juxtaposition to mandating masks for prevention, their implementation has

actually led to a greater spread of the virus and other illness. The states with the strictest lockdowns

and most restrictive mask mandates have some of the worst statistics with regard to cases, case

fatality rate and economic hardship. Conversely, states like Texas and Florida that dropped their

mask mandate and completely re-opened their economy the cases have fallen over 30% in the past

three      weeks      despite      the      masks      no      longer      being      required.

https://www.breitbart.com/politics/2021/04/24/tx-fl-report-fewer-new-cases-of-virus-per-capita-

than-pro-mask-states-mi-pa-and-ny/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 107.

108.    MIT researchers now say one is no safer from Covid indoors at 6 feet or 60 feet.

https://www.cnbc.com/2021/04/23/mit-researchers-say-youre-  no-safer-from-covid-indoors-at-6-

feet-or-60-feet-in-new-study.html

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 108.

28

109.     Mask Mandates for Children Mostly Harmful: Professor of Medicine. https://link.theepochtimes.com/mkt_app/mask-mandates-for-children-mostly-harmful-professor-of-medicine_3785980.html

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 109.

110.     Another Study BY THE CDC Showing Masks Don't Work. https://www.thegatewaypundit.com/2021/04/stanford-study-noting-ineffectiveness-harm-masks-censored-twitter-now-second-study-published-cdcs-website-confirms-masks-cause-serious-side-effects/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 110.

111.    To date, there has not been a single peer-reviewed study proving the efficacy of masks in the prevention of Covid-19.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 111.

WHEREFORE the plaintiffs Joshua and his son T.M. CarrieAnn and her sons E.B. and J.B. request legal and equitable damages; that the Court enter its judgment declaring that they are aggrieved by the actions of OBE and each of the listed board members when they did not conduct a meeting to hear their grievances, were required to conduct a meeting under quorum requirements to hear the grievances, that OBE did not do so, that the procedures utilized were unauthorized under SB 40, that Joshua and T.M. were denied due process under the Kansas Bill of Rights, and that they are further aggrieved by the actions of OBE in not allowing their respective student children

29

to attend school each day without a mask, and without incurring the time and expense of obtaining a doctor's opinion about medical necessity, and that OBE already has discretion to provide individualized exemptions and can allow each of these three students to attend school unmasked if for no other reason that it interferes with each student's learning process, and that requiring either of these students to wear a mask to school is not the least restrictive means to provide each one an education while furthering the interests of preventing the spread of Covid 19. CarrieAnn and Joshua further request that OBE be restrained from prohibiting their respective children from attending school in the 2021 or 2022 school year without wearing a mask.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

### COUNT 4
### Legal and Equitable SB40 Relief
**Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children, Laura and son v Blue Valley Board of Education and Board Members**

112.    Plaintiffs Laura, Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 111 of the petition.

113.    Each plaintiff submitted a SB40 grievance to Blue Valley because each were aggrieved by the actions, orders, and policies of Blue Valley as applied to each plaintiff as mask wearing interfered with each student's ability to learn or otherwise participate in the education process that took place within the last 30 days.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 113.

30

114.    Each plaintiff is now aggrieved by the respective decisions Blue Valley within the last 30 days to require each of their respective students to wear a mask as a condition to obtain an education in the BV school district.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 114.

115.    Because BV refused to permit the plaintiff's students to attend school without a mask within the last 30 days, based on it interfering with each ability to learn, parents sought a different exemption obtained from a doctor's opinions that not wearing a mask was medically necessary. This required those parents to incur expenses he would not otherwise be required to expend. BV has required each plaintiff student named in this count within the last 30 days, to constantly wear a mask as a condition to attend school pursuant to BV orders and policies. These parents are aggrieved by that ongoing action in expending money and time in order to obtain the only individualized mask exemption BV would allow rather than providing an individualized exemption based upon mask interfering with each student's in person educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 115.

116.    It is unknown whether BV will require yearly applications for a medical exemption and each parent should not be required to expend the time and money for future doctor appointments in conjunction with obtaining BV's exclusive favored mask exemptions when BV should now, and in the future, allow each plaintiff student to attend the BV school without a mask for all future school years.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 116.

117.    The actions of BV are not narrowly tailored to each plaintiff student named in this count and BV's mask wearing requirement as applied to each named student is not the least restrictive means available to BV. in providing an education to each student while accomplishing

31

BV's purpose of providing an in person education to each named student while hindering the spread of Covid 10 to these named students or hindering the spread of Covid 19 from these named students to others.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 117.

118.   BV now has the means within its own Navigation policy to allow these named students to attend school without a mask because the mask interferes with that student's participation in the learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 118.

119.   BV has available to it a less restrictive means to hinder the spread of Covid 19 by or from these named students other than requiring each to wear a mask. BV already has the means to permit each student to attend school without a mask while accomplishing its purpose of hindering the spread of Covid 19 from these named students.  Requiring these named students is not narrowly tailored to them and is in fact contrary to the existing Navigating Change policy exempting them from a mask requirement because it interferes with their respective learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 119.

120.   Further, BV's policy not only provides mask exemptions on the basis of each student's grievance, BV's policy now allows an unlimited number of students to attend school without a mask albeit for its favored chosen exemptions – but only if the parent incurs additional expense and obtains a doctor's opinion that it is a medical necessity. BV refuses to requires schools to follow its Navigation Change policy permitting a student to be exempt from the mask requirement.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 120.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16531584.1

121. As stated in the supporting brief, the fact that BV now allows an unlimited number of students to attend school without a mask for various reasons does appreciable damage already to its purpose of hindering the spread of Covid 19 and there is no compelling state interest, and nothing of a scientific basis, in allowing these students to attend school without a mask for an IEP hinderance of learning or medical reason and then prohibit the same student from attending school without a mask even though the mask interferes with the learning process.

RESPONSE: Blue Valley Defendants deny the allegations contained in Paragraph 121.

122. The fact that each school board policy provides for numerous mask wearing exemptions – mask breaks, athletics, band, drama, and then for medical necessity or even IEP students (which is just the same hinderance of the learning process in IEP clothing) coupled with the fact their own policies specifically provide that masks should not be required if it interferes with the educational process means BV's purpose in requiring these named students to wear a mask is not compelling.

RESPONSE: Blue Valley Defendants deny the allegations contained in Paragraph 122.

123. BV has demonstrated deliberate indifference in the denial of the grievances and its own arbitrary unwritten ad hoc policies and has further discriminated against these students and parents by disregarding its own Navigating Change policy, then by favoring only students that can demonstrate a medical necessity signed off by a doctor, and favoring IEP students who can be mask exempted if the IEP team determines it interferes with the delivery of services while not providing mask exemptions to these students when it similarly interferes with their learning process.

RESPONSE: Blue Valley Defendants deny the allegations contained in Paragraph 123.

124. Legal and equitable relief is sought including loss of educational services, costs for tutoring, therapeutic expenses, and special services. Compensatory services should be

33

provided to make up or compensate for the defendant district's failure to provide the named students with appropriate education and services in the past. Tutoring at school expense, summer services should be required to make up for lost service time, additional related services, and reimbursement to these parents for outside tutoring or programs should be granted as part of the relief.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 124.

**COUNT 5**
**INJUNCTIVE RELIEF**

125.    Plaintiff Matthew restates and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 124 of the petition.

126.    Blue Valley refused to provide Mathew a SB40 hearing conducted by a quorum of the Blue Valley board of education. Instead, Blue Valley provided him a Zoom conference.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 provided Mr. Couch an SB40 hearing via live Zoom videoconference. Blue Valley Defendants deny the remaining allegations contained in Paragraph 126.

127.    Matthew has a right under SB40 to have his grievances heard by a quorum of each respective board and not by a person named "hearing officer" who has no authority under SB40.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 127.

128.    CarrieAnn seeks injunctive relief preventing the Johnson County Department of Health and Environment from exercising authority over her son's school attendance or to otherwise not attend school because of a purported Covid 19 exposure.

34

**RESPONSE:** Ms. Baumgarten is not asserting claims against Blue Valley Defendants and therefore no response is required to this paragraph. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 128.

WHEREFORE Matthew and CarrieAnn request injunctive relief as described above.

**RESPONSE:** Blue Valley Defendants deny any of the Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

**COUNT 6**
**Kansas Preservation of Religious Freedom Act**
**Terri, Silo, Rebecca, R.C., C.C., M.C., Julie, R.F., L.P. v Blue**
**Valley Board of Education and Board Members**

129.    Plaintiffs Terri, Silo, Rebecca, R.C., C.C., M.C., Julie, R.F. and L.P. restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 128 of the petition.

130.    The named defendants are "government" as defined under K.S.A. 60-5302.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

131.    The religious liberty interest protected by the Kansas Preservation of Religious Freedom Act is an independent liberty that occupies a preferred position, and no encroachments upon this liberty shall be permitted, whether direct or indirect, unless required by clear and compelling governmental interests of the highest order.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

35

132.    Blue Valley policy requires Silo, R.C., CC., and M.C. to be vaccine compliant with a number of vaccines over the child's school life.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

133.    The state of Kansas permits Blue Valley to enact its own policies on immunizations for school enrollment and participation in school. Blue Valley has enacted its policy 3113.2. Blue Valley provides that a student is not required to be vaccine compliant if a written statement is signed by one parent or guardian stating that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

134.    There are no Blue Valley written policies regarding a religious exemption to vaccine injecting other than that stated in policy 3113.2.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

135.    That policy, as applied to Rebecca, Julie, and Terri, directly and indirectly constrains, inhibits, curtails or denies their respective exercise of religion as defined under the Kansas Preservation of Religious Freedom Act (KPRFA).

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16531584.1

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

136.   Silo, R.C., C.C., and M.C. are each entitled to a free appropriate public education (FAPE) as provided in Section 504 and the Individuals with Disabilities Education Act (IDEA).

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

137.   Blue Valley has adopted special needs student policies, that as applied to the plaintiffs Terri and Rebecca, directly or indirectly constrains, inhibits, curtails or denies their respective exercise of religion as defined under the KPRFA.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

138.   Blue Valley's policies impose a duty upon Rebecca and Terri to provide Blue Valley's designated special needs services in the manner dictated by Blue Valley which does not permit Terri or Rebecca to provide those services in conjunction with their respective exercise of religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21   03:35pm JT*
WA 16531584.1

139.   Blue Valley policies impose upon Terri and Rebecca obligations to remove their children from their religious activities and religious teaching environment as a condition for the delivery of special needs services to Terri and Rebecca's special needs children.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

140.   Part of those Blue Valley policies require these students to be taught in a secular and nonideological manner and with masks contrary to Terri and Rebecca's exercise of religion as defined under the KPRFA.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

141.   This policy requires that their special needs students will not be allowed to learn without masks or in connection with religious courses, devotional exercises, religious training, or any other religious activity which burdens their respective exercise of religion and right to school choice exercising their religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

142.   Blue Valley's special needs policies as applied to Terri and Rebecca, both directly and indirectly, constrains, inhibits, curtails or denies their respective practices or observance of religion under section 7 of the bill of rights of the constitution of the state of Kansas and the free exercise clause of the first amendment to the constitution of the United States.

38

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

143.    These policies regarding special education for each of their children requires them respectively to act or refuse to act in a manner substantially motivated by a sincerely-held religious tenet or belief, whether or not the exercise is compulsory or a central part or requirement of their respective religious tenets or beliefs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

144.    Under K.S.A. 72-3403 et seq it is the ongoing duty of Blue Valley to provide these students their respective special needs services under Blue Valley's IEP which Blue Valley is refusing to do regarding Silo unless Terri meets their unconstitutional and arbitrary conditions.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

145.    Silo is presently enrolled but truant, not attending school, and not receiving his special needs services because of Blue Valley's ongoing and everyday actions and policies including the adoption of the Kansas State Department of Education Navigating Change policy which occurred on August 18, 2020, which is being enforced each and every school day by it actions, its policy prohibiting Silo's special needs services to be provided in conjunction with or during any religious activity or religious training, and its misrepresentations that the Bakers requested (which they did not) that Silo be withdrawn from school.

39

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

146.    Silo has a current I.E.P. from Blue Valley that can only be modified by Blue Valley. Blue Valley is not providing Silo a FAPE and Silo is not receiving a FAPE because of Blue Valley's actions requiring Silo to attend school, to attend masked, and to receive his special services in contradiction to Terri's religious beliefs: Blue Valley will not provide Silo any special needs services during any schooling associated with any religious activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

147.    R.C., C.C., and M.C. have current I.E.P.s from Blue Valley that can only be changed by Blue Valley. Blue Valley will not provide R.C., C.C., and M.C. Silo a FAPE during any schooling associated with any religious training or activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

148.    Rebecca has religious beliefs regarding how and in what manner her children should be educated. Rebecca believes she has a God-given duty to provide an education, or see that one is provided, to each of her children according to her parental values. Requiring her children to wear masks when masks interfere with their learning ability is contrary to Rebecca's religious exercise as a parent.

40

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

149.    Terri also has similar religious beliefs and regards natural immunities and wearing masks and face shields by Silo is burdens her religious exercise. Moreover, because of Blue Valley's policy, Silo is now truant because of Blue Valley conditions it is imposing during in Covid-19. In conjunction with those Blue Valley I.E.P. services, they are not being provided to Silo at all by Blue Valley, and not being provided at no cost as required under K.S.A. 72-3404(i)" because it requires Terri to forfeit her religious practices and beliefs in exchange for Silo obtaining special services.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

150.    Blue Valley's policy provides for an individualized exemption for a mask if it interferes with the student's ability to be educated and also for a medical necessity exemption but having provided those exemptions for the provision of the services will not allow Terri or Rebecca to provide, at Blue Valley's cost, those special education services while homeschooling or during religious training and activities at a private religious school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

151.    That the interests set out in the Blue Valley polices, as applied to Terri and Rebecca, are not of the highest order and not otherwise served.

41

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

152.    There is no clear and convincing evidence that Blue Valley's policies further a compelling governmental interest, as applied to Terri and Rebecca, that its special needs policies are the least restrictive means of furthering any compelling governmental interest as applied to Rebecca and Terri.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE the above Terri and Rebecca request all of the relief under K.S.A. 60-5303 including, but not to the exclusion of others, injunctive and declaratory relief, actual damages, costs and attorney fees, as applied to them respectively.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6  within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

### COUNT 7
### Equal Protection Under the Kansas and U.S. Constitution
### All Plaintiffs v School Boards

153.    This count is stated by all plaintiffs against each School Board.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

154.    The plaintiffs and their children are similarly situated to other Kansas students and parents of Kansas school aged children.

42

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

155.    Both school boards provide an exemption to masks based upon it inhibiting or interfering with a special needs student participation in the education process but will not provide the same mask exemption to students not classified as a special needs student.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

156.    Both school boards provide an unwritten policy of an individual "medical necessity" mask exemption to a student of an unlimited number but will not provide an individual mask exemption when the mask interferes or inhibits that student's participation in the education process.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

157.    Both school boards provide an individual unwritten "medical necessity" mask exemption to a student of an unlimited number but will not provide an individual mask exemption when the mask requirement burdens the religious exercise of the parent or student.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

43

158.    Both school boards convey the benefit of in person education for these plaintiff students upon their ad hoc exemptions but will not convey the benefits if those conditions are not met.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE these plaintiffs request injunctive and declaratory regarding the facial and as applied application of Blue Valley's unequal treatment of these plaintiffs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

## COUNT 8
### Equal Protection Under the Kansas and U.S. Constitution
### Terri, Silo, Rebecca, R.C., C.C., M.C. v. Blue Valley

159.    This count is stated against the Blue Valley School District  USD 229 and the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

160.    Rebecca and Terri are similarly situated to other parents of Kansas school aged children. Silo, R.C., C.C., and M.C. are similarly situated to other Kansas students.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

44

161.    Even though Kansas statutes do not provide for home schooling, the KSDE provides school choice regarding home schooling. Blue Valley policy 2600 provides for home schooling and states that the parent must register with KSDE "as a non-accredited private school."

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

162.    Parents who choose home schooling are permitted to determine their own curriculum, choose their own teachers, and can provide home schooling in the context of religious training and religious activities. Home schooled students are not required to be enrolled in a Kansas public school in order to be home schooled or receive educational services.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

163.    Similarly, Kansas statute provides school choice for private non- public schooling and parents who choose private schooling are permitted to choose a private religious school with religious curriculum, and the education can be provided in the context of religious training and religious activities.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

164.    However, for students classified as special needs or exceptional children, parents are not provided the same kind of funding or school choice. Special needs students such as Silo, R.C., C.C., and M.C., are required to receive a specific curriculum exclusively designated

45

by Blue Valley in the IEP and then provided exclusively by a teacher employed or controlled by Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

165.    Under K.S.A. 72-3404, "special education" must be provided "at no cost to parents" to a child classified as an "exceptional child" but that "no cost" benefit does not flow to or flow equally on the same terms to Terri and Rebecca because of their religious status and beliefs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

166.    Under K.S.A. 72-3410(a)(3) it only requires a school board to provide this special education to a student enrolled in a "private school" and K.S.A. 72-3461 defines a "private school" as a federally tax exempt organization. By definition this excludes a parent teaching at home – homeschooling.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

167.    The special needs student cannot have the special needs curriculum provided during homeschooling and in fact the KSDE specifically excludes homeschooling.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

46

168.    Under K.S.A. 72-3421(a), Kansas imposes a separate duty upon a Terri and Rebecca making it their respective duty to provide the IEP services privately at their personal cost if not done through a public school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

169.    Blue Valley requires that Silo, R.C., C.C., and M.C., be enrolled at Blue Valley and further Blue Valley and K.A.R. 91-40-48 requires Silo's R.C., C.C., and M.C's special needs curriculum be provided during school hours while the "private teacher" must be "under public supervision and control" and the education provided in "a secular and nonideological manner."

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

170.    Other Kansas parents and Kansas students are not barred from using a private teacher not supervised by Blue Valley and are not required to teach their student in a secular and nonideological manner.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

171.    Other Kansas parents of other Kansas students are not given a duty to provide educational services to their child at their own cost.

47

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

172.   The statutory 72-3463 requirement prohibits religious private schools from providing special needs services to an enrolled student but the same student enrolled in a public school could receive the same service. The only difference is religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

173.   Public benefit of using state and federal funds to pay for the services of a homeschool teacher for a special needs student are withheld while the same benefit is given to the same teacher for the same student if employed by a religious private school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

174.   Religious private schools and religious private individuals are discriminated against in obtaining the same special education services based upon the religious status and religious character of the curriculum.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

175.   The regulatory requirement that teachers in a religious private school or homeschool setting be under the supervision and control of the state requires religious private

48

school teachers to be employed by the state and also interferes with the exercise of religion and in providing special needs services in a religious private school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

176.   The regulatory requirement that the special needs services be "provided in a secular and nonideological manner" is unconstitutionally vague.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

177.   The regulatory requirement that the special needs services be "provided in a secular and nonideological manner" targets religion and prohibits special education services to students because of religion or religious activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 claim within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

178.   Even if Terri and Rebecca could qualify for a homeschool, 72-3463 discriminates against each because of religion, K.A.R. 91-40-48 requires Terri and Rebecca to be controlled and supervised by the state, and requires each to provide the special needs services in a secular and nonideological fashion – all of which disqualify Rebecca and Terri on the basis of religion and further burden or is substantially likely to burden her free exercise of religion under the Kansas Preservation of Religion Act.

49

RESPONSE: Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE these plaintiffs request injunctive and declaratory regarding the facial and as applied application of Blue Valley's unequal treatment of these plaintiffs.

RESPONSE: Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

**COUNT 9**
**Open Meeting and Open Records Violations**
**Declaratory and Injunctive Relief**
**Terri Baker v Brian Dailey and Blue Valley**

179.    Plaintiff Terri Baker restates and incorporates by reference the allegations in the above paragraphs.

RESPONSE: Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

180.    There was no "meeting" on April 7, 2021, as defined under the quorum requirements of the Blue Valley Board or under Kansas Open Meetings Act (KOMA). As such the Zoom conference should have been conducted in private and not publicized as Blue Valley did as Terri later discovered.

RESPONSE: Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

50

181.    In the alternative, and if the April 7th hearing constitutes a "meeting" as defined under the Kansas Open Meetings Act (KOMA), Blue Valley did not comply with KOMA or its own policies. There was no physical location for the April 7th Zoom conference, and Terri's counsel was isolated from other members of the public who were participating in the Zoom conference. Counsel for Terri was not informed as to who was present or viewing the Zoom conference other than the few people allowed in the Zoom conference room limited to participants.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

182.    Unknown to Terri at the time, the April 7th Zoom conference was being simulcast by news stations and other media platforms.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

183.    Blue Valley has not modified its public meeting procedures or waived any requirements that are inconsistent with holding virtual meetings. On information and belief, there are no procedures that have been adopted by resolution at the virtual meeting itself or in an emergency order.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

184.    At one point in the Zoom conference, Melissa Hillman instructed Blue Valley to mute the microphone of attorney Linus L. Baker to cut off Mr. Baker's ongoing discussion,

51

something that cannot happen at an open meeting by anyone attending an open meeting attended physically in person.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

185.    Unknown to Terri, Blue Valley conducted a special meeting on April 7, 2021, to discuss her grievance that Terri made to the Board and which was publicized by Blue Valley on April 6th. Terri's counsel Linus Baker had sent a letter to Roger Warren requesting to participate before the Board and as such requested notices of all meetings regarding Terri and Silo's grievances. Terri received no notice from Blue Valley of the April 7th meeting discussing her grievance and discovered that it occurred from television reports later that evening.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

186.    Terri then later viewed the April 6th and April 7th recorded Zoom conference / meeting online.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

187.    Terri made two open records requests for access and copying of public records April 6, 2021, and April 10, 2021, to the records custodian of the Blue Valley School District and the Board of Education.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

188.    Blue Valley is a public agency under the Kansas Open Records Act (KORA). Brian Dailey is the records custodian for Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

189.    The records requested by Terri were public record as they constituted recorded information, regardless of form, characteristics or location, which is made maintained or kept by or is in the possession of: (1) any public agency; and (2) any officer or employee of a public agency pursuant to the officer's or employee's official duties and which is related to the functions, activities, programs or operations of any public agency. These records are not only paper records, but also computer data, including emails and court records and records provided to a public agency by a third party.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

190.    In response to the April 6th request she received some records. But upon further review it appeared some had been altered without Blue Valley indicating they had been altered. Thus the document appeared as an original unaltered document when in fact the document had been altered by Blue Valley. Terri is still unsure of the extent of document alteration that occurred.

53

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

191.   One request concerned SB 40 notices by parents to Blue Valley of their grievance. Parents must provide these notices as a pre-condition to filing a civil lawsuit stating a SB 40 cause of action.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

192.   In response to the April 6th request Blue Valley did not provide access to the original records requested except to videos of the April 6 and 7 hearing could be viewed at the District Office. Blue Valley did not provide for allowing Terri to make copies of the videos as requested in Blue Valley's response.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

193.   Blue Valley did not say it would provide access to the records within three business days and failed to provide access to all of the requested records. Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

194.   In response to some of the requests, Blue Valley made the statement that "the District does not provide personal information about private individuals pursuant to the privacy

54

exception to KORA" but did not demonstrate how this statement applied to any requested record, what the legal basis was for this statement as applied to the record requested, or how it specifically applied to any particular requested record.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

195.   Daley's and his staff's alteration of the records in the manner they did was and is deceptive, his refusal to provide access to the records or to provide for copying of the records was not in good faith and was without a reasonable basis in law or fact.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE the plaintiff Terri Baker requests the Court enter its judgment declaring that access to all of the unaltered records requested by Terri should be allowed, that the Court order the records custodian to provide the plaintiff and his attorney access, which includes copying, to all of the records, in their original format, requested together and that the Court award plaintiff his attorney fees and costs, with such other and further relief as the Court deems just.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

**COUNT 10**
**Open Records Violations**
**Declaratory and Injunctive Relief**
**Terri Baker v Laura Brewer Tenth Judicial District**

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16331384.1

196.    Plaintiff Terri Baker made an open records request to Laura Brewer for audio and video recordings of a proceeding open to the public in 21CV01464 O'HARA vs. BLUE VALLEY SCHOOL DISTRICT BOE ET AL. The hearing was conducted virtually, electronically recorded, and also believed to be recorded through Blue Jeans or Zoom conferencing.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 196.

197.    Brewer refused to produce either an audio or video recording which both are open records.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 197.

198.    Brewer stated that the "video recordings are not maintained as part of the court record. The request for a copy of the audio recording is denied. The recording is a tape or disc that was not played in court and is not the transcript of the hearing. This denial is based on KSA § 45-219, KSA § 45-221(a)(1), and Supreme Court Rule 1001(e)(4), 1001(e)(8), and 362."

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 198.

199.    The video recording of that proceeding is maintained by the Johnson County court system and is under the control of the court system. It is recorded information which was made, maintained or kept by or is in the possession of any public agency.

56

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 199.

### Administrative Order 2021-PR-021

200.    The Chief Justice issued an administrative order 2021-PR-021 (Order Authorizing the Use of Two-Way Audio-Visual Communication In Any District or Appellate Court Proceeding) in which remote proceedings can be utilized for any essential or non-essential court proceeding. In paragraph 4 of the Order it states: "Access to a remote proceeding must be provided to the public either during the proceeding or immediately after via access to a recording of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule." Under this administrative order, these recordings of remote proceedings would be open records. There would be no practical distinction in favoring the public's access to recordings of remote proceedings while disfavoring the public's access to the same recording of a proceeding conducted in person. A distinction would be arbitrary as well as raise equal protection concerns.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 200.

### Baker v Hayden

201.    Baker v. Hayden, 55 Kan. App. 2d 473, 486, 419 P.3d 31, rev. granted 308 Kan. 1593 (2018) held that there is no language in K.S.A. 2017 Supp. 45-219(a) that could be construed as specifically prohibiting or restricting access to audio recordings of open court proceedings, which is required by the Kansas Open Records Act to qualify as an exception to disclosure. *Baker v Hayden* further held that there is no language in K.S.A. 2017 Supp. 45-221(a)(20) that could be construed as specifically prohibiting or restricting access to audio recordings of open court

57

proceedings, which is required by the Kansas Open Records Act to qualify as an exception to disclosure.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 201.

202.    Baker v Hayden held that the language in K.S.A. 2017 Supp. 45-219(a) referencing "similar audio or visual items or devices" cannot be read to include an audio recording of the court proceeding itself.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 202.

203.    Baker v Hayden held that court recordings are not considered part of the court reporter's notes under K.S.A. 2017 Supp. 45-221(a)(20) because a court recording does not involve a recording by a court reporter to be used as notes to assist in preparation of a transcript of the proceedings. It held that an audio recording of open court proceedings does not fall into the category of court reporter's notes.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 203.

204.    Baker v Hayden held that the Kansas Supreme Court did not intend the use of electronic recordings in courtrooms to be limited to merely helping the court reporter prepare a transcript and assisting counsel to correct any transcription error.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16531584.1

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 204.

205.   The Tenth Judicial District's refusal to provide access to the video and audio recordings was not in good faith and was without reasonable basis in law or fact.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 205.

206.   The plaintiffs adopt, as fully set forth herein, their supporting brief as to the interpretation of SB40 and the SB40 claims for relief.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 206.

WHEREFORE the plaintiff Terri Baker requests the Court enter its judgment declaring that access to the requested video recording of that proceeding should be allowed under Administrative Order 2021-PR-021 and KORA and that the Court award plaintiff his attorney fees and costs, together with such other and further relief as the Court deems just.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the same.

WHEREFORE, as to all counts and all plaintiffs, each plaintiff requests all legal and equitable available relief available under law and equity and for such other relief as the Court deems just and fair.

59

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  03:35pm JT*
WA 16331384.1

**RESPONSE:** Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

## AFFIRMATIVE DEFENSES

1.      Plaintiff Terri Baker lacks standing to assert any claim under SB 40 because at the time she filed an SB 40 grievance with Blue Valley U.S.D. 229, she was not "an employee, a student or the parent or guardian of a student" of the District.

2.      Plaintiffs have not stated a claim under SB 40 because they do not challenge "an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or policy" as required under SB 40.

3.      To the extent Plaintiffs purport to challenge an "action taken, order issued or policy adopted" by the Blue Valley U.S.D. 229 board of education, they challenge an action taken in August 2020, many months before SB 40 was enacted. SB 40 does not apply retroactively. Thus, Plaintiffs have not challenged any action, order, or policy to which SB 40 applies.

4.      SB40 violates Article 6, Section 5 of the Kansas Constitution, which provides that "Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards." It is so unreasonable that it unduly interferes with or hamstrings the local school board in performing its constitutional duty to maintain, develop, and operate the local public school system.

5.      Blue Valley Defendants hereby expressly reserve the right to assert additional defenses, affirmative or otherwise, and matters in avoidance as they may become apparent during the course of any discovery in this case.

60

WHEREFORE, Blue Valley Defendants request that Plaintiffs take nothing by this suit, that it be dismissed in whole, that they be awarded their costs, and that Blue Valley Defendants recover such other relief, both equitable and otherwise, to which it may be entitled.

**SPENCER FANE LLP**

 /s/ Stephanie Lovett-Bowman
W. Joseph Hatley              KS #12929
Stephanie Lovett-Bowman       KS #24842
Angus Dwyer                   KS #26995
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (Fax)
jhatley@spencerfane.com
slovettbowman@spencerfane.com
adwyer@spencerfane.com

*Attorneys for Defendants Blue Valley School
District and Blue Valley Board of Education*

## CERTIFICATE OF SERVICE

I certify that on this 4th day of May, 2021, I electronically filed this document with the Clerk of the Court using the Johnson County filing system, which will send a notice of electronic filing to all counsel of record.

 /s/ Stephanie Lovett-Bowman
*Attorneys for Defendants Blue Valley School
District and Blue Valley Board of Education*

61

**VERIFICATION**

STATE OF KANSAS       )
                               ) ss:
COUNTY OF JOHNSON   )

      The undersigned hereby verifies that the factual responses in the foregoing DEFENDANTS' VERIFIED ANSWER TO PLAINTIFF'S VERIFIED PETITION UNDER 2021 SB 40 are true and correct to the best of her knowledge, information, and belief.

                                         Melissa Hillman
                                         Chief Legal Counsel and
                                         Authorized Representative

      Subscribed and sworn to before me, a Notary Public, on this __4th__ day of __May__ 2021.

                                         Notary Public

My Commission Expires:

__June 15, 2024__



KIM M. HENDRIX
Notary Public, State of Kansas
My Appointment Expires
June 15, 2024

                                    62

21CV01942
Div7

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

| | |
|---|---|
| Terri E. Baker, Silo Baker, Joshua Snider et. al.          ) | |
| ) | |
| Plaintiffs,      ) | |
| ) | |
| v.            ) | **Case No. 21CV01942** |
| ) | **Div. 7** |
| Blue Valley Board of Education, Blue Valley School District USD 229, et. al.    ) | |
| ) | |
| ) | |
| Defendants.      ) | |

### Blue Valley Defendants' Joint Answer
### To Plaintiffs' Petition For Legal And Equitable Relief Under 2021 Senate Bill 40

Defendants Blue Valley U.S.D. 229, Blue Valley Board of Education, Amy Tysseling in

her official capacity, Stacy Obringer-Varhall in her official capacity, Tom Mitchell in his official

capacity, Patrick Hurley in his official capacity, Jodie Dietz in her official capacity, and Michele

Benjamin in her official capacity (collectively these defendants will be referred to as "Blue Valley

Defendants"), state the following as their Joint Answer to Plaintiffs' Petition under SB 40 (the

"petition"). The only admissions contained herein are express admissions.

This answer responds solely to Plaintiffs' allegations and claims purportedly asserted under

SB 40. Blue Valley Defendants do not waive but rather hereby retain and reserve their right to

respond to Plaintiffs' allegations and claims asserted under other laws—Counts 6, 7, 8, 9, and 10—

as provided in applicable civil rules. Blue Valley Defendants will file a responsive pleading to

Plaintiffs' non-SB 40 claims, Counts 6-10, within the time set forth in K.S.A. § 60-212.

### Overview of SB 40 and Relief

The section of Plaintiffs' petition entitled "Overview of SB 40 and Relief"—which spans

pages 1 to 8 of Plaintiffs' petition and ends right before the section entitled "Parties"—consists

solely of legal argument and demands for relief. Accordingly, no response is required. To the

extent a response is required, Blue Valley Defendants deny each allegation and statement

contained in the "Overview of SB 40 and Relief." Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

## PARTIES

1.     Joshua Snider is a resident of Johnson County Kansas, resides in the Olathe School district, and is the parent of T.M. Snider, a student at Canyon Creek Elementary in the Olathe School district.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 1 and therefore deny the same.

2.     T.M. Snider is the son of Joshua Snider.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 2 and therefore deny the same.

3.     The Olathe School Board denied his grievance on April 12, 2021.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 3 and therefore deny the same.

4.     Mr. Snider filed a second grievance with the Olathe School Board who refused to provide a hearing for that grievance.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 4 and therefore deny the same.

5.     CarrieAnn Baumgarten is a resident of Johnson County Kansas, resides in the Olathe School district, and is the parent of E.B. and J.B., students in the Olathe School district.  In addition to SB40 relief, CarrieAnn seeks injunctive relief to require the Olathe School Board to provider her a hearing conducted at a meeting of the school board on her second SB40 grievance regarding quarantining her son.

2

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 5 and therefore deny the same.

6.      E.B. and J.B. are children of CarrieAnn Baumgarten.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 6 and therefore deny the same.

7.      Olathe School Board denied her grievance on April 19, 2021.

**RESPONSE:** Blue Valley Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 7 and therefore deny the same.

8.      Julie Myrick is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 8.

9.      R.F. and L.P. are children of Julie Myrick and students in the Blue Valley school system.

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 9.

18.     Julie Myrick's grievances were denied by the Blue Valley School Board on April 13, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph "18", which is a mis-numbered paragraph.

10.     Rebecca Campbell is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 10.

11.     C.A.C., C.C., D.C., M.C., and R.C. are children of Rebecca Campbell.

3

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 11.

12.    Rebecca Campbell's grievance was denied by the Blue Valley School Board on April 27, 2021.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 12.

13.    Rebecca Campbell's children are classified as special needs students by Blue Valley pursuant to K.S.A. 72-3403 et. seq.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 13.

14.    Holly J. Rook is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 14.

15.    C.W.C. and C.C are children of Holly Rock and attend the Blue Valley School Sunrise.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 15; further answering, Ms. Rook's children attend Sunrise Point Elementary School.

16.    Holly Rook's SB 40 grievances were denied by the Blue Valley School Board on April 21, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 11.

17.    Matthew Couch is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 16.

18.    G.C. and J.C. are children of Matthew Couch and attend the Blue Valley School Sunrise.

4

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 18.

19.     Mathew Couch's SB 40 grievances were heard by Zoom conference on May 3, 2021. Couch was not provided a SB40 hearing conducted by a quorum of the Blue Valley School Board and, in addition to SB40, relief, seeks injunctive relief against Blue Valley to require a SB40 hearing conducted by a quorum of the Blue Valley School Board.

**RESPONSE:** Blue Valley Defendants admit Mr. Couch's SB 40 grievance was heard in a live hearing over Zoom videoconference on May 3, 2021. Blue Valley Defendants deny the remaining allegations contained in Paragraph 19.

20.     Laura Klingensmith is a resident of Johnson County Kansas, resides in the Blue Valley School district.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 20.

21.     K.K. is the child of Laura Klingensmith and attends a Blue Valley school.

**RESPONSE:** Upon information and belief, Blue Valley Defendants admit the allegations contained in Paragraph 21.

22.     Klingensmith's SB 40 grievance was denied by the Blue Valley School Board on April 13, 2021.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 22.

23.     Terri E. Baker is a resident of Johnson County Kansas, resides in the Blue Valley School district, and is a parent of her six year old son Silo (pseudonym) who was and is enrolled in the Blue Valley School district (student number 10140955) as a special needs child pursuant to K.S.A. 72-3403 et seq.

**RESPONSE:** Blue Valley Defendants admit Ms. Baker is a resident of Johnson County, Kansas and resides in the Blue Valley U.S.D. 229 and is a parent/guardian of Silo who is currently

5

enrolled in Blue Valley U.S.D. 229 as a student with an IEP. Blue Valley Defendants deny the remaining allegations contained in Paragraph 23. Further answering, Blue Valley states that Silo was not enrolled in Blue Valley U.S.D. 229 at the time Ms. Baker filed her SB 40 grievance.

24.     Terri's SB 40 grievance was denied by the Blue Valley School Board on April 13, 2021. Terri filed a second grievance which the Blue Valley School Board refused to conduct a hearing upon.

**RESPONSE:** Blue Valley Defendants admit the Blue Valley Board of Education denied Ms. Baker's first SB 40 grievance on April 8, 2021. Blue Valley Defendants admit the Blue Valley Board of Education did not conduct a hearing on Ms. Baker's second purported grievance under SB 40. Blue Valley Defendants deny the remaining allegations contained in Paragraph 24.

25.     Silo was given an Individual Education Program (IEP) by the Blue Valley United School District on or about 4/27/2020, and it remains in effect until Blue Valley changes or eliminates it.

**RESPONSE:** Blue Valley Defendants admit Silo has an IEP dated on or about April 27, 2020. Blue Valley Defendants deny the remaining allegations contained in Paragraph 25.

26.     Blue Valley School District USD 229 is a school district in Johnson County Kansas.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 26.

27.     Brian Daley is an employee of Blue Valley and the records custodian designated by Blue Valley.

**RESPONSE:** Blue Valley Defendants admit Brian Daley is an employee of Blue Valley U.S.D. 229. Blue Valley Defendants deny the remaining allegations contained in Paragraph 27.

6

28.     Blue Valley Board of Education is the board of education for Blue Valley School District USD 229.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 28.

29.     Amy Tysseling is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 29.

30.     Mike Seitz is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 30.

31.     Stacy Obringer-Varhall is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 31.

32.     Tom Mitchell is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 32.

33.     Patrick Hurley is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 33.

34.     Jodie Dietz is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 34.

35.     Michele Benjamin is a board member of the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 35.

36.     Olathe Public Schools USD 233 is a school district in Johnson County Kansas.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 36.

37.     Olathe Public Schools Board of Education is the board of education for the Olathe Public Schools USD 233.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 37.

38.     Joe Beveridge is a board member of the Olathe Public Schools Board of Education.

7

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 38.

39.     Brad Boyd is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 39.

40.     LeEtta Felter is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 40.

41.     Brian Geary is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 41.

42.     Brent McCune is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 42.

43.     Kristin Schultz is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 43.

44.     Shannon Wickliffe is a board member of the Olathe Public Schools Board of Education.

**RESPONSE:** Blue Valley Defendants admit the allegations contained in Paragraph 44.

45.     The Board of Commissioners of Johnson County, Kansas (the "County Board") is the legislative authority with administrative oversight of the Johnson County Department of Health and Environment. The County Board has legal authority to sue and be sued.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 45.

46.     Johnson County Department of Health and Environment is a department of Johnson County. Sanmi Areola is the director of the Johnson County Department of Health and Environment and is sued in his official capacity.

8

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 46.

47.    The Tenth Judicial District is a creation of the Kansas Constitution, which provides that the state be divided into judicial districts and that each judicial district have at least one district judge. There are 31 judicial districts in the state of Kansas.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 47.

48.    Laura Brewer is the records custodian for the Tenth Judicial District.

**RESPONSE:** The allegations in this paragraph do not pertain to Blue Valley Defendants. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 48.

**2021 SB 40**

49.    The Kansas Senate finalized SB 40 on March 25, 2021.

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 49.

50.    SB 40 states in part that a local board of education in the only entity with authority to "take any action, issue any order or adopt any policy made or taken in response to" the Covid-19 health emergency that affects the operation of any school or attendance center of any school.

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 50.

9

51.     One example is an action or policy that "mandates any action by any students or employees of a school district while on school property."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 51.

52.     SB 40 states in part that "a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1)… may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was taken, order was issued or policy was adopted by the board of education."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 52.

53.     SB 40 provides that any parent or student "aggrieved" by the decision of a Board of Education "may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the board."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 53.

54.     SB 40 states that "the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the board of education is narrowly tailored to

10

respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose."

**RESPONSE:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 54.

55.     All of the plaintiffs submitted grievances to each respective defendant Board of Education and are now aggrieved by the decisions of each Board of Education as defined under SB 40.

**RESPONSE:** Blue Valley Defendants lack sufficient knowledge regarding all of the plaintiffs in this action and therefore deny the allegations contained in Paragraph 55.

56.     Each of the plaintiffs have timely filed their respective SB40 claims in this Court of which this Court now has jurisdiction.

**RESPONSE:** Blue Valley Defendants lack sufficient knowledge regarding "each" of the plaintiffs in this action and therefore deny the allegations contained in Paragraph 56.

### School Policies on Masks

57.     The Kansas Department of Education (KSDE) published "Navigating Change: Kansas Guide to Learning and School Safety Operations." The Navigating Change Operations did not provide requirements or contain mandates but instead provided guidance: "suggestions" and "best practices." In the prefatory letter from Dr. Randy Watson, he described it as a "guidance provides multiple options in order to help facilitate district-level discussions as contingency plans are developed." See attached Navigation Change Policy.

**RESPONSE:** Blue Valley Defendants admit Plaintiffs appear to have attached an accurate copy of KSDE's "Navigating Change" document. The remaining allegations in Paragraph 67

11

amount to legal argument and therefore Blue Valley Defendants deny the remaining allegations contained in Paragraph 57.

58.     The Blue Valley School District adopted the KSDE Navigating Change guidance policy as its own policy regarding mask wearing by students. The Olathe School Board referred to the KDHE guidelines which also refer to the Navigating Change policy but is unknown what written policy the Olathe School Board has adopted regarding student masking.

**RESPONSE:** Blue Valley Defendants admit that on August 18, 2020 the Blue Valley Board of Education voted to adopt the KSDE Navigating Change 2020 gating criteria utilizing local district data where available; further answering, Blue Valley U.S.D. 229 admits it has enforced its mask requirement since August 2020. Blue Valley Defendants are without knowledge sufficient to form a belief regarding Olathe School Board's actions and therefore deny the same. Blue Valley Defendants deny the remaining allegations contained in Paragraph 58.

59.     The Navigating Change policy on masks provides for individualized exemptions and does not require 100% participation of all students. In fact, the Navigating Change policy does not require any student to wear a mask – it only suggests "best practices." Moreover, the Navigating Change policy does not require mask wearing at all but that the school "strongly encourage masks or cloth face coverings."

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 59.

60.     The Navigating Change policy not only does not mandate continuous mask wearing by students, it provides discretion for a school not do so. For example, the Navigating policy specifically provides discretion for allowing "mask breaks." As to athletics, mask are suggested

12

"when 6 feet of personal distance isn't feasible." Similarly, in the performing arts mask are not suggested if there is "6 feet of personal distance" that is feasible. Regarding orchestra and bands, it suggests that masks should be used "when feasible" and that "when masks are not feasible, utilize outdoor locations and/or large indoor locations allowing for increased personal distance of greater than 6 feet," For theatre it states to "use masks or cloth face coverings when safety guidelines are in conflict with social distancing (.e.g. ladders, lighting rigs)." The audience is not required to wear masks but instead "strongly encourage audience members to wear masks or cloth face coverings."

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 60.

61.     The Navigating Change policy in fact provides that masks should not be required of any one student under certain conditions. It states mask should be worn inside school "**unless it inhibits the person's ability to perform his or her job, inhibits a student's ability to participate in the educational process** or is disruptive to the educational environment." "The person's ability" is an individualized exemption.

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 61.

62.     Thus, by its own terms the Navigating Change policy does not suggest or mandate any one student be required to wear a mask when it inhibits that particular student's ability to participate in the educational process.

13

**RESPONSE:** The allegations contained this paragraph amount to legal argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 62.

63.     All of the plaintiffs in this lawsuit were and are aggrieved because mask wearing for their student child inhibited and now inhibits the student's respective ability to participate in the educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 63.

64.     Yet their respective teachers and principals of the plaintiff students at each respective school refuse to follow the Navigating Change policy by still requiring each aggrieved student to wear a mask even though it is inhibiting each aggrieved student's participation in the educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 63.

65.     Blue Valley also has a de facto policy of allowing an unlimited number of students to attend school without a mask depending on qualifying for its medical reason exemption.

**RESPONSE:** Blue Valley Defendants admit that Blue Valley U.S.D. offers students a medical exemption process for the mask requirement. Blue Valley Defendants deny the remaining allegations contained in Paragraph 65.

### COUNT 1
**Statutory Right to Privacy and Violation of Student Privacy Joshua and T.M Snider / CarrieAnn Baumgarten E.B. J.B. v Olathe Board of Education and Board Members**

66.     Plaintiffs Joshua and T.M. Snider (collectively referred to as "Joshua") and CarrieAnn Baumgarten E.B. J.B. (collectively as CarrieAnn) restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 65 of the petition.

14

67.     SB40 requires that any SB40 hearing be conducted in the context of a board of education meeting which must be open to the public.  Instead, the Olathe Board of Education (referred to as "OBE") decided to utilize a different procedure utilizing what it called a "hearing officer" to conduct a conference not during a board of education meeting.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 67.

68.     Joshua and CarrieAnn provided the OBE their respective grievances which contained information that was private under OBE board policy and the statutory authority cited therein. It contained student data as enumerated in K.S.A. 72-6313.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 68.

69.     OBE then chose to use an OBE employee to act as a "hearing officer" and then to conduct a conference on Joshua's and CarrieAnn's SB40 grievances in which the "hearing officer" would operate in a quasi-judicial manner. Under this made up procedure, the "hearing officer" would present his "recommendations" and "findings" to a quorum meeting of OBE in which OBE would then decide.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 69.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

70.     OBE was not authorized to use a so-called "hearing officer" under SB 40 or to use an OBE employee to operate as a "hearing officer" to hear Joshua's and CarrieAnn's grievances. OBE chose to utilize a conference in which to address those grievances which OBE published.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 70.

71.     OBE only has two types of meetings: regular and special. Each meeting requires a quorum. There was no quorum present when the hearing officer conducted his conference with Joshua and CarrieAnn's grievances.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 71.

72.     Instead of conducting a meeting, OBE voluntary chose not to have the matter heard by a meeting of the OBE Board but instead to conduct a conference which was not a meeting and was not a meeting which was subject to any open meeting requirement.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 72.

73.     OBE has a Policy that requires minutes for all meetings. OBE did not identify Joshua's and CarrieAnn's grievances so called "hearing" as a meeting and consequently identifies no minutes for that conference.

16

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 73.

74.     There was no meeting in which OBE conducted a hearing.  There was no quorum of the Board present – there were no members of the Board present when both parents were required to present private student information.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 74.

75.  .   OBE stated in its SB 40 hearing request form that "All hearings shall be open to the public in accordance with the open meetings act K.S.A. 75-4317" but OBE did not comply with that statute because it did not conduct a hearing during a meeting of the OBE.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 75.

76.     Under 75-4317a. "Meeting" is defined as "any gathering or assembly in person or through the use of a telephone or any other medium for interactive communication by a majority of the membership of a public body or agency subject to this act for the purpose of discussing the business or affairs of the public body or agency."

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 76.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

77.     At Joshua's and CarrieAnn's conference, there was not a majority of the membership of OBE present and those no "meeting" occurred that would be subject to an open meetings requirement.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 77.

78.     SB 40 required the Board to conduct a meeting to hear Joshua's and CarrieAnn's grievances but failed to do so. Instead, it chose not to meet but to have a hearing conducted by one of its employees it called a "hearing officer" quasi-judicial manner which cannot be delegated by the Board to an employee it calls a "hearing officer." Because there was no meeting, there was no requirement to conduct that conference as though it were subject to the open meeting requirement of SB 40. OBE should have conducted that hearing in private but failed to do so.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 78.

79.     Joshua and CarrieAnn and their student children had their rights of privacy violated and should not have been required to disclose private student information at the conference conducted by the OBE employee.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 79.

### COUNT 2
**Right to Privacy and Violation of Student Privacy Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children, Laura and son v Blue Valley Board of Education and Board Members**

18

80.     Plaintiffs Terri Baker (Terri) and Silo Baker, Rebecca Campbell (Rebecca) and her plaintiff student children, Holly Rook (Holly) and her plaintiff student children, and Julie Myrick (Julie) and her plaintiff student children, Matthew and his sons, restate and incorporate by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 80 of the petition.

81.     Terri and Julie provided Blue Valley their respective grievances which contained information that was private under Blue Valley policy 3905 and the statutory authority cited therein.  It contained student data as enumerated in K.S.A. 72-6313.

**RESPONSE:** Blue Valley Defendants admit Ms. Baker and Ms. Myrick chose to include information about their children in their grievances. The remaining allegations contained in Paragraph 81 amount to legal conclusions and argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the remaining allegations contained in Paragraph 81.

82.     Blue Valley then chose to delegate its SB40 hearing obligations to a third party attorney, Roger Warren (Warren). Blue Valley made up this procedure not found in SB40 for Warren to act as a "hearing officer" and then to conduct a Zoom conference on Terri's and Julie's SB 40 grievances in which the hearing officer would operate in a quasi-judicial manner. The Blue Valley board was not authorized by the Kansas Senate under SB40 to delegate its obligation to meet and hear these grievances to a third party it calls a "hearing officer."

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 appointed Roger Warren as a hearing officer to preside over an SB40 hearing involving Ms. Baker's and Ms.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

Myrick's grievances. Blue Valley Defendants deny the remaining allegations contained in Paragraph 82.

83.     Similarly, Blue Valley chose to hire a third party, Kevin Moriarty (Moriarty) to act as a "hearing officer" and then to conduct a Zoom conference on Holly's and Rebecca's respective SB 40 grievances.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 appointed Hon. Kevin Moriarty as a hearing officer to preside over an SB40 hearing involving Ms. Rook's and Ms. Campbell's grievances. Blue Valley Defendants deny the remaining allegations contained in Paragraph 83.

84.     Blue Valley then provided Warren and Moriarty with Terri's, Rebecca's, and Holly's grievances which contained private information covered under policy 3905.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 provided Warren and Moriarty the grievances that formed the basis for the SB40 hearings over which they respectively presided, with student PII redacted. Blue Valley Defendants deny the remaining allegations contained in Paragraph 84.

85.     Blue Valley was not authorized to create its "hearing officer" process under SB 40 and was not authorized to hire Warren or Moriarty to function or operate as a meeting of the board of education to hear those plaintiff parents respective SB 40 grievances.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 85.

86.     The Blue Valley Board only has two types of meetings: regular and special. Each meeting requires a quorum constituting four members.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 86.

20

*Clerk of the District Court, Johnson County Kansas*
*05/04/21   05:08pm AH*
WA 16534195.1

87.     Instead of conducting a meeting, Blue Valley voluntary chose not to have the matter heard by a meeting of the Board but instead to conduct a Zoom conference which was not a meeting and not a meeting subject to an open meeting requirement.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 87.

88.     Policy 1690 requires minutes for all meetings. Blue Valley did not identify the April 7, 2021, Zoom conference as a meeting and consequently identifies no minutes for that hearing.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 88.

89.     There was no meeting on April 7, 2021, in which Warren conducted a hearing. There was no quorum of the Board present – there were no members of the Board present.

**RESPONSE:** The allegations in this paragraph amount to legal argument and conclusions and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 89.

90.     SB 40 required the Board to conduct a meeting to hear all of these plaintiffs grievances but failed to do so.   Instead, it chose not to meet but to have a Zoom conference conducted by a third party.  Because there was no meeting, there was no requirement to conduct that hearing as though it were subject to the open meeting requirement of SB 40.  Blue Valley should have met and conducted a hearing that was open to the public but it was not authorized to disclose private student information at a Zoom conference conducted by Warren or Moriarty.

**RESPONSE:** The allegations in this paragraph amount to legal conclusions and argument and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 90.

21

COUNT 3

Legal and Equitable SB40 Relief

Joshua, T.M., CarrieAnn, E.B. J.B. v Olathe Board of Education and Board Members

91.     Plaintiffs Joshua, T.M., CarrieAnn, E.B., and J.B. restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 90 of the petition.

92.     Joshua submitted a SB40 grievance to OBE because he and his son were aggrieved by the actions, orders, and policies of OBE as applied to T.M. as mask wearing interfered with T.M.'s ability to learn or otherwise participate in the education process that took place within the last 30 days.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 92.

93.     CarrieAnn submitted a SB40 grievance to OBE because she and her sons were aggrieved by the actions, orders, and policies of OBE as applied to E.B. and J.B. as mask wearing interfered with E.B. and J.B.'s ability to learn or otherwise participate in the education process that took place in the last 30 days.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 93.

94.     Joshua, T.M., CarrieAnn, E.B., and J.B. are now aggrieved by the respective decisions OBE within the last 30 days to require T.M., E.B., and J.B. to wear a mask as a condition to obtain an education in the OBE school district.

22

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 94.

95.    CarrieAnn is further aggrieved because OBE is denying her child an education saying the child needs to be quarantined because she was "exposed" to student testing positive with Covid 19. CarrieAnn made a second grievance to OBE on April 29, 2021. The Johnson County Health Department sent the letter quarantining her child which that agency has no authority under SB40 to exclude her child from school. Further, the timing of this quarantine is suspect and retaliatory for CarrieAnn filing her first grievance and the determination of "exposed" is not defined but left to an arbitrary determination by each school. Her child suffers the loss of an education and is irreparably harmed.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 95.

96.    Because OBE refused to permit T.M. to attend school without a mask within the last 30 days, based on it interfering with T.M.'s ability to learn, Joshua sought a different exemption obtained from a doctor's opinion that the mask caused T.M. "anxiety that has resulted in self-mutilation behaviors" and that T.M. "should be Covid-19 immune." This required Joshua to incur expenses he would not otherwise be required to expend. OBE has required T.M., within the last 30 days, to constantly wear a mask as a condition to attend school pursuant to OBE orders and policies. Joshua and T.M. are aggrieved by that ongoing action in expending money and time in order to obtain the only individualized mask exemption OBE would allow rather than providing an individualized exemption based upon mask interfering with T.M.'s educational process.

23

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 96.

97.   It is unknown whether OBE will require yearly applications for a medical exemption and Joshua should not be required to expend the time and money for future doctor appointments in conjunction with obtaining OBE's mask exemption when OBE should now, and in the future, allow Joshua's son to attend school without a mask for all future school years.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 97.

98.   E.B., and J.B. should not be required to a mask as a condition to attend school when OBE allows T.M. and any number of other OBE students to attend school without a mask. CarrieAnn should not be required to incur the additional time and expense seeking a doctor who would say that masks interfere with E.B. and J.B.'s learning or that it is a medical necessity.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 98.

99.   The actions of OBE are not narrowly tailored to T.M., J.B., or E.B. and are not the least restrictive means available to OBE, as applied to T.M., J.B., or E.B. in providing an education to each while furthering OBE's mask policy. Joshua should not be required to incur additional expenses to justify OBE's one exemption when it could take Joshua's word as a parent that masks interfere with T.M.'s learning or that it causes T.M. anxiety and provide an individualized mask exemption for T.M. only.

24

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 99.

100.   CarrieAnn should not be required to incur additional expenses to justify OBE's one individualized mask exemption when it could take CarrieAnn's word as a parent that masks interfere with J.B.'s or E.B.'s learning and provide the individualized mask exemption for only her two children.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 100.

101.   OBE now has a less restrictive means available to it and actually uses it rather than to require Joshua or CarrieAnn to incur expenses and prove a medical or behavioral disorder as a condition not to wear a mask to school. OBE has already has discretion to allow a student such as J.B. or T.M. to attend school without a mask because it interferes with their respective learning and OBE's requirements for mask exemptions are not narrowly tailored to T.M., J.B., or E.B. and not the least restrictive means available to OBE to hinder the spread of Covid-19 while providing an education to each respective student.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 101.

102.   Further, OBE's policy now allows OBE to allow an unlimited number of students to attend school without a mask based upon one reason – but only if the parent incurs additional expense and obtains a doctor's opinion. OBE currently has discretion to more narrowly tailor the

25

manner in which it proves mask exemptions based upon a parent's reporting of the child's behavior, his reaction to mask wearing, and how it interferes with the student's learning without requiring the parent incur time and expenses in locating a doctor who will accept the parent's reporting of the child's behavior as a medical diagnosis or prognosis.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 102.

103.    There is a less restrictive way available to OBE in allowing T.M. to attend school without a mask because OBE currently tailors its mask policy to make individual exemptions allowing the one student to attend school unmasked while requiring other students to wear a mask. Allowing individual mask exceptions now demonstrates that OBE, by its own terms and discretion, can allow T.M., as an unmasked student to attend school, to attend without a mask without subverting its goal of hindering the spread of Covid-19 while providing an in person education to T.M.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 103.

104.    Once touched the masks are immediately contaminated and are no longer efficacious in any capacity let alone to mitigate the spread of a respiratory virus. J.B., E.B., and T.M. are incapable of keeping each respective mask sterilized for any amount of time, let alone for an entire day. By wearing a dirty mask, each is putting himself at greater risk of illness than if he didn't wear one at all. Even if that mask is changed out every day, the chance of his hands being sterile and the masks staying sterile for an entire day are improbable at best.

26

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 104.

105.    In Kansas, as of March 22, KDHE data shows the counties without a mandate added 5,441 cases per 100,000 of population since November 23. The counties that had a mandate in effect since July added 5,439 cases; that difference of just two cases over 17 weeks in 43 counties which is virtually unnoticeable. https://sentinelksmo.org/mask-mandates-had-no-impact-on-covid-case-growth/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 105.

106.    In a study referenced in a Montana Gazette article dated January 25th, 2021, it found the masks themselves are having wide-ranging and deleterious effect on children: "A new study, involving over 25,000 school- aged children, shows that masks are harming schoolchildren physically, psychologically, and behaviorally, revealing 24 distinct health issues associated with wearing masks. The health issues and impairments observed in this study were found to affect 68% of masked children who are forced to wear a face covering for an average of 4.5 hours per day. The study also includes 17,854 health complaints submitted by parents. Some of the health issues found in the study include: increased headaches (53%), difficulty concentrating (50%), drowsiness or fatigue (37%), malaise (42%), and nearly a third of children experience more sleep issues than they had previously and a quarter of children developed new fears. "The study also found that 29.7% of children experienced shortness of breath, 26.4% experienced dizziness, and hundreds of the participants experienced accelerated respiration, tightness in chest,

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

weakness,           and           short-term           impairment           of

consciousness."https://montanadailygazette.com/2021/01/25/new-study-finds-masks-

hurt-schoolchildren-physically-psychologically-and-behaviorally/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 106.

107.    As a juxtaposition to mandating masks for prevention, their implementation has

actually led to a greater spread of the virus and other illness. The states with the strictest lockdowns

and most restrictive mask mandates have some of the worst statistics with regard to cases, case

fatality rate and economic hardship. Conversely, states like Texas and Florida that dropped their

mask mandate and completely re-opened their economy the cases have fallen over 30% in the past

three           weeks           despite           the           masks           no           longer           being           required.

https://www.breitbart.com/politics/2021/04/24/tx-fl-report-fewer-new-cases-of-virus-per-capita-

than-pro-mask-states-mi-pa-and-ny/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 107.

108.    MIT researchers now say one is no safer from Covid indoors at 6 feet or 60 feet.

https://www.cnbc.com/2021/04/23/mit-researchers-say-youre-  no-safer-from-covid-indoors-at-6-

feet-or-60-feet-in-new-study.html

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 108.

109.    Mask Mandates for Children Mostly Harmful: Professor of Medicine.
https://link.theepochtimes.com/mkt_app/mask-mandates-for-children-mostly-harmful-professor-
of-medicine_3785980.html

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 109.

110.    Another Study BY THE CDC Showing Masks Don't Work.
https://www.thegatewaypundit.com/2021/04/stanford-study-noting-ineffectiveness-harm-masks-
censored-twitter-now-second-study-published-cdcs-website-confirms-masks-cause-serious-side-
effects/

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 110.

111.    To date, there has not been a single peer-reviewed study proving the efficacy of

masks in the prevention of Covid-19.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and

therefore no response is required. To the extent a response is required, Blue Valley Defendants

deny the allegations in Paragraph 111.

WHEREFORE the plaintiffs Joshua and his son T.M. CarricAnn and her sons E.B. and J.B.

request legal and equitable damages; that the Court enter its judgment declaring that they are

aggrieved by the actions of OBE and each of the listed board members when they did not conduct

a meeting to hear their grievances, were required to conduct a meeting under quorum requirements

to hear the grievances, that OBE did not do so, that the procedures utilized were unauthorized under

SB 40, that Joshua and T.M. were denied due process under the Kansas Bill of Rights, and that

they are further aggrieved by the actions of OBE in not allowing their respective student children

to attend school each day without a mask, and without incurring the time and expense of obtaining a doctor's opinion about medical necessity, and that OBE already has discretion to provide individualized exemptions and can allow each of these three students to attend school unmasked if for no other reason that it interferes with each student's learning process, and that requiring either of these students to wear a mask to school is not the least restrictive means to provide each one an education while furthering the interests of preventing the spread of Covid 19. CarrieAnn and Joshua further request that OBE be restrained from prohibiting their respective children from attending school in the 2021 or 2022 school year without wearing a mask.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

**COUNT 4**
**Legal and Equitable SB40 Relief**
**Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children, Laura and son v Blue Valley Board of Education and Board Members**

112.   Plaintiffs Laura, Terri, Silo, Matthew, G.C., J.C., Rebecca and children, Holly and children, Julie and children restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 111 of the petition.

113.   Each plaintiff submitted a SB40 grievance to Blue Valley because each were aggrieved by the actions, orders, and policies of Blue Valley as applied to each plaintiff as mask wearing interfered with each student's ability to learn or otherwise participate in the education process that took place within the last 30 days.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 113.

30

114.    Each plaintiff is now aggrieved by the respective decisions Blue Valley within the last 30 days to require each of their respective students to wear a mask as a condition to obtain an education in the BV school district.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 114.

115.    Because BV refused to permit the plaintiff's students to attend school without a mask within the last 30 days, based on it interfering with each ability to learn, parents sought a different exemption obtained from a doctor's opinions that not wearing a mask was medically necessary. This required those parents to incur expenses he would not otherwise be required to expend. BV has required each plaintiff student named in this count within the last 30 days, to constantly wear a mask as a condition to attend school pursuant to BV orders and policies. These parents are aggrieved by that ongoing action in expending money and time in order to obtain the only individualized mask exemption BV would allow rather than providing an individualized exemption based upon mask interfering with each student's in person educational process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 115.

116.    It is unknown whether BV will require yearly applications for a medical exemption and each parent should not be required to expend the time and money for future doctor appointments in conjunction with obtaining BV's exclusive favored mask exemptions when BV should now, and in the future, allow each plaintiff student to attend the BV school without a mask for all future school years.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 116.

117.    The actions of BV are not narrowly tailored to each plaintiff student named in this count and BV's mask wearing requirement as applied to each named student is not the least restrictive means available to BV. in providing an education to each student while accomplishing

31

BV's purpose of providing an in person education to each named student while hindering the spread of Covid 10 to these named students or hindering the spread of Covid 19 from these named students to others.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 117.

118.   BV now has the means within its own Navigation policy to allow these named students to attend school without a mask because the mask interferes with that student's participation in the learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 118.

119.   BV has available to it a less restrictive means to hinder the spread of Covid 19 by or from these named students other than requiring each to wear a mask. BV already has the means to permit each student to attend school without a mask while accomplishing its purpose of hindering the spread of Covid 19 from these named students. Requiring these named students is not narrowly tailored to them and is in fact contrary to the existing Navigating Change policy exempting them from a mask requirement because it interferes with their respective learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 119.

120.   Further, BV's policy not only provides mask exemptions on the basis of each student's grievance, BV's policy now allows an unlimited number of students to attend school without a mask albeit for its favored chosen exemptions – but only if the parent incurs additional expense and obtains a doctor's opinion that it is a medical necessity. BV refuses to require schools to follow its Navigation Change policy permitting a student to be exempt from the mask requirement.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 120.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

121.   As stated in the supporting brief, the fact that BV now allows an unlimited number of students to attend school without a mask for various reasons does appreciable damage already to its purpose of hindering the spread of Covid 19 and there is no compelling state interest, and nothing of a scientific basis, in allowing these students to attend school without a mask for an IEP hinderance of learning or medical reason and then prohibit the same student from attending school without a mask even though the mask interferes with the learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 121.

122.   The fact that each school board policy provides for numerous mask wearing exemptions – mask breaks, athletics, band, drama, and then for medical necessity or even IEP students (which is just the same hinderance of the learning process in IEP clothing) coupled with the fact their own policies specifically provide that masks should not be required if it interferes with the educational process means BV's purpose in requiring these named students to wear a mask is not compelling.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 122.

123.   BV has demonstrated deliberate indifference in the denial of the grievances and its own arbitrary unwritten ad hoc policies and has further discriminated against these students and parents by disregarding its own Navigating Change policy, then by favoring only students that can demonstrate a medical necessity signed off by a doctor, and favoring IEP students who can be mask exempted if the IEP team determines it interferes with the delivery of services while not providing mask exemptions to these students when it similarly interferes with their learning process.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 123.

124.   Legal and equitable relief is sought including loss of educational services, costs for tutoring, therapeutic expenses, and special services. Compensatory services should be

33

provided to make up or compensate for the defendant district's failure to provide the named students with appropriate education and services in the past. Tutoring at school expense, summer services should be required to make up for lost service time, additional related services, and reimbursement to these parents for outside tutoring or programs should be granted as part of the relief.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 124.

## COUNT 5
## INJUNCTIVE RELIEF

125.    Plaintiff Matthew restates and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 124 of the petition.

126.    Blue Valley refused to provide Mathew a SB40 hearing conducted by a quorum of the Blue Valley board of education. Instead, Blue Valley provided him a Zoom conference.

**RESPONSE:** Blue Valley Defendants admit Blue Valley U.S.D. 229 provided Mr. Couch an SB40 hearing via live Zoom videoconference. Blue Valley Defendants deny the remaining allegations contained in Paragraph 126.

127.    Matthew has a right under SB40 to have his grievances heard by a quorum of each respective board and not by a person named "hearing officer" who has no authority under SB40.

**RESPONSE:** Blue Valley Defendants deny the allegations contained in Paragraph 127.

128.    CarrieAnn seeks injunctive relief preventing the Johnson County Department of Health and Environment from exercising authority over her son's school attendance or to otherwise not attend school because of a purported Covid 19 exposure.

34

**RESPONSE:** Ms. Baumgarten is not asserting claims against Blue Valley Defendants and therefore no response is required to this paragraph. To the extent a response is required, Blue Valley Defendants deny the allegations contained in Paragraph 128.

WHEREFORE Matthew and CarrieAnn request injunctive relief as described above.

**RESPONSE:** Blue Valley Defendants deny any of the Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

**COUNT 6**
**Kansas Preservation of Religious Freedom Act**
**Terri, Silo, Rebecca, R.C., C.C., M.C., Julie, R.F., L.P. v Blue**
**Valley Board of Education and Board Members**

129.    Plaintiffs Terri, Silo, Rebecca, R.C., C.C., M.C., Julie, R.F. and L.P. restate and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants incorporate herein by reference their responses to each and every allegation contained in Paragraphs 1 through 128 of the petition.

130.    The named defendants are "government" as defined under K.S.A. 60-5302.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

131.    The religious liberty interest protected by the Kansas Preservation of Religious Freedom Act is an independent liberty that occupies a preferred position, and no encroachments upon this liberty shall be permitted, whether direct or indirect, unless required by clear and compelling governmental interests of the highest order.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

35

132.    Blue Valley policy requires Silo, R.C., CC., and M.C. to be vaccine compliant with a number of vaccines over the child's school life.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

133.    The state of Kansas permits Blue Valley to enact its own policies on immunizations for school enrollment and participation in school. Blue Valley has enacted its policy 3113.2. Blue Valley provides that a student is not required to be vaccine compliant if a written statement is signed by one parent or guardian stating that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

134.    There are no Blue Valley written policies regarding a religious exemption to vaccine injecting other than that stated in policy 3113.2.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

135.    That policy, as applied to Rebecca, Julie, and Terri, directly and indirectly constrains, inhibits, curtails or denies their respective exercise of religion as defined under the Kansas Preservation of Religious Freedom Act (KPRFA).

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

136.   Silo, R.C., C.C., and M.C. are each entitled to a free appropriate public education (FAPE) as provided in Section 504 and the Individuals with Disabilities Education Act (IDEA).

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

137.   Blue Valley has adopted special needs student policies, that as applied to the plaintiffs Terri and Rebecca, directly or indirectly constrains, inhibits, curtails or denies their respective exercise of religion as defined under the KPRFA.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

138.   Blue Valley's policies impose a duty upon Rebecca and Terri to provide Blue Valley's designated special needs services in the manner dictated by Blue Valley which does not permit Terri or Rebecca to provide those services in conjunction with their respective exercise of religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

37

139.   Blue Valley policies impose upon Terri and Rebecca obligations to remove their children from their religious activities and religious teaching environment as a condition for the delivery of special needs services to Terri and Rebecca's special needs children.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

140.   Part of those Blue Valley policies require these students to be taught in a secular and nonideological manner and with masks contrary to Terri and Rebecca's exercise of religion as defined under the KPRFA.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

141.   This policy requires that their special needs students will not be allowed to learn without masks or in connection with religious courses, devotional exercises, religious training, or any other religious activity which burdens their respective exercise of religion and right to school choice exercising their religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

142.   Blue Valley's special needs policies as applied to Terri and Rebecca, both directly and indirectly, constrains, inhibits, curtails or denies their respective practices or observance of religion under section 7 of the bill of rights of the constitution of the state of Kansas and the free exercise clause of the first amendment to the constitution of the United States.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

143.    These policies regarding special education for each of their children requires them respectively to act or refuse to act in a manner substantially motivated by a sincerely-held religious tenet or belief, whether or not the exercise is compulsory or a central part or requirement of their respective religious tenets or beliefs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

144.    Under K.S.A. 72-3403 et seq it is the ongoing duty of Blue Valley to provide these students their respective special needs services under Blue Valley's IEP which Blue Valley is refusing to do regarding Silo unless Terri meets their unconstitutional and arbitrary conditions.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

145.    Silo is presently enrolled but truant, not attending school, and not receiving his special needs services because of Blue Valley's ongoing and everyday actions and policies including the adoption of the Kansas State Department of Education Navigating Change policy which occurred on August 18, 2020, which is being enforced each and every school day by it actions, its policy prohibiting Silo's special needs services to be provided in conjunction with or during any religious activity or religious training, and its misrepresentations that the Bakers requested (which they did not) that Silo be withdrawn from school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

146.   Silo has a current I.E.P. from Blue Valley that can only be modified by Blue Valley. Blue Valley is not providing Silo a FAPE and Silo is not receiving a FAPE because of Blue Valley's actions requiring Silo to attend school, to attend masked, and to receive his special services in contradiction to Terri's religious beliefs: Blue Valley will not provide Silo any special needs services during any schooling associated with any religious activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

147.   R.C., C.C., and M.C. have current I.E.P.s from Blue Valley that can only be changed by Blue Valley. Blue Valley will not provide R.C., C.C., and M.C. Silo a FAPE during any schooling associated with any religious training or activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

148.   Rebecca has religious beliefs regarding how and in what manner her children should be educated. Rebecca believes she has a God-given duty to provide an education, or see that one is provided, to each of her children according to her parental values. Requiring her children to wear masks when masks interfere with their learning ability is contrary to Rebecca's religious exercise as a parent.

40

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

149.   Terri also has similar religious beliefs and regards natural immunities and wearing masks and face shields by Silo is burdens her religious exercise. Moreover, because of Blue Valley's policy, Silo is now truant because of Blue Valley conditions it is imposing during in Covid-19. In conjunction with those Blue Valley I.E.P. services, they are not being provided to Silo at all by Blue Valley, and not being provided at no cost as required under K.S.A. 72-3404(i)" because it requires Terri to forfeit her religious practices and beliefs in exchange for Silo obtaining special services.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

150.   Blue Valley's policy provides for an individualized exemption for a mask if it interferes with the student's ability to be educated and also for a medical necessity exemption but having provided those exemptions for the provision of the services will not allow Terri or Rebecca to provide, at Blue Valley's cost, those special education services while homeschooling or during religious training and activities at a private religious school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

151.   That the interests set out in the Blue Valley polices, as applied to Terri and Rebecca, are not of the highest order and not otherwise served.

41

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

152.    There is no clear and convincing evidence that Blue Valley's policies further a compelling governmental interest, as applied to Terri and Rebecca, that its special needs policies are the least restrictive means of furthering any compelling governmental interest as applied to Rebecca and Terri.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE the above Terri and Rebecca request all of the relief under K.S.A. 60-5303 including, but not to the exclusion of others, injunctive and declaratory relief, actual damages, costs and attorney fees, as applied to them respectively.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 6  within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

### COUNT 7
### Equal Protection Under the Kansas and U.S. Constitution
### All Plaintiffs v School Boards

153.    This count is stated by all plaintiffs against each School Board.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

154.    The plaintiffs and their children are similarly situated to other Kansas students and parents of Kansas school aged children.

42

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

155.   Both school boards provide an exemption to masks based upon it inhibiting or interfering with a special needs student participation in the education process but will not provide the same mask exemption to students not classified as a special needs student.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

156.   Both school boards provide an unwritten policy of an individual "medical necessity" mask exemption to a student of an unlimited number but will not provide an individual mask exemption when the mask interferes or inhibits that student's participation in the education process.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

157.   Both school boards provide an individual unwritten "medical necessity" mask exemption to a student of an unlimited number but will not provide an individual mask exemption when the mask requirement burdens the religious exercise of the parent or student.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

43

158.   Both school boards convey the benefit of in person education for these plaintiff students upon their ad hoc exemptions but will not convey the benefits if those conditions are not met.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE these plaintiffs request injunctive and declaratory regarding the facial and as applied application of Blue Valley's unequal treatment of these plaintiffs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 7 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

**COUNT 8**
**Equal Protection Under the Kansas and U.S. Constitution**
**Terri, Silo, Rebecca, R.C., C.C., M.C. v. Blue Valley**

159.   This count is stated against the Blue Valley School District  USD 229 and the Blue Valley Board of Education.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

160.   Rebecca and Terri are similarly situated to other parents of Kansas school aged children. Silo, R.C., C.C., and M.C. are similarly situated to other Kansas students.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

44

161.    Even though Kansas statutes do not provide for home schooling, the KSDE provides school choice regarding home schooling. Blue Valley policy 2600 provides for home schooling and states that the parent must register with KSDE "as a non-accredited private school."

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

162.    Parents who choose home schooling are permitted to determine their own curriculum, choose their own teachers, and can provide home schooling in the context of religious training and religious activities. Home schooled students are not required to be enrolled in a Kansas public school in order to be home schooled or receive educational services.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

163.    Similarly, Kansas statute provides school choice for private non- public schooling and parents who choose private schooling are permitted to choose a private religious school with religious curriculum, and the education can be provided in the context of religious training and religious activities.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

164.    However, for students classified as special needs or exceptional children, parents are not provided the same kind of funding or school choice. Special needs students such as Silo, R.C., C.C., and M.C., are required to receive a specific curriculum exclusively designated

45

by Blue Valley in the IEP and then provided exclusively by a teacher employed or controlled by Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

165.   Under K.S.A. 72-3404, "special education" must be provided "at no cost to parents" to a child classified as an "exceptional child" but that "no cost" benefit does not flow to or flow equally on the same terms to Terri and Rebecca because of their religious status and beliefs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

166.   Under K.S.A. 72-3410(a)(3) it only requires a school board to provide this special education to a student enrolled in a "private school" and K.S.A. 72-3461 defines a "private school" as a federally tax exempt organization. By definition this excludes a parent teaching at home – homeschooling.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

167.   The special needs student cannot have the special needs curriculum provided during homeschooling and in fact the KSDE specifically excludes homeschooling.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

46

168.    Under K.S.A. 72-3421(a), Kansas imposes a separate duty upon a Terri and Rebecca making it their respective duty to provide the IEP services privately at their personal cost if not done through a public school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

169.    Blue Valley requires that Silo, R.C., C.C., and M.C., be enrolled at Blue Valley and further Blue Valley and K.A.R. 91-40-48 requires Silo's R.C., C.C., and M.C's special needs curriculum be provided during school hours while the "private teacher" must be "under public supervision and control" and the education provided in "a secular and nonideological manner."

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

170.    Other Kansas parents and Kansas students are not barred from using a private teacher not supervised by Blue Valley and are not required to teach their student in a secular and nonideological manner.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

171.    Other Kansas parents of other Kansas students are not given a duty to provide educational services to their child at their own cost.

47

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

172.   The statutory 72-3463 requirement prohibits religious private schools from providing special needs services to an enrolled student but the same student enrolled in a public school could receive the same service. The only difference is religion.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

173.   Public benefit of using state and federal funds to pay for the services of a homeschool teacher for a special needs student are withheld while the same benefit is given to the same teacher for the same student if employed by a religious private school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

174.   Religious private schools and religious private individuals are discriminated against in obtaining the same special education services based upon the religious status and religious character of the curriculum.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

175.   The regulatory requirement that teachers in a religious private school or homeschool setting be under the supervision and control of the state requires religious private

48

school teachers to be employed by the state and also interferes with the exercise of religion and in providing special needs services in a religious private school.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

176.    The regulatory requirement that the special needs services be "provided in a secular and nonideological manner" is unconstitutionally vague.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

177.    The regulatory requirement that the special needs services be "provided in a secular and nonideological manner" targets religion and prohibits special education services to students because of religion or religious activity.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 claim within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

178.    Even if Terri and Rebecca could qualify for a homeschool, 72-3463 discriminates against each because of religion, K.A.R. 91-40-48 requires Terri and Rebecca to be controlled and supervised by the state, and requires each to provide the special needs services in a secular and nonideological fashion – all of which disqualify Rebecca and Terri on the basis of religion and further burden or is substantially likely to burden her free exercise of religion under the Kansas Preservation of Religion Act.

49

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE these plaintiffs request injunctive and declaratory regarding the facial and as applied application of Blue Valley's unequal treatment of these plaintiffs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 8 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

**COUNT 9**
**Open Meeting and Open Records Violations**
**Declaratory and Injunctive Relief**
**Terri Baker v Brian Dailey and Blue Valley**

179.    Plaintiff Terri Baker restates and incorporates by reference the allegations in the above paragraphs.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

180.    There was no "meeting" on April 7, 2021, as defined under the quorum requirements of the Blue Valley Board or under Kansas Open Meetings Act (KOMA). As such the Zoom conference should have been conducted in private and not publicized as Blue Valley did as Terri later discovered.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

50

181.    In the alternative, and if the April 7th hearing constitutes a "meeting" as defined under the Kansas Open Meetings Act (KOMA), Blue Valley did not comply with KOMA or its own policies. There was no physical location for the April 7th Zoom conference, and Terri's counsel was isolated from other members of the public who were participating in the Zoom conference. Counsel for Terri was not informed as to who was present or viewing the Zoom conference other than the few people allowed in the Zoom conference room limited to participants.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

182.    Unknown to Terri at the time, the April 7th Zoom conference was being simulcast by news stations and other media platforms.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

183.    Blue Valley has not modified its public meeting procedures or waived any requirements that are inconsistent with holding virtual meetings. On information and belief, there are no procedures that have been adopted by resolution at the virtual meeting itself or in an emergency order.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

184.    At one point in the Zoom conference, Melissa Hillman instructed Blue Valley to mute the microphone of attorney Linus L. Baker to cut off Mr. Baker's ongoing discussion,

something that cannot happen at an open meeting by anyone attending an open meeting attended physically in person.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

185.   Unknown to Terri, Blue Valley conducted a special meeting on April 7, 2021, to discuss her grievance that Terri made to the Board and which was publicized by Blue Valley on April 6th. Terri's counsel Linus Baker had sent a letter to Roger Warren requesting to participate before the Board and as such requested notices of all meetings regarding Terri and Silo's grievances. Terri received no notice from Blue Valley of the April 7th meeting discussing her grievance and discovered that it occurred from television reports later that evening.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

186.   Terri then later viewed the April 6th and April 7th recorded Zoom conference / meeting online.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

187.   Terri made two open records requests for access and copying of public records April 6, 2021, and April 10, 2021, to the records custodian of the Blue Valley School District and the Board of Education.

52

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

188.    Blue Valley is a public agency under the Kansas Open Records Act (KORA). Brian Dailey is the records custodian for Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

189.    The records requested by Terri were public record as they constituted recorded information, regardless of form, characteristics or location, which is made maintained or kept by or is in the possession of: (1) any public agency; and (2) any officer or employee of a public agency pursuant to the officer's or employee's official duties and which is related to the functions, activities, programs or operations of any public agency. These records are not only paper records, but also computer data, including emails and court records and records provided to a public agency by a third party.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

190.    In response to the April 6th request she received some records. But upon further review it appeared some had been altered without Blue Valley indicating they had been altered. Thus the document appeared as an original unaltered document when in fact the document had been altered by Blue Valley. Terri is still unsure of the extent of document alteration that occurred.

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

191.    One request concerned SB 40 notices by parents to Blue Valley of their grievance. Parents must provide these notices as a pre-condition to filing a civil lawsuit stating a SB 40 cause of action.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

192.    In response to the April 6th request Blue Valley did not provide access to the original records requested except to videos of the April 6 and 7 hearing could be viewed at the District Office. Blue Valley did not provide for allowing Terri to make copies of the videos as requested in Blue Valley's response.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

193.    Blue Valley did not say it would provide access to the records within three business days and failed to provide access to all of the requested records. Blue Valley.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

194.    In response to some of the requests, Blue Valley made the statement that "the District does not provide personal information about private individuals pursuant to the privacy

54

exception to KORA" but did not demonstrate how this statement applied to any requested record, what the legal basis was for this statement as applied to the record requested, or how it specifically applied to any particular requested record.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

195.    Daley's and his staff's alteration of the records in the manner they did was and is deceptive, his refusal to provide access to the records or to provide for copying of the records was not in good faith and was without a reasonable basis in law or fact.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

WHEREFORE the plaintiff Terri Baker requests the Court enter its judgment declaring that access to all of the unaltered records requested by Terri should be allowed, that the Court order the records custodian to provide the plaintiff and his attorney access, which includes copying, to all of the records, in their original format, requested together and that the Court award plaintiff his attorney fees and costs, with such other and further relief as the Court deems just.

**RESPONSE:** Blue Valley Defendants will respond to this paragraph and all other allegations related to this Count 9 within the time set forth in K.S.A. § 60-212, which has not yet expired and was not modified by SB 40 or any of the administrative orders implementing that law.

**COUNT 10**
**Open Records Violations**
**Declaratory and Injunctive Relief**
**Terri Baker v Laura Brewer Tenth Judicial District**

55

196.   Plaintiff Terri Baker made an open records request to Laura Brewer for audio and video recordings of a proceeding open to the public in 21CV01464 O'HARA vs. BLUE VALLEY SCHOOL DISTRICT BOE ET AL. The hearing was conducted virtually, electronically recorded, and also believed to be recorded through Blue Jeans or Zoom conferencing.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 196.

197.   Brewer refused to produce either an audio or video recording which both are open records.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 197.

198.   Brewer stated that the "video recordings are not maintained as part of the court record. The request for a copy of the audio recording is denied. The recording is a tape or disc that was not played in court and is not the transcript of the hearing. This denial is based on KSA § 45-219, KSA § 45-221(a)(1), and Supreme Court Rule 1001(e)(4), 1001(e)(8), and 362."

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 198.

199.   The video recording of that proceeding is maintained by the Johnson County court system and is under the control of the court system. It is recorded information which was made, maintained or kept by or is in the possession of any public agency.

56

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 199.

### Administrative Order 2021-PR-021

200.    The Chief Justice issued an administrative order 2021-PR-021 (Order Authorizing the Use of Two-Way Audio-Visual Communication In Any District or Appellate Court Proceeding) in which remote proceedings can be utilized for any essential or non-essential court proceeding. In paragraph 4 of the Order it states: "Access to a remote proceeding must be provided to the public either during the proceeding or immediately after via access to a recording of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule." Under this administrative order, these recordings of remote proceedings would be open records. There would be no practical distinction in favoring the public's access to recordings of remote proceedings while disfavoring the public's access to the same recording of a proceeding conducted in person. A distinction would be arbitrary as well as raise equal protection concerns.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 200.

### Baker v Hayden

201.    Baker v. Hayden, 55 Kan. App. 2d 473, 486, 419 P.3d 31, rev. granted 308 Kan. 1593 (2018) held that there is no language in K.S.A. 2017 Supp. 45-219(a) that could be construed as specifically prohibiting or restricting access to audio recordings of open court proceedings, which is required by the Kansas Open Records Act to qualify as an exception to disclosure. *Baker v Hayden* further held that there is no language in K.S.A. 2017 Supp. 45-221(a)(20) that could be construed as specifically prohibiting or restricting access to audio recordings of open court

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

proceedings, which is required by the Kansas Open Records Act to qualify as an exception to disclosure.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 201.

202.   Baker v Hayden held that the language in K.S.A. 2017 Supp. 45-219(a) referencing "similar audio or visual items or devices" cannot be read to include an audio recording of the court proceeding itself.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 202.

203.   Baker v Hayden held that court recordings are not considered part of the court reporter's notes under K.S.A. 2017 Supp. 45-221(a)(20) because a court recording does not involve a recording by a court reporter to be used as notes to assist in preparation of a transcript of the proceedings. It held that an audio recording of open court proceedings does not fall into the category of court reporter's notes.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 203.

204.   Baker v Hayden held that the Kansas Supreme Court did not intend the use of electronic recordings in courtrooms to be limited to merely helping the court reporter prepare a transcript and assisting counsel to correct any transcription error.

58

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 204.

205.    The Tenth Judicial District's refusal to provide access to the video and audio recordings was not in good faith and was without reasonable basis in law or fact.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 205.

206.    The plaintiffs adopt, as fully set forth herein, their supporting brief as to the interpretation of SB40 and the SB40 claims for relief.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the allegations in Paragraph 206.

WHEREFORE the plaintiff Terri Baker requests the Court enter its judgment declaring that access to the requested video recording of that proceeding should be allowed under Administrative Order 2021-PR-021 and KORA and that the Court award plaintiff his attorney fees and costs, together with such other and further relief as the Court deems just.

**RESPONSE:** This paragraph and this count do not pertain to Blue Valley Defendants and therefore no response is required. To the extent a response is required, Blue Valley Defendants deny the same.

WHEREFORE, as to all counts and all plaintiffs, each plaintiff requests all legal and equitable available relief available under law and equity and for such other relief as the Court deems just and fair.

59

*Clerk of the District Court, Johnson County Kansas*
*05/04/21  05:08pm AH*
WA 16534195.1

**RESPONSE:** Blue Valley Defendants deny Plaintiffs are entitled to any relief in any form from any of the Blue Valley Defendants.

## AFFIRMATIVE DEFENSES

1.      Plaintiff Terri Baker lacks standing to assert any claim under SB 40 because at the time she filed an SB 40 grievance with Blue Valley U.S.D. 229, she was not "an employee, a student or the parent or guardian of a student" of the District.

2.      Plaintiff Julie Myrick lacks standing to assert claims under SB 40 because Blue Valley U.S.D. 229 granted her children medical exemptions from the mask requirement on or about May 3, 2021. For the same reason, any such claims by Ms. Myrick are moot.

3.      Plaintiffs have not stated a claim under SB 40 because they do not challenge "an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or policy" as required under SB 40.

4.      To the extent Plaintiffs purport to challenge an "action taken, order issued or policy adopted" by the Blue Valley U.S.D. 229 board of education, they challenge an action taken in August 2020, many months before SB 40 was enacted. SB 40 does not apply retroactively. Thus, Plaintiffs have not challenged any action, order, or policy to which SB 40 applies.

5.      SB40 violates Article 6, Section 5 of the Kansas Constitution, which provides that "Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards." It is so unreasonable that it unduly interferes with or hamstrings the local school board in performing its constitutional duty to maintain, develop, and operate the local public school system.

60

6.      Blue Valley Defendants hereby expressly reserve the right to assert additional defenses, affirmative or otherwise, and matters in avoidance as they may become apparent during the course of any discovery in this case.

WHEREFORE, Blue Valley Defendants request that Plaintiffs take nothing by this suit, that it be dismissed in whole, that they be awarded their costs, and that Blue Valley Defendants recover such other relief, both equitable and otherwise, to which it may be entitled.

**SPENCER FANE LLP**

_/s/ Stephanie Lovett-Bowman_
| W. Joseph Hatley | KS #12929 |
| Stephanie Lovett-Bowman | KS #24842 |
| Angus Dwyer | KS #26995 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (Fax)
jhatley@spencerfane.com
slovettbowman@spencerfane.com
adwyer@spencerfane.com

_Attorneys for Defendants Blue Valley School District and Blue Valley Board of Education_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 4th day of May, 2021, I electronically filed this document with the Clerk of the Court using the Johnson County filing system, which will send a notice of electronic filing to all counsel of record.

_/s/ Stephanie Lovett-Bowman_
_Attorneys for Defendants Blue Valley School District and Blue Valley Board of Education_

_Clerk of the District Court, Johnson County Kansas_
_05/04/21   05:08pm AH_
WA 16534195.1

## VERIFICATION

STATE OF KANSAS     )
                         ) ss:
COUNTY OF JOHNSON    )

      The undersigned hereby verifies that the factual responses in the foregoing DEFENDANTS' VERIFIED ANSWER TO PLAINTIFF'S VERIFIED PETITION UNDER 2021 SB 40 are true and correct to the best of her knowledge, information, and belief.

Melissa Hillman
Chief Legal Counsel and
Authorized Representative

      Subscribed and sworn to before me, a Notary Public, on this 4th day of May 2021.

Notary Public

My Commission Expires:

June 15, 2024

KIM M. HENDRIX
Notary Public, State of Kansas
My Appointment Expires
June 15, 2024

62

21CV01942
Div7

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

BAKER, TERRI, et al.,                    )
                                         )
              Plaintiffs,                )
                                         )
v.                                       )        Case No. 21CV01942
                                         )        Division 7
BLUE VALLEY BOARD OF                     )
EDUCATION, et al.,                       )
                                         )
              Defendants.                )

## ENTRY OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL

**COMES NOW** Michael G. Norris of the law firm of Norris Keplinger Hicks & Welder,

LLC, and hereby enters his appearance as lead counsel for defendants Unified School District No.

233, Johnson County, Kansas and Olathe Board of Education.


**NORRIS KEPLINGER HICKS &
WELDER, LLC**


By:    */s/ Michael G. Norris*
       Michael G. Norris, #07247
       mnorris@nkfirm.com
       Courtney McCray, #28347
       cmccray@nkfirm.com
       9225 Indian Creek Parkway
       32 Corporate Woods, Suite 750
       Overland Park, Kansas 66210
       (913) 663-2000
       (913) 663-2006 (Fax)
       **ATTORNEYS FOR DEFENDANTS
       UNIFIED SCHOOL DISTRICT NO. 233,
       JOHNSON COUNTY, KANSAS AND
       OLATHE BOARD OF EDUCATION**

{0261575.DOCX}

1

*Clerk of the District Court, Johnson County Kansas
05/05/21  08:58am ML*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2021 the above and foregoing was filed via the court's electronic filing system (ECF), and a copy sent via electronic mail on to the following:

Mr. Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
(913) 486-3913
(913) 232-8734 (Fax)
linusbaker@prodigy.net
**Attorney for Plaintiffs**

Mr. W. Joseph Hatley
Ms. Stephanie Lovett-Bowman
Mr. Angus Dwyer
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100
(816) 474-3216 (Fax)
jhatley@spencerfane.com
slovettbowman@spencerfane.com
adwyer@spencerfane.com
**Attorneys for Defendants Blue Valley
School District and Blue Valley Board of
Education**

            */s/ Michael G. Norris*
**Attorney for Defendants Unified School
District No. 233, Johnson County, Kansas
and Olathe Board of Education**

21CV01942
Div7

# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

| | | |
|---|---|---|
| BAKER, TERRI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21CV01942 |
| | ) | Division 7 |
| BLUE VALLEY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

**COMES NOW** Courtney McCray of the law firm of Norris Keplinger Hicks & Welder,

LLC, and hereby enters her appearance as additional counsel for defendants Unified School

District No. 233, Johnson County, Kansas and Olathe Board of Education.

**NORRIS KEPLINGER HICKS &
WELDER, LLC**

By: ___*/s/ Courtney McCray*_____
      Michael G. Norris, #07247
      mnorris@nkfirm.com
      Courtney McCray, #28347
      cmccray@nkfirm.com
9225 Indian Creek Parkway
32 Corporate Woods, Suite 750
Overland Park, Kansas 66210
(913) 663-2000
(913) 663-2006 (Fax)
**ATTORNEYS FOR DEFENDANTS
UNIFIED SCHOOL DISTRICT NO. 233,
JOHNSON COUNTY, KANSAS AND
OLATHE BOARD OF EDUCATION**

1

*Clerk of the District Court, Johnson County Kansas
05/05/21   08:59am ML*

{0261574.DOCX}

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2021 the above and foregoing was filed via the court's electronic filing system (ECF), and a copy sent via electronic mail on to the following:

Mr. Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
(913) 486-3913
(913) 232-8734 (Fax)
linusbaker@prodigy.net
**Attorney for Plaintiffs**

Mr. W. Joseph Hatley
Ms. Stephanie Lovett-Bowman
Mr. Angus Dwyer
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100
(816) 474-3216 (Fax)
jhatley@spencerfane.com
slovettbowman@spencerfane.com
adwyer@spencerfane.com
**Attorneys for Defendants Blue Valley
School District and Blue Valley Board of
Education**

                          /s/ Courtney McCray
                    **Attorney for Defendants Unified School
                    District No. 233, Johnson County, Kansas
                    and Olathe Board of Education**

21CV01942
Div7

# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

Terri E. Baker and her special
needs son "Silo" et al,

                Plaintiffs,

      vs.

Blue Valley et al

                Defendants.

Case No. 21CV01942
Div 7

## Plaintiffs' Exhibit

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

Certificate of Service
The Court's order has been emailed to the parties on May 5, 2021.



## BLUE VALLEY MIDDLE



# PRAIRIE STAR MIDDLE



# BLUE RIVER ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

## PRAIRIE STAR ELEMENTARY



## SUNRISE POINT ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

## STANLEY ELEMENTARY



## STILWELL ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*



Home / Back to School / Back to School

## Back to School

> Back to School

> In-Person Learning

> VirtualED

> Gating Criteria

> Communication from the District

– BV COVID-19 Dashboard

Blue Valley High Feeder System

Blue Valley North Feeder System

Blue Valley Northwest Feeder System

Blue Valley Southwest Feeder System

Blue Valley West Feeder System

Other Programs

## BLUE VALLEY NORTH



## LEAWOOD MIDDLE



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

## OVERLAND TRAIL MIDDLE



## LEAWOOD ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21   09:45am ML*

# OVERLAND TRAIL ELEMENTARY



OTE COVID-19 Data

# MISSION TRAIL ELEMENTARY



MTE COVID-19 Data

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# VALLEY PARK ELEMENTARY





About Us   Departments   Families   Academics   Community   Employment   Back to School

## BLUE VALLEY SCHOOLS
Reimagining Learning | Changing the World

Translate    I would like to:  

Our Schools ∨ | Students | Parents | Staff

Home / Back to School / Back to School

### Back to School

> Back to School
> In-Person Learning
> VirtualED
> Gating Criteria
> Communication from the District
− BV COVID-19 Dashboard
   Blue Valley High Feeder System
   Blue Valley North Feeder System
   Blue Valley Northwest Feeder System
   Blue Valley Southwest Feeder System
   Blue Valley West Feeder System
   Other Programs

## BLUE VALLEY NORTHWEST



## HARMONY MIDDLE



Clerk of the District Court, Johnson County Kansas
05/05/21   09:45am ML

# OXFORD MIDDLE



# COTTONWOOD POINT ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# HARMONY ELEMENTARY



# HEARTLAND ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# INDIAN VALLEY ELEMENTARY



# OAK HILL ELEMENTARY





# BLUE VALLEY SOUTHWEST



# AUBRY BEND MIDDLE



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

## MORSE ELEMENTARY



## TIMBER CREEK ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# WOLF SPRINGS ELEMENTARY





ome / Back to School / Back to School

**Back to School**

> Back to School

> In-Person Learning

> VirtualED

> Gating Criteria

> Communication from the District

– BV COVID-19 Dashboard

  Blue Valley High Feeder System

  Blue Valley North Feeder System

  Blue Valley Northwest Feeder System

  Blue Valley Southwest Feeder System

  Blue Valley West Feeder System

  Other Programs

## BLUE VALLEY WEST



## LAKEWOOD MIDDLE



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# PLEASANT RIDGE MIDDLE



# CEDAR HILLS ELEMENTARY



# LAKEWOOD ELEMENTARY



# LIBERTY VIEW ELEMENTARY



*Clerk of the District Court, Johnson County Kansas*
*05/05/21  09:45am ML*

# SUNSET RIDGE ELEMENTARY





BLUE VALLEY SCHOOLS
Reimagining Learning | Changing the World

Home / Back to School / Back to School

**Back to School**

> Back to School
> In-Person Learning
> VirtualED
> Gating Criteria
> Communication from the District
− BV COVID-19 Dashboard
   Blue Valley High Feeder System
   Blue Valley North Feeder System
   Blue Valley Northwest Feeder System
   Blue Valley Southwest Feeder System
   Blue Valley West Feeder System
   Other Programs

## BLUE VALLEY WEST



## LAKEWOOD MIDDLE



## PLEASANT RIDGE MIDDLE



## CEDAR HILLS ELEMENTARY



# LAKEWOOD ELEMENTARY



# LIBERTY VIEW ELEMENTARY



# SUNSET RIDGE ELEMENTARY





Home / Back to School / Back to School

**Back to School**

> Back to School

> In-Person Learning

> VirtualED

> Gating Criteria

> Communication from the District

– BV COVID-19 Dashboard

  Blue Valley High Feeder System

  Blue Valley North Feeder System

  Blue Valley Northwest Feeder System

  Blue Valley Southwest Feeder System

  Blue Valley West Feeder System

  Other Programs

## BLUE VALLEY ACADEMY



## HILLTOP LEARNING CENTER



# DISTRICT OFFICE CAMPUS



21CV01942
Div7

# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

Terri E. Baker and her special
needs son "Silo" et al,

               Plaintiffs,

    vs.

Blue Valley et al

               Defendants.

Case No. 21CV01942
Div 7

## **Plaintiffs' Second Exhibit**

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

Certificate of Service
The Court's order has been emailed to the parties on May 5, 2021.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  11:05am JT*

Olathe Public Schools COVID-19 Cases Per Building 4/10 - 4/23 : Info

# Olathe Public Schools COVID-19 Cases Per Building

Reporting Period 4/10 - 4/23

## Elementary - Students

| School Name | Total In-Person | Number of Student Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total student population | Student Exclusion for Exposure | Student Exclusion: Percentage of Students In-person |
|---|---|---|---|---|---|
| Arbor Creek | 292 | 3 | 1.03% | 2 | 0.71% |
| Brentwood | 238 | 0 | 0.00% | 0 | 0.00% |
| Black Bob | 232 | 0 | 0.00% | 5 | 2.16% |
| Briarwood | 227 | 0 | 0.00% | 1 | 0.44% |
| Brougham | 214 | 0 | 0.00% | 0 | 0.00% |
| Canyon Creek | 287 | 0 | 0.00% | 0 | 0.00% |
| Cedar Creek | 336 | 0 | 0.00% | 0 | 0.00% |
| Central | 167 | 1 | 0.60% | 1 | 0.60% |
| Clearwater Creek | 417 | 1 | 0.24% | 0 | 0.00% |
| Countryside | 192 | 1 | 0.52% | 1 | 0.52% |
| Fairview | 132 | 0 | 0.00% | 0 | 0.00% |
| Forest View | 403 | 0 | 0.00% | 0 | 0.00% |
| Green Springs | 192 | 0 | 0.00% | 0 | 0.00% |
| Havencroft | 173 | 0 | 0.00% | 0 | 0.00% |
| Heatherstone | 291 | 0 | 0.00% | 0 | 0.00% |
| Heritage | 226 | 0 | 0.00% | 0 | 0.00% |
| Indian Creek | 220 | 0 | 0.00% | 0 | 0.00% |
| Madison Place | 288 | 0 | 0.00% | 0 | 0.00% |
| Manchie | 274 | 0 | 0.00% | 0 | 0.00% |
| Manchester Park | 455 | 0 | 0.00% | 3 | 0.61% |
| Meadow Lane | 337 | 0 | 0.00% | 1 | 0.30% |
| Millbrooke | 300 | 1 | 0.33% | 4 | 1.33% |
| Northview | 166 | 0 | 0.00% | 0 | 0.00% |
| Pleasant Ridge | 180 | 0 | 0.00% | 1 | 0.56% |
| Prairie Center | 277 | 1 | 0.36% | 7 | 2.53% |
| Ravenwood | 319 | 1 | 0.50% | 2 | 0.63% |
| Regency Place | 263 | 0 | 0.00% | 0 | 0.00% |
| Ridgeview | 166 | 0 | 0.00% | 0 | 0.00% |
| Rising Ridge | 301 | 0 | 0.00% | 2 | 0.66% |
| Scarborough | 247 | 1 | 0.41% | 8 | 3.24% |
| Sunnyside | 247 | 0 | 0.00% | 0 | 0.00% |
| Tomahawk | 224 | 0 | 0.00% | 7 | 3.13% |
| Walnut Grove | 235 | 0 | 0.00% | 4 | 1.62% |
| Washington | 272 | 3 | 1.12% | 3 | 1.10% |
| Westview | 125 | 0 | 0.00% | 0 | 0.00% |
| Woodland | 248 | 0 | 0.00% | 4 | 1.61% |
| Elementary Total | 9241 | 15 | 0.16% | 56 | 0.61% |

## Elementary - Staff

| Number of Staff | Number of Staff Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total staff population | Staff Exclusion for Exposure | Staff Exclusion: Percentage of School Staff |
|---|---|---|---|---|
| 55 | 0 | 0.00% | 0 | 0.00% |
| 66 | 0 | 0.00% | 0 | 0.00% |
| 48 | 0 | 0.00% | 2 | 4.17% |
| 64 | 0 | 0.00% | 2 | 3.13% |
| 48 | 0 | 0.00% | 0 | 0.00% |
| 50 | 0 | 0.00% | 0 | 0.00% |
| 55 | 0 | 0.00% | 0 | 0.00% |
| 52 | 0 | 0.00% | 0 | 0.00% |
| 66 | 0 | 0.00% | 0 | 0.00% |
| 57 | 0 | 0.00% | 0 | 0.00% |
| 56 | 0 | 0.00% | 0 | 0.00% |
| 61 | 0 | 0.00% | 1 | 1.64% |
| 55 | 0 | 0.00% | 1 | 1.82% |
| 39 | 0 | 0.00% | 0 | 0.00% |
| 66 | 0 | 0.00% | 0 | 0.00% |
| 55 | 0 | 0.00% | 0 | 0.00% |
| 61 | 0 | 0.00% | 0 | 0.00% |
| 64 | 0 | 0.00% | 1 | 1.56% |
| 50 | 0 | 0.00% | 0 | 0.00% |
| 57 | 0 | 0.00% | 0 | 0.00% |
| 52 | 0 | 0.00% | 0 | 0.00% |
| 68 | 0 | 0.00% | 0 | 0.00% |
| 51 | 0 | 0.00% | 0 | 0.00% |
| 52 | 0 | 0.00% | 0 | 0.00% |
| 57 | 0 | 0.00% | 3 | 5.26% |
| 63 | 0 | 0.00% | 0 | 0.00% |
| 53 | 0 | 0.00% | 0 | 0.00% |
| 55 | 0 | 0.00% | 0 | 0.00% |
| 75 | 0 | 0.00% | 0 | 0.00% |
| 66 | 0 | 0.00% | 0 | 0.00% |
| 54 | 0 | 0.00% | 0 | 0.00% |
| 62 | 0 | 0.00% | 5 | 8.06% |
| 61 | 0 | 0.00% | 1 | 1.64% |
| 85 | 0 | 0.00% | 0 | 0.00% |
| 44 | 0 | 0.00% | 0 | 0.00% |
| 77 | 1 | 1.30% | 3 | 3.90% |
| 2116 | 1 | 0.05% | 19 | 0.90% |

## Middle School - Students

| School Name | Total In-Person | Number of Student Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total student population | Student Exclusion for Exposure | Student Exclusion: Percentage of Students In-person |
|---|---|---|---|---|---|
| California Trail | 476 | 0 | 0.00% | 2 | 0.42% |
| Chisholm Trail | 544 | 5 | 0.63% | 9 | 1.65% |
| Frontier Trail | 507 | 0 | 0.00% | 10 | 1.97% |
| Indian Trail | 469 | 6 | 1.32% | 8 | 1.71% |
| Mission Trail | 603 | 1 | 0.17% | 1 | 0.17% |
| Oregon Trail | 525 | 1 | 0.19% | 2 | 0.38% |
| Pioneer Trail | 408 | 2 | 0.49% | 2 | 0.49% |
| Prairie Trail | 560 | 0 | 0.00% | 0 | 0.00% |
| Santa Fe Trail | 475 | 2 | 0.42% | 6 | 1.26% |
| Summit Trail | 444 | 0 | 0.00% | 6 | 1.35% |
| Middle School Total | 5011 | 19 | 0.38% | 46 | 0.92% |

## Middle School - Staff

| School Name | Number of Staff | Number of Staff Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total staff population | Staff Exclusion for Exposure | Staff Exclusion: Percentage of School Staff |
|---|---|---|---|---|---|
| | 91 | 0 | 0.00% | 2 | 2.20% |
| | 92 | 0 | 0.00% | 0 | 0.00% |
| | 95 | 0 | 0.00% | 0 | 0.00% |
| | 98 | 0 | 0.00% | 1 | 1.02% |
| | 89 | 0 | 0.00% | 0 | 0.00% |
| | 107 | 0 | 0.00% | 0 | 0.00% |
| | 96 | 0 | 0.00% | 1 | 1.04% |
| | 82 | 0 | 0.00% | 1 | 1.22% |
| | 107 | 0 | 0.00% | 0 | 0.00% |
| | 92 | 0 | 0.00% | 0 | 0.00% |
| | 949 | 0 | 0.00% | 6 | 0.63% |

## High School - Students

| School Name | Total In-Person | Number of Student Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total student population | Student Exclusion for Exposure | Student Exclusion: Percentage of Students In-person |
|---|---|---|---|---|---|
| Olathe East H.S. | 1439 | 3 | 0.21% | 0 | 0.00% |
| Olathe North H.S | 1349 | 0 | 0.00% | 14 | 1.04% |
| Olathe Northwest H.S. | 1486 | 4 | 0.27% | 35 | 2.36% |
| Olathe South H.S. | 1454 | 6 | 0.41% | 7 | 0.48% |
| Olathe West H.S | 1329 | 4 | 0.31% | 26 | 1.96% |
| High School Total | 7039 | 17 | 0.24% | 82 | 1.16% |

## High School - Staff

| School Name | Number of Staff | Number of Staff Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total staff population | Staff Exclusion for Exposure | Staff Exclusion: Percentage of School Staff |
|---|---|---|---|---|---|
| | 243 | 0 | 0.00% | 1 | 0.41% |
| | 267 | 1 | 0.37% | 4 | 1.50% |
| | 222 | 2 | 0.90% | 2 | 0.90% |
| | 237 | 1 | 0.42% | 2 | 0.84% |
| | 220 | 0 | 0.00% | 0 | 0.00% |
| | 1189 | 4 | 0.33% | 9 | 0.76% |

## Other Programs - Students

| School Name | Total In-Person | Number of Student Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total student population | Student Exclusion for Exposure | Student Exclusion: Percentage of Students In-person |
|---|---|---|---|---|---|
| Clare Learning Center | 70 | 0 | 0.00% | 0 | 0.00% |
| Heartland Learning Cen | 110 | 1 | 0.92% | 8 | 7.27% |
| Harmony | 96 | 0 | 0.00% | 1 | 1.04% |
| Mill Creek Campus | 78 | 0 | 0.00% | 0 | 0.00% |
| OATC | 265 | 0 | 0.00% | 0 | 0.00% |
| Prairie Learning Center | 28 | 0 | 0.00% | 0 | 0.00% |

## Other Programs - Staff

| School Name | Number of Staff | Number of Staff Confirmed Cases in Two-Week Window | Percentage of confirmed cases as compared to total staff population | Staff Exclusion for Exposure | Staff Exclusion: Percentage of School Staff |
|---|---|---|---|---|---|
| | 34 | 0 | 0.00% | 0 | 0.00% |
| | 104 | 0 | 0.00% | 2 | 1.92% |
| | 62 | 0 | 0.00% | 1 | 1.61% |
| | 85 | 0 | 0.00% | 0 | 0.00% |
| | 19 | 0 | 0.00% | 0 | 0.00% |
| | 56 | 1 | 1.79% | 2 | 3.57% |

21CV01942
Div7

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

| | |
|---|---|
| BAKER, TERRI, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 21CV01942 |
| | ) Division 7 |
| BLUE VALLEY BOARD OF | ) |
| EDUCATION, et al., | ) |
| | ) |
| Defendants. | ) |

## VERIFIED AMENDED ANSWER OF NAMED
## DEFENDANTS OLATHE PUBLIC
## SCHOOLS USD 233 AND OLATHE BOARD OF EDUCATION

**COME NOW** these separately named defendants, Olathe Public Schools USD 233 ("Olathe School District"), Olathe Board of Education, Joe Beveridge, Brad Boyd, LeEtta Felter, Brian Geary, Brent McCune, Kristin Schultz, and Shannon Wickliffe (collectively "Olathe BOE" respectively) and for this their Verified Amended Answer to the Verified Petition for Legal and Equitable Relief ("Petition") allege and state as follows:

[sic]   1.   There are no allegations made against these defendants in paragraph 1 of the Petition that require an answer. To the extent an answer is required, defendants state that SB 40 speaks for itself.

[sic]   2.   There are no allegations made against these defendants in paragraph 2 of the Petition that require an answer. To the extent an answer is required, defendants state that SB 40 speaks for itself.

[sic]   3.   With respect to the allegations contained in paragraph 3 of the Petition, these defendants have insufficient information to admit or deny the allegations made against the Blue Valley School District.

1

*Clerk of the District Court, Johnson County Kansas
05/05/21  03:08pm MM*

[sic]   4.      There are no allegations made against these defendants in paragraph 4 of the Petition that require an answer. To the extent an answer is required, defendants state that SB 40 speaks for itself.

[sic]   5.      Defendants deny the allegations contained in paragraph 5 of the Petition.

[sic]   6.      Defendants deny the allegations contained in paragraph 6 of the Petition.

[sic]   7.      Defendants deny the allegations contained in paragraph 7 of the Petition.

[sic]   8.      With respect to the allegations contained in paragraph 8 of the Petition, defendants state that grievants have been timely notified and have been provided a hearing.

[sic]   9.      Defendants deny the allegations contained in paragraph 9 of the Petition.

[sic]   10.     Defendants deny the allegations contained in paragraph 10 of the Petition.

[sic]   11.     With respect to the allegations contained in paragraph 11 of the Petition, defendants state that SB 40 speaks for itself.

[sic]   12.     Defendants deny the allegations contained in paragraph 12 of the Petition.

[sic]   13.     Defendants deny the allegations contained in paragraph 13 of the Petition.

[sic]   14.     Defendants deny the allegations contained in paragraph 14 of the Petition.

[sic]   15.     Defendants deny the allegations contained in paragraph 15 of the Petition.

With respect to the unnumbered paragraphs between paragraph 15 and before "Parties" there are no allegations made against these defendants such that an answer is not required. To the extent these paragraphs could be construed to make allegations against these defendants, these defendants deny the allegations in their entirety.

16.      With respect to the allegations contained in paragraph 1 on page 8 of the Petition, the allegations are admitted.

17.      The allegations contained in paragraph 2 of the Petition are admitted.

{0261508.DOCX}

18.     The allegations contained in paragraph 3 of the Petition are admitted.

19.     With respect to the allegations contained in paragraph 4 of the Petition, defendants admit that Mr. Snider filed a request for another hearing identical to his first request, and that second request for hearing was denied as authorized by SB 40.

20.     With respect to the allegations contained in paragraph 5 of the Petition, defendants admit that CarrieAnn Baumgarten is a resident of Johnson County, Kansas, resides in the Olathe School District, and is the parent of E.B. and J.B., students in the Olathe School District. The balance of the allegations are denied.

21.     The allegations contained in paragraph 6 of the Petition are admitted.

22.     The allegations contained in paragraph 7 of the Petition are admitted.

23.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 8 of the Petition and therefore deny same.

24.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 9 of the Petition and therefore deny same.

25.     Defendants are without sufficient information to admit or deny the allegations contained in "paragraph 18" of the Petition and therefore deny the same. This paragraph 18 appears to be mis-numbered and appears out of order between paragraph 9 and paragraph 10 of Plaintiff's petition.

26.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 10 of the Petition and therefore deny same.

27.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 11 of the Petition and therefore deny same.

28.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 12 of the Petition and therefore deny same.

29.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 13 of the Petition and therefore deny same.

30.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 14 of the Petition and therefore deny same.

31.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 15 of the Petition and therefore deny same.

32.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 16 of the Petition and therefore deny same.

33.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 17 of the Petition and therefore deny same.

34.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 18 of the Petition and therefore deny same.

35.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 19 of the Petition and therefore deny same.

36.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 20 of the Petition and therefore deny same.

37.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 21 of the Petition and therefore deny same.

38.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 22 of the Petition and therefore deny same.

4

39.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 23 of the Petition and therefore deny same.

40.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 24 of the Petition and therefore deny same.

41.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 25 of the Petition and therefore deny same.

42.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 26 of the Petition and therefore deny same.

43.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 27 of the Petition and therefore deny same.

44.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 28 of the Petition and therefore deny same.

45.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 29 of the Petition and therefore deny same.

46.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 30 of the Petition and therefore deny same.

47.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 31 of the Petition and therefore deny same.

48.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 32 of the Petition and therefore deny same.

49.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 33 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

50.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 34 of the Petition and therefore deny same.

51.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 35 of the Petition and therefore deny same.

52.     With respect to the allegations contained in paragraph 36 of the Petition, these defendants state that defendant Olathe Public Schools USD 233 is not the real party in interest. The real party in interest is Unified School District No. 233, Johnson County, Kansas.

53.     With respect to the allegations contained in paragraph 37 of the Petition, these defendants admit that the Olathe School District has a Board of Education.

54.     The allegations contained in paragraph 38 in the Petition are admitted.

55.     The allegations contained in paragraph 39 in the Petition are admitted.

56.     The allegations contained in paragraph 40 in the Petition are admitted.

57.     The allegations contained in paragraph 41 in the Petition are admitted.

58.     The allegations contained in paragraph 42 in the Petition are admitted.

59.     The allegations contained in paragraph 43 in the Petition are admitted.

60.     The allegations contained in paragraph 44 in the Petition are admitted.

61.     The allegations contained in paragraph 45 in the Petition are admitted.

62.     The allegations contained in paragraph 46 in the Petition are admitted.

63.     The allegations contained in paragraph 47 in the Petition are admitted.

64.     With respect to the allegations contained in paragraph 48 of the Petition, upon information and belief, the allegations are admitted.

65.     With respect to the allegations contained in paragraph 49 of the Petition, defendants admit that SB 40 became effective on or about March 25, 2021.

{0261508.DOCX}

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

66.     With respect to the allegations contained in paragraph 50 of the Petition, defendants state that SB 40 speaks for itself.

67.     With respect to the allegations contained in paragraph 51 of the Petition, defendants state that SB 40 speaks for itself.

68.     With respect to the allegations contained in paragraph 52 of the Petition, defendants state that SB 40 speaks for itself.

69.     With respect to the allegations contained in paragraph 53 of the Petition, defendants state that SB 40 speaks for itself.

70.     With respect to the allegations contained in paragraph 54 of the Petition, defendants state that SB 40 speaks for itself.

71.     The allegations contained in paragraph 55 of the Petition are denied.

72.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 56 of the Petition and therefore deny same.

73.     With respect to the allegations contained in paragraph 57 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

74.     With respect to the allegations contained in paragraph 58 of the Petition, defendants admit that the Olathe School Board referred to KDHE guidelines but otherwise has insufficient information to admit or deny the balance of the allegations.

75.     With respect to the allegations contained in paragraph 59 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

76.     With respect to the allegations contained in paragraph 60 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

77.    With respect to the allegations contained in paragraph 61 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

78.    With respect to the allegations contained in paragraph 62 of the Petition, defendants state that the Navigating Change Policy speaks for itself.

79.    The allegations contained in paragraph 63 of the Petition are denied.

80.    The allegations contained in paragraph 64 of the Petition are denied.

81.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 65 of the Petition and therefore deny same.

82.    With respect to the allegations contained in paragraph 66 of the Petition, defendants deny each and every allegation except those allegations hereinbefore specifically admitted.

83.    With respect to the allegations contained in paragraph 67 of the Petition, defendants state that SB 40 speaks for itself and allows the utilization of a hearing officer to conduct a hearing.

84.    The allegations contained in paragraph 68 of the Petition are denied.

85.    The allegations contained in paragraph 69 of the Petition are denied.

86.    The allegations contained in paragraph 70 of the Petition are denied.

87.    With respect to the allegations contained in paragraph 71 of the Petition, defendants state that a quorum of a Board of Education was not required to conduct the hearing of the grievances filed by Joshua Snider and CarrieAnn Baumgarten.

88.    The allegations contained in paragraph 72 of the Petition are denied.

89.    The allegations contained in paragraph 73 of the Petition are denied.

90.    The allegations contained in paragraph 74 of the Petition are denied.

91.    The allegations contained in paragraph 75 of the Petition are denied.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

92.     With respect to the allegations contained in paragraph 76 of the Petition, K.S.A. 75-4317a speaks for itself.

93.     The allegations contained in paragraph 77 of the Petition are denied.

94.     The allegations contained in paragraph 78 of the Petition are denied.

95.     The allegations contained in paragraph 79 of the Petition are denied.

96.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 80 of the Petition and therefore deny same.

97.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 81 of the Petition and therefore deny same.

98.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 82 of the Petition and therefore deny same.

99.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 83 of the Petition and therefore deny same.

100.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 84 of the Petition and therefore deny same.

101.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 85 of the Petition and therefore deny the same.

102.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 86 of the Petition and therefore deny same.

103.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 87 of the Petition and therefore deny same.

104.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 88 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

105.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 89 of the Petition and therefore deny same.

106.   Defendants are without sufficient information to admit or deny the allegations contained in paragraph 90 of the Petition and therefore deny same.

107.   With respect to the allegations contained in paragraph 91 of the Petition, defendants deny each and every allegation except those allegations hereinbefore specifically admitted.

108.   With respect to the allegations contained in paragraph 92 of the Petition, the SB 40 grievance submitted by Joshua Snider speaks for itself.

109.   With respect to the allegations contained in paragraph 93 of the Petition, the SB 40 grievance submitted by CarrieAnn Baumgarten speaks for itself.

110.   There are no allegations made against these defendants in paragraph 94 of the Petition that require an answer. To the extent an answer is required, defendants state T.M. Snider submitted an exemption request that was granted and thus he is not required to wear a mask as a condition of attending school in the Olathe School District.

111.   With respect to the allegations contained in paragraph 95 of the Petition, defendants admit that CarrieAnn Baumgarten has submitted a second grievance to the defendants, which is pending and not ripe.

112.   With respect to the allegations contained in paragraph 96 of the Petition, defendants admit that Joshua Snider and T.M. Snider sought an exemption from the requirement to wear a mask, supplied medical verification, and that request was granted.

113.   The allegations contained in paragraph 97 of the Petition are denied.

114.   The allegations contained in paragraph 98 of the Petition are denied.

115.   The allegations contained in paragraph 99 of the Petition are denied.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

116.    The allegations contained in paragraph 100 of the Petition are denied.

117.    The allegations contained in paragraph 101 of the Petition are denied.

118.    The allegations contained in paragraph 102 of the Petition are denied.

119.    The allegations contained in paragraph 103 of the Petition are denied.

120.    The allegations contained in paragraph 104 of the Petition are denied.

121.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 105 of the Petition and therefore deny same.

122.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 106 of the Petition and therefore deny same.

123.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 107 of the Petition and therefore deny same.

124.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 108 of the Petition and therefore deny same.

125.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 109 of the Petition and therefore deny same.

126.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 110 of the Petition and therefore deny same.

127.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 111 of the Petition and therefore deny same.

128.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 112 of the Petition and therefore deny same.

129.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 113 of the Petition and therefore deny same.

{0261508.DOCX}

130.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 114 of the Petition and therefore deny same.

131.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 115 of the Petition and therefore deny same.

132.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 116 of the Petition and therefore deny same.

133.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 117 of the Petition and therefore deny same.

134.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 118 of the Petition and therefore deny same.

135.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 119 of the Petition and therefore deny same.

136.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 120 of the Petition and therefore deny same.

137.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 121 of the Petition and therefore deny same.

138.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 122 of the Petition and therefore deny same.

139.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 123 of the Petition and therefore deny same.

140.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 124 of the Petition and therefore deny same.

{0261508.DOCX}

141.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 125 of the Petition and therefore deny same.

142.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 126 of the Petition and therefore deny same.

143.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 127 of the Petition and therefore deny same.

144.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 128 of the Petition and therefore deny same.

145.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 129 of the Petition and therefore deny same.

146.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 130 of the Petition and therefore deny same.

147.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 131 of the Petition and therefore deny same.

148.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 132 of the Petition and therefore deny same.

149.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 133 of the Petition and therefore deny same.

150.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 134 of the Petition and therefore deny same.

151.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 135 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

152.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 136 of the Petition and therefore deny same.

153.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 137 of the Petition and therefore deny same.

154.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 138 of the Petition and therefore deny same.

155.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 139 of the Petition and therefore deny same.

156.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 140 of the Petition and therefore deny same.

157.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 141 of the Petition and therefore deny same.

158.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 142 of the Petition and therefore deny same.

159.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 143 of the Petition and therefore deny same.

160.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 144 of the Petition and therefore deny same.

161.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 145 of the Petition and therefore deny same.

162.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 146 of the Petition and therefore deny same.

{0261508.DOCX}

163.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 147 of the Petition and therefore deny same.

164.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 148 of the Petition and therefore deny same.

165.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 149 of the Petition and therefore deny same.

166.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 150 of the Petition and therefore deny same.

167.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 151 of the Petition and therefore deny same.

168.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 152 of the Petition and therefore deny same.

169.     There are no allegations made against these defendants in paragraph 153 that require an answer. To the extent an answer is required, the allegations are denied.

170.     The allegations contained in paragraph 154 of the Petition are denied.

171.     The allegations contained in paragraph 155 of the Petition are denied.

172.     The allegations contained in paragraph 156 of the Petition are denied.

173.     The allegations contained in paragraph 157 of the Petition are denied.

174.     The allegations contained in paragraph 158 of the Petition are denied.

175.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 159 of the Petition and therefore deny same.

176.     Defendants are without sufficient information to admit or deny the allegations contained in paragraph 160 of the Petition and therefore deny same.

{0261508.DOCX}

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

177.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 161 of the Petition and therefore deny same.

178.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 162 of the Petition and therefore deny same.

179.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 163 of the Petition and therefore deny same.

180.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 164 of the Petition and therefore deny same.

181.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 165 of the Petition and therefore deny same.

182.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 166 of the Petition and therefore deny same.

183.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 167 of the Petition and therefore deny same.

184.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 168 of the Petition and therefore deny same.

185.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 169 of the Petition and therefore deny same.

186.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 170 of the Petition and therefore deny same.

187.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 171 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

188.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 172 of the Petition and therefore deny same.

189.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 173 of the Petition and therefore deny same.

190.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 174 of the Petition and therefore deny same.

191.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 175 of the Petition and therefore deny same.

192.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 176 of the Petition and therefore deny same.

193.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 177 of the Petition and therefore deny same.

194.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 178 of the Petition and therefore deny same.

195.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 179 of the Petition and therefore deny same.

196.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 180 of the Petition and therefore deny same.

197.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 181 of the Petition and therefore deny same.

198.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 182 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

199.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 183 of the Petition and therefore deny same.

200.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 184 of the Petition and therefore deny same.

201.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 185 of the Petition and therefore deny same.

202.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 186 of the Petition and therefore deny same.

203.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 187 of the Petition and therefore deny same.

204.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 188 of the Petition and therefore deny same.

205.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 189 of the Petition and therefore deny same.

206.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 190 of the Petition and therefore deny same.

207.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 191 of the Petition and therefore deny same.

208.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 192 of the Petition and therefore deny same.

209.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 193 of the Petition and therefore deny same.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

210.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 194 of the Petition and therefore deny same.

211.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 195 of the Petition and therefore deny same.

212.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 196 of the Petition and therefore deny same.

213.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 197 of the Petition and therefore deny same.

214.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 198 of the Petition and therefore deny same.

215.    Defendants are without sufficient information to admit or deny the allegations contained in paragraph 199 of the Petition and therefore deny same.

216.    With respect to the allegations contained in paragraph 200 of the Petition, defendants state that Administrative Order 2021-PR-021 speaks for itself.

217.    With respect to the allegations contained in paragraph 201 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

218.    With respect to the allegations contained in paragraph 202 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

219.    With respect to the allegations contained in paragraph 203 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

220.    With respect to the allegations contained in paragraph 204 of the Petition, the decision in *Baker v. Hayden* speaks for itself.

221.    The allegations contained in paragraph 205 of the Petition are denied.

19

{0261508.DOCX}

222.    There are no allegations made against these defendants in paragraph 206 of the Petition that require an answer. To the extent an answer is required, the allegations are denied.

223.    Defendants deny each and every other allegation contained in the Petition except those allegations hereinbefore specifically admitted.

## AFFIRMATIVE DEFENSES

1.    The Petition fails to state claims upon which relief can be granted, including for the reason that the Petition filed by plaintiffs was not verified as required by Administrative Order 21-01 signed by Chief Justice Thomas Kelly Ryan.

2.    The Petition should be dismissed for the reason plaintiffs have failed to meet the requirements for consolidation as provided by K.S.A. 60-242.

3.    The court lacks jurisdiction over these defendants for the reason of insufficiency of process and insufficiency of service of process.

4.    One or more of the claims of plaintiff Baumgarten is barred for like of ripeness and failure to exhaust administrative remedies.

5.    One or more of plaintiffs' claims is barred by immunity.

6.    One or more of the claims of plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B. and J.B. are barred by consent, acquiescence, waiver and estoppel. Further the claims of plaintiffs Joshua Snider and T.M. Snider are moot for the reason that T.M. was allowed to opt out of the defendants' facemask requirement after he submitted an exemption form on April 16, 2021.

7.    The claims of plaintiffs Joshua Snider and T.M. Snider are barred by the expiration of the applicable statute of limitations for the reason that their requests or grievances were not filed within thirty (30) days of the action taken, order issued, or policy adopted by the Olathe BOE as

provided by SB 40 and thus those requests or grievances are time-barred. Plaintiff Joshua Snider submitted his request for hearing on April 2, 2021, which was not within thirty (30) days after the Olathe BOE originally adopted its policy on August 6, 2020 requiring facemasks and reaffirmed on February 4, 2021. See Exhibit A attached. The Olathe BOE dismissed Snider's request on April 12, 2021, for the reasons that the request was time-barred, plaintiff Snider lacked standing, and for the further reason that the policy adopted by the Olathe BOE was narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. See Exhibit B attached.

8.      The claims of plaintiffs CarrieAnn Baumgarten, E.B., and J.B. are barred by the expiration of the applicable statute of limitations for the reason that their requests or grievances were not filed within thirty (30) days of the action taken, order issued, or policy adopted by the Olathe BOE as provided by SB 40 and thus those requests or grievances are time-barred. Plaintiff CarrieAnn Baumgarten submitted her request for hearing on April 8, 2021, which was not within thirty (30) days after the Olathe BOE originally adopted its policy on August 6, 2020 requiring facemasks and reaffirmed on February 4, 2021. See Exhibit C attached. The Olathe BOE dismissed Baumgarten's request on April 19, 2021, for the reasons that the request was time-barred, plaintiff Baumgarten lacked standing, and for the further reason that the policy adopted by the Olathe BOE was narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. See Exhibit D attached.

9.      The action taken, order issued, or policy adopted by the Olathe BOE with respect to facemasks is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

{0261508.DOCX}

10.     Plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B., and J.B. lack standing retrospectively to challenge the defendants' policy mandating facemasks that was adopted prior to the March 25, 2021 effective date of SB 40.

11.     Further answering, defendants state that the Petition fails to include factual allegations with specificity indicating how the plaintiffs Joshua Snider, T.M. Snider, CarrieAnn Baumgarten, E.B., and J.B. are substantially burdened or inhibited by specific provisions of any policies or orders issued by the defendants and/or the nature of "its business or individual activities so burdened" as required by Administrative Order No. 21-01.

12.     Further answering, defendants state that the Petition fails to show with specificity and not by mere conclusory language, how plaintiffs' burden is substantially different from the burden upon persons or entities similarly situated who are not included on the Petition, all as required by Administrative Order No. 21-01.

13.     Further answering, defendants state that the Petition does not adequately specify how the defendants' policy, which is the subject matter of this action, could be more narrowly tailored to respond to the disaster emergency addressed by the policy under review and suggests less restrictive means, if any, to achieve such purposes—all as required Administrative Order No. 21-01.

14.     Further answering, defendants state that plaintiffs have failed to certify whether they had an opportunity to appear and be heard prior to the adoption or issuance of the order or policy under review and, if so, whether they did appear and express their agreed burden and whether they suggested the alternatives expressed in the Petition—all as required by Administrative Order No. 21-01.

{0261508.DOCX}

15.     Further answering, to the extent the Petition seeks injunctive relief, the Petition fails to include all of the factual allegations necessary to support each and every element for injunctive relief.

16.     Further answering, only Count 3 asserted against these defendants is subject to an expedited hearing as provided by SB 40 and the real party in interest is the Board of Education and/or the Olathe School District.

17.     SB 40 is unconstitutional in that it unduly interferes with or hamstrings the local school board in performing its constitutional duty under Kan. Const. at 6, Section 5 to maintain, develop, and operate the local public school system and control school district property.

18.     SB 40 is unconstitutional in that it requires a local school board's action, order, or policy relating to COVID-19 to be narrowly tailored using the least restrictive means even though such action does not involve a suspect class or impinge upon a fundamental right.

19.     As to Count I, defendants are entitled to immunity under K.S.A. 75-6101 *et seq.*

20.     Defendants reserve the right to raise additional affirmative defenses as discovery progresses.

**WHEREFORE,** having answered, these defendants pray that plaintiffs take nothing by their Petition, and that these defendants be discharged with their attorneys' fees, costs and expenses, and for such other relief as this Court deems just and equitable.


**NORRIS KEPLINGER HICKS & WELDER, LLC**


By:___ */s/ Michael G. Norris*_____
        Michael G. Norris, #07247
        mnorris@nkfirm.com

*Clerk of the District Court, Johnson County Kansas*
                                        *05/05/21   03:08pm MM*

{0261508.DOCX}

Courtney McCray, #28347
cmccray@nkfirm.com
9225 Indian Creek Parkway
32 Corporate Woods, Suite 750
Overland Park, Kansas 66210
(913) 663-2000
(913) 663-2006 (Fax)
**ATTORNEYS FOR DEFENDANTS
UNIFIED SCHOOL DISTRICT NO. 233,
JOHNSON COUNTY, KANSAS, OLATHE
BOARD OF EDUCATION, JOE BEVERIDGE,
BRAD BOYD, LEETTA FELTER, BRIAN
GEARY, BRENT MCCUNE, KRISTIN
SCHULTZ, AND SHANNON WICKLIFFE**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2021 the above and foregoing was filed via the court's electronic filing system (ECF), and a copy sent via electronic mail on to the following:

Mr. Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
(913) 486-3913
(913) 232-8734 (Fax)
linusbaker@prodigy.net
**Attorney for Plaintiffs**

/s/ Michael G. Norris
**Attorney for Defendants Unified School
District No. 233, Johnson County, Kansas,
Olathe Board of Education, Joe Beveridge, Brad
Boyd, LeEtta Felter, Brian Geary, Brent
McCune, Kristin Schultz, and Shannon Wickliffe**

*Clerk of the District Court, Johnson County Kansas
05/05/21  03:08pm MM*

{0261508.DOCX}

## VERIFICATION

STATE OF KANSAS    )
                         )   ss:
COUNTY OF Johnson  )

     The undersigned, being first duly sworn upon his oath, states that the factual information in the foregoing Verified Amended Answer of Named Defendants Olathe Public Schools USD 233 and Olathe Board of Education is true and correct to the best of his knowledge, information and belief.

By: _____

Christopher A. Pittman | Staff Counsel
**Olathe Public Schools**

     **SUBSCRIBED AND SWORN** to before me, a Notary Public in the aforesaid county and state, on this 4th day of May, 2021.



JOY BONDURANT
My Appointment Expires
April 14, 2022

NOTARY PUBLIC _____

My Commission Expires:

April 14, 2022 _____

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  03:08pm MM*

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

| | |
|---|---|
| TERRI E. BAKER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Case No. 21CV01942** |
| ) | **Court No. 7** |
| BLUE VALLEY BOARD OF EDUCATION, et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

## VERIFIED MOTION TO DISMISS PETITION

Defendants Unified School District No. 229, Johnson County, State of Kansas (sued under incorrect legal names) and its Board of Education members (collectively "Blue Valley") move to dismiss Counts 4 and 5 of plaintiffs' petition on six grounds. First, SB40 may not be applied retroactively to allow for challenges to orders adopted by Blue Valley's Board of Education before SB40's effective date. Second, plaintiffs are not challenging the type of action that SB40 purports to regulate, since plaintiffs' claims relate to their efforts to use the SB40 hearing process to obtain individual exemptions to Blue Valley's mask requirements. There are other laws devoted to those purposes, and plaintiffs may not use SB40 to avoid the processes required by those laws. Third, plaintiffs' petition is not verified, as required by this Court's Administrative Order No. 21-01. That administrative order does not conflict with the Kansas Supreme Court's Administrative Order 2021-RL-032. Fourth, SB40, under plaintiffs' construction, would violate Article 6, Section 5 of the Kansas Constitution, which provides that local public schools "shall be maintained, developed and operated by locally elected boards." If plaintiffs' abuse of SB40 were to be countenanced by the Court, it would unduly interfere with or hamstring the local school board's constitutional duty under Article 6, Section 5. Cf. Gannon

v. State, 298 Kan. 1107, 1128 (2014). <u>Fifth</u>, the claim of plaintiff Julie Myrick is moot because
Blue Valley has found that her children are entitled to an exemption from the mask requirement.
<u>Sixth</u>, plaintiff Terri Baker lacks standing because at the time she filed her SB40 grievances, her
son Silo Baker was not enrolled in Blue Valley's schools.

In support of this motion, Blue Valley states the following:

## I.        Factual Background

On August 18, 2020, Blue Valley's Board of Education voted to adhere to "Navigating
Change: Kansas' Guide to Learning and School Safety Operations." Navigating Change was a
1400+ page set of guidelines promulgated by the Kansas State Department of Education, and it
included mitigation measures that were recommended to assist Kansas school districts in
combatting the COVID-19 pandemic. Page 1048 of Navigating Change, attached as Exhibit A,
included guidelines on "Wearing Masks, Cloth Face Coverings and other:"

- Best practices suggests (sic) that visitors, staff, and students should be required to
  wear masks or cloth face coverings while inside school facilities unless it inhibits
  the person's ability to perform his or her job, inhibits a student's ability to
  participate in the educational process or is disruptive to the educational
  environment.

- Masks or cloth face coverings are also recommended outside when social
  distancing is not possible.

- Masks or cloth face coverings should be required anytime social distancing and
  cohorting cannot be maintained. Face shields may be added, but are not a
  replacement for masks.

Minutes of the August 18 Blue Valley board meeting reflecting its adoption of
"Navigating Change" are attached as Exhibit B.

Since Blue Valley's adoption of "Navigating Change," it has enforced a mask
requirement by requiring all persons entering its buildings to wear face masks to prevent the
further spread of coronavirus.

2

Blue Valley allows students to request a medical exemption from the mask requirement, using the form attached as Exhibit C. The District requires that form to be signed by certain categories of licensed health care providers. In many cases, this helps Blue Valley's effort to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101. Those laws each obligate Blue Valley to provide reasonable accommodations to persons with disabilities who desire access to Blue Valley's facilities. In addition, students with disabilities who have Individual Education Plans in accordance with the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.,* may use the processes spelled out by that law to seek modifications or accommodations to their IEPs.

On March 16, 2021, the Kansas Legislature approved SB40. Governor Kelly signed that measure into law on March 24, and it took effect the following day. A complete copy of SB40 as enrolled is attached as Exhibit D.[1] That law generally allows employees, students, or parents and guardians of students to file a grievance challenging "any action, order or policy" of a school board that "mandates any action by any students or employees of a school district while on school district property." The law requires such grievances to be filed within 30 days after the challenged action, order or policy, requires hearings on such grievances to be conducted within 72 hours, and requires the local school board to render a decision on the grievance within seven days after the hearing is conducted.

On April 1, 2021, Blue Valley's Board of Education directed its Superintendent of Schools, Dr. Tonya Merrigan, or her designee to conduct hearings on any grievances filed under SB40, and to recommend to the Board a decision on the grievances. Dr. Merrigan designated a

---

[1] Although SB40 is 15 pages long, Section 1 is the part that applies to school districts.

3

local attorney, Roger Warren, to hear the first grievance filed under SB40 by plaintiffs Klingensmith, Myrick and Baker. Blue Valley's Board of Education upheld Mr. Warren's recommendation to deny their grievances.

In the meantime, the grandmother of a Blue Valley student filed suit in this Court purportedly under SB40. But Judge Robert Wonnell entered judgment for Blue Valley, finding among other things that SB40 could not be applied retroactively to allow challenges to decisions that local school boards made before the law's enactment. A copy of the judgment in *O'Hara v. Blue Valley* is attached as Exhibit E.

Since that time, Blue Valley has received five more grievances, three of which were filed by the plaintiffs Campbell, Rook, and Couch, an additional one of which was filed by plaintiff Terri Baker, and a fifth one filed by someone who is not a plaintiff in this case. Dr. Merrigan designated retired Johnson County District Court Judges Kevin Moriarty and Thomas Foster, to conduct those hearings, and in each case, they recommended that Blue Valley's Board of Education deny the grievances. Blue Valley's Board has adopted all of their recommendations, except that it is scheduled to meet to take up Couch's grievance on May 7, and may also take up the grievance filed by the individual who is not a party to this suit.

To date, Blue Valley has incurred $9,974.25 in hearing officer and court reporter fees. (This does not include the legal fees Blue Valley has incurred to defend the *O'Hara* suit, outside counsel expenses required to provide guidance on SB 40, nor the fees it is incurring to defend this suit.) Blue Valley's Chief Legal Officer has spent about 80 hours on these hearings. She estimates that Dr. Merrigan has spent about 20 hours contending with the hearings and the Board meetings that follow them; Blue Valley's Chief Communications Officer has spent about 20 hours fielding requests for information about the hearings and otherwise keeping the public

4

informed about them; Blue Valley's IT staff has spent about the same amount of time coordinating public access to the hearings (since SB40 requires them to be public). Each Board of Education member is believed to have spent at least six hours responding in one way, shape or form to SB40 since its enactment, including at meetings to consider hearing officer recommendations. (Notably, under K.S.A. 72-1137, school board members receive no compensation for any school district work they perform. So for most school board members, they must find a way to schedule their school board duties around their paying jobs, along with whatever other family responsibilities they have.)

Blue Valley has granted plaintiff Julie Myrick's request that her children be exempted from Blue Valley's mask requirement.

Silo Baker, the son of plaintiff Terri Baker and of plaintiffs' counsel, was not enrolled in Blue Valley at the time Terri Baker filed her SB40 grievances. Mr. and Ms. Baker have since purported to enroll Silo, but they have not actually sent him to school or otherwise allowed Blue Valley to serve him.

## II.    Argument and Authorities

### A.    SB40 may not be applied retroactively to an "action, order or policy" taken by Blue Valley months before the legislation took effect.

"The general rule is that a statute operates only prospectively unless there is clear language indicating the legislature intended otherwise. An exception to this rule has been employed when the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties." *State v. Wells*, 297 Kan. 741, 761 (2013) (internal citations omitted). A law affects substantive rights if it establishes the rights and duties of parties. *State of Kansas/State of Iowa ex rel. Sec'y of Soc. and Rehab. Svcs. v. Bohrer*, 286 Kan. 898, 905 (2008).

5

The District formally implemented the mitigation measures in "Navigating Change," including its mask requirements, in August 2020, and has been enforcing the mask requirement ever since. SB40 was adopted the following March, and nothing in the legislation reflects an intent that it apply retroactively, so as to call into question decisions Blue Valley and other school districts have made in the year since the COVID-19 pandemic took hold.

Further, SB40 is more than a procedural law. While it provides a new mechanism for certain persons to challenge school boards' COVID-related decisions, it also affects the District's substantive rights by imposing a new legal standard by which the legality of its COVID-related decisions are measured. Section 1(d)(1) of SB40 requires the Court to grant the relief requested by one challenging a school district decision "unless the court finds the action taken, order issued or policy adopted by the board of education is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose."

Keep in mind that school boards have been responding to the COVID-19 pandemic for over a year now, and that they have had to make their decisions based on sometimes-shifting evidence and scientific consensus, along with rapidly changing infection and hospitalization rates in their communities. These are precisely the types of discretionary decisions that Kansas has entrusted to its school boards since at least 2003, when the Legislature granted home rule power to local school boards.[2] By changing the legal standard applicable to school boards' COVID-19 responses, and by making that new standard effective immediately, before boards even have time to analyze their earlier decisions against the new standard, there can be no doubt that the SB40

---

[2] *See* K.S.A. 72-1138(e)(1) ("The board may transact all school district business and adopt policies that the board deems appropriate to perform its constitutional duty to maintain, develop and operate local public schools.")

effects a substantive change in the law. Hence, it may be applied only to school board actions taken after March 25, 2021.

The structure of SB40 also reflects the Legislature's intent that it not be applied retroactively because it would otherwise yield an absurd result. Like virtually every other school district and governmental body in the state, Blue Valley implemented its mask requirement months ago. Yet SB40 was adopted on March 24 and took effect almost immediately, while also requiring grievances challenging COVID mitigation measures to be filed within 30 days after the adoption of those measures. Applying SB40 literally, plaintiffs' suit and the grievances Blue Valley recently heard were all untimely, because they were all brought more than 30 days after Blue Valley adopted its mask requirement. The only way for SB40 to make sense is for it to apply only to actions taken by school boards *after* the law's effective date.

Judge Wonnell agreed with Blue Valley's arguments on this point in dismissing the *O'Hara* petition. Plaintiffs' petition in this case is fatally deficient because it does not specify the date of the SB40-triggering action by Blue Valley's Board that plaintiffs are challenging, so the Court can determine the timeliness of either their grievances or this suit.

Perhaps plaintiffs are claiming that the Board actions at issue are the denials of their grievances at various dates in April, as suggested by paragraphs 18, 12, 16, 22, 24 of their petition. If so, that argument has no merit. SB40 plainly contemplates two separate actions by a Board of Education: The first is an "action, order, or policy" the Board adopts "in response to such disaster emergency that affects the operation of any school or attendance center of such school district." SB40, Ex. D, Section 1(a)(1). The second is the Board's decision on a grievance challenging the earlier "action, order, or policy." SB40, Ex. D, Section 1(c)(2). Plaintiffs cannot conflate these two Board actions; the second action is the procedural mechanism for challenging

7

the first action, but denying a grievance is not itself an "action, order, or policy" that triggers SB40.

**B.      Plaintiffs are not challenging actions that SB40 regulates.**

SB40 provides a mechanism for certain persons to challenge actions, orders or policies of school boards in response to the COVID-19 pandemic. SB40 is not intended to act as a state-level ADA, yet that is at the heart of plaintiffs' petition: that their children should not be required to wear a mask because doing so interferes with their individual ability to learn.

SB40 is intended to work at a macro level, assessing the legality of a broad policy or order against a broad legal standard. If the policy or order is narrowly tailored to respond to the state of emergency and is the least restrictive means to achieve that purpose, it is legal under SB40 even if it might negatively affect someone with a disability. The standard set by SB40 is not one of perfection as to every person who might be affected by a COVID mitigation measure.

In assessing the legality of a mask requirement on a micro level (its application to an individual), the proper legal analysis as to non-students is whether (a) the school district is acting as a place of public accommodation at the time in question, and (b) whether the school district can reasonably accommodate someone's disability without an unreasonable modification or undue hardship. *Cf. Bauer v. Muscular Dystrophy Ass'n, Inc.*, 268 F.Supp.2d 1281 (D. Kan. 2003) (applying ADA). But this is not a claim that SB40 recognizes; such a claim must be brought under other laws like the ADA.[3]

As to students, two other federal laws are implicated, one of which requires the exhaustion of specialized administrative remedies for students such as "Silo" Baker, whom

---

[3] It is not clear from plaintiffs' petition whether the adult plaintiffs are complaining about Blue Valley's requirement that they wear masks. If they are, then their individual claims would be analyzed under the ADA.

8

paragraph 25 alleges to be covered by an IEP in Blue Valley. Under the Individuals with Disabilities Education Act, a parent seeking an accommodation for their child must first go through the IEP revision process contemplated by 20 U.S.C. § 1414(d), then the dispute resolution process required by 20 U.S.C. § 1415(f) if they are unhappy with the school district's decision. Courts have no jurisdiction over accommodation disputes relating to such children until the administrative dispute process has run its course. *See, e.g., A.F. ex rel. Christine B. v. Espanola Pub. Schools*, 801 F.3d 1245 (10th Cir. 2015) (Gorsuch, J.).

For students not covered by IEPs, a separate federal law applies. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, effectively mimics the ADA by requiring that recipients of federal funding (like Blue Valley) reasonably accommodate the disabilities of students who do not qualify under IDEA. The Department of Education has adopted regulations under Section 504 requiring that school districts implement procedural safeguards, including "an impartial hearing," and a "review procedure" to resolve disputes over accommodations. 34 C.F.R. § 104.36. Claims under Section 504 alleging failure to accommodate a public school student's disability must also be first pursued through these less-formal administrative channels, although school districts can comply with this regulation by adopting IDEA's procedural safeguards. *Id*; *Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.,* 559 F.Supp.2d 634 (E.D. Pa. 2008).

SB40 does not require a school district to anticipate every conceivable disability in tailoring its policies and orders; considering the short time between the law's effective date and the start of challenges under the law, that would have required extraordinary clairvoyance. Indeed, this is a compelling argument against applying it retroactively. But in any event, SB40 was not intended to require Boards of Education to convene a meeting to address every request a

parent might make for their child to receive an individual accommodation. Indeed, a mask requirement along with mechanisms through which school districts can consider individual exemption requests combine to provide the narrow tailoring that SB40 compels.

### C. Plaintiffs' petition fails to comply with this Court's Administrative Order 21-01.

Plaintiffs' petition is not verified. This Court's Administrative Order 21-01 requires that petitions filed under SB40 be "verified under oath or declaration under penalty of perjury." That alone requires the dismissal of plaintiffs' petition.

Acting under the authority granted by SB40, the Kansas Supreme Court has adopted its own administrative order for hearings under SB40, Administrative Order 2021-RL-032, attached as Exhibit F. While that order does not require petitions to be verified, this does not invalidate this Court's order. The Supreme Court order provides:

> These emergency rules should be read in conjunction with other applicable rules, statutes, and Supreme Court Administrative Orders. But these rules control if any provision of a (a) Supreme Court rule or order or (b) district court rule or order conflicts with these rules.

This Court may lawfully adopt its own orders to ensure that persons filing suits under SB40 are required to understand the gravity of their action. While SB40's constitutionality as to the Judicial Branch is not presently before this Court, Blue Valley has little doubt that it is highly disruptive to the Court's operations. Perhaps, litigants who have waited patiently for hearings on matters just as important as this case have seen their cases "bumped" because of the short deadline for a hearing set by the Legislature in SB40. And considering the number of cities and school districts in Johnson County (26 in total), plus the application of SB40 to the County Commission and Johnson County Community College, it was rational for this Court to use a verification requirement as one method to weed out nuisance claims. One seeking a temporary restraining order under K.S.A. 60-903 must file either a verified complaint or a supporting

10

affidavit to get such drastic relief. Surely it is not too much to ask the same of those who wish to

challenge a school board's effort to protect the health of its students and employees under

expedited procedures akin to those used when weighing motions for a temporary restraining

order.

**D.      Plaintiffs' interpretation of SB40 violates Article 6, Section 5 of the Kansas Constitution.**

Paragraph 4 of plaintiffs' petition (actually, the paragraph 4 appearing on page 4, as

opposed to the paragraph 4 on page 9) asserts that "no defendant school board has the authority

under SB40 to deny any these parents (sic) or any parent or student a first or second or any

sequential request for a SB40 hearing." Presumably, plaintiffs' interpretation of SB40 would

allow them to abuse the SB40 processes to challenge the same order over and over again,

requiring school districts to divert their personnel and resources away from educating children

and toward fighting plaintiffs' jihad. Or perhaps, when combined with plaintiffs' other

misinterpretation of SB40, they can try to invoke that law every time a school district denies

their request for a mask exemption. Either of these interpretations would result in an

unconstitutional application of SB40.

Article 6, Section 5 of the Kansas Constitution provides that "Local public schools under

the general supervision of the state board of education shall be maintained, developed and

operated by locally elected boards."

"The respective duties and obligations vested in the legislature and the local school

boards by the Kansas Constitution must be read together and harmonized so both entities may

carry out their respective obligations." *Unified Sch. Dist. No. 229 v. State of Kansas*, 256 Kan.

232, 253 (1994). The Kansas Supreme Court finds that the Legislature has unlawfully

encroached on school boards' constitutional authority when a statute "unduly interferes with or

11

hamstrings the local school board in performing its constitutional duty to maintain, develop, and operate the local public school system." *Gannon v. State*, 298 Kan. 1107, 1128 (2014) (authorizing constitutional challenges to school financing scheme adopted by Legislature based on student underachievement, reduction of necessary programs and services, and overall decreased school and district performance).

Blue Valley's experience with SB40 has not thus far led it to argue that SB40 is facially unconstitutional. Blue Valley hopes that between COVID-19 vaccinations and continued mitigation efforts, the storm will soon pass, thus averting the need to pursue direct relief under the Kansas Constitution. But plaintiffs' interpretation of SB40, if adopted by the Court, would almost certainly result in an as-applied violation of Article 6, Section 5. The Court can avoid this by rejecting plaintiffs' interpretation of the law under which they would be able to (a) initiate SB40 grievances, with their accompanying fire drills of hearings and decisions, in lieu of following accommodation processes dictated by other laws; (b) sue under SB40 when school districts follow those other laws in refusing SB40 hearing requests that just challenge accommodation decisions; and (c) ignore even rudimentary principles of collateral estoppel or res judicata.

The Court should therefore declare unambiguously that SB40 does not apply *at all* to the denial of individual requests for exemptions from a mask requirement. Rather, it covers only broad-based orders or policies of general application that a Board of Education adopts in response to COVID-19.

### E.    The claims of plaintiff Julie Myrick are moot.

Plaintiff Julie Myrick, on behalf of her children, has requested an exemption from Blue Valley's mask requirement, and Blue Valley has granted that request. Therefore, Ms. Myrick's claims are moot, and she should be dismissed from this case.

**F.      Plaintiff Terri Baker lacks standing to sue under SB40.**

Section 1(c)(1) of SB40 provides in pertinent part:

> An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or policy, may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was taken, order was issued or policy was adopted by the board of education. Any such request shall not stay or enjoin such action, order or policy.

When she filed SB40 grievances with Blue Valley, Ms. Baker's son Silo was not enrolled as a student in Blue Valley. As such she lacked standing to initiate a grievance under SB40, and this precludes her from any relief in this suit.

The Bakers have since reenrolled Silo in Blue Valley, though Blue Valley questions whether this was done in good faith, since they have still not allowed Blue Valley personnel to provide services to their son. This is yet another chapter in their ongoing efforts to game the enrollment system to gain an advantage in litigation. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866 (10th Cir. 2020) (affirming judgment that Terri Baker lacked standing to challenge Kansas laws and Blue Valley policies relating to vaccinations). But this does not change the fact that Terri Baker lacked standing when she filed her SB40 grievances.

**III.    Conclusion**

For these reasons, the Court should dismiss plaintiffs' petition against Blue Valley, and should assess costs against plaintiffs.

13

Respectfully Submitted,

**SPENCER FANE LLP**

/s/ W. Joseph Hatley

| W. Joseph Hatley | KS #12929 |
| Stephanie Lovett-Bowman | KS #24842 |

1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone:  (816) 474-8100
Fax:  (816) 474-3216
jhatley@spencerfane.com
slovettbowman@spencerfane.com

ATTORNEYS FOR UNIFIED SCHOOL
DISTRICT NO. 229, JOHNSON COUNTY,
STATE OF KANSAS; BLUE VALLEY
BOARD OF EDUCATION MEMBERS; AND
BRIAN DALEY

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2021, a copy of the above and foregoing was filed using the court's e-filing system and was served via email to linusbaker@prodigy.net.

/s/ W. Joseph Hatley
Attorney for Defendants

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*
WA 16533905.2

## VERIFICATION

STATE OF KANSAS      )
                               ) ss:
COUNTY OF JOHNSON    )

        The undersigned hereby verifies that the factual information in the foregoing MOTION TO DISMISS VERIFIED PETITION is true and correct to the best of her knowledge, information, and belief.

                                        Melissa Hillman
                                        Chief Legal Counsel and
                                        Authorized Representative

        Subscribed and sworn to before me, a Notary Public, on this 5th day of May, 2021.

                                          Notary Public

My Commission Expires:

June 15, 2024

KIM M. HENDRIX
Notary Public, State of Kansas
My Appointment Expires
June 15, 2024

15

# Navigating Change:

## KANSAS' GUIDE TO LEARNING AND SCHOOL SAFETY OPERATIONS



**KANSAS**
STATE DEPARTMENT OF
**EDUCATION**

*Kansas leads the world in the success of each student.*

Clerk of the District Court, Johnson County Kansas
05/05/21  04:03pm  LC
EXHIBIT A

**OPERATIONS**

HEALTH

## Wearing Masks, Cloth Face Coverings and other

- Best practices suggests that visitors, staff, and students should be required to wear masks or cloth face coverings while inside school facilities unless it inhibits the person's ability to perform his or her job, inhibits a student's ability to participate in the educational process or is disruptive to the educational environment.

- Masks or cloth face coverings are also recommended outside when social distancing is not possible.

- Masks or cloth face coverings should be required anytime social distancing and cohorting cannot be maintained. Face shields may be added, but are not a replacement for masks.

## Adopt Hygiene Measures

- All people are required to wash hands when they come to school and every hour.

- Teach and reinforce hand-washing with soap and water for at least 20 seconds, and increase monitoring to ensure adherence among students and staff.

  ○ If soap and water are not readily available, hand sanitizer that contains at least 60% alcohol can be used (for staff and older children who can safely use hand sanitizer).

  ○ Place hand hygiene stations at the entrances of the building.

- Encourage staff and students to practice social distancing whenever possible. Social distancing is defined as physical separation of a minimum of 6 feet.

- Encourage students and employees to sanitize their backpacks and personal

items at the beginning and end of the day and separate personal items into cubbies or baskets that are not shared with other students. Do not allow students to share lockers.

- Encourage staff and students to cover coughs and sneezes with a tissue. Used tissues should be thrown in the trash, and hands should be washed immediately with soap and water for at least 20 seconds.

- Encourage classes and employees to create their own hand signals to replace shaking hands, hugging or giving high-fives.

- Make sure that disinfectant and related supplies are available to all employees close to their workstations.

- Post signs at all entrances informing all who enter that they must:

  a. Not enter if they have a cough or fever.
  b. Maintain a minimum of 6-foot distance from one another.
  c. Not shake hands or engage in any unnecessary physical contact.

- Post signs in highly visible locations (e.g., school entrances, restrooms) that promote everyday protective measures and describe how to stop the spread of germs (such as by properly washing hands and properly wearing a mask or cloth face covering).

- Post signs in bathrooms with directions on how to effectively wash hands.

- Include messages about behaviors that prevent the spread of COVID-19 when communicating with staff and families (such as on school websites, in emails, and on school social media accounts).

- Employee handbooks and student handbooks should include information on how to recognize the signs of infection and directives not to come to school if sick.

### Considerations for nurse/health personnel

- Inventory and request necessary supplies for the health room and other building use. Examples: Personal Protective Equipment (PPE) - gloves, masks, face shields, gowns; touch-free thermometers; and sanitizers/cleanser, hand soap, tissues.

- Make sure, at minimum, surgical masks are available for health room staff members; any employee working with a medically fragile child; and any person exhibiting symptoms.

- A surgical mask plus face shield can be used during an interaction with students/staff that will likely aerosolize droplets. N95 masks should only be used by personnel who have been fit tested and as part of an established respiratory health program.

- Review health office/facility to minimize infection. Examples:

  ○ Provide a separate room for students/staff who might have COVID-19 or other communicable disease and are waiting for pickup. The room needs to be disinfected frequently and restricted to authorized staff and students.

  ○ Determine if an area separate from the nurse's office is necessary to care for students that need suctioning, tube feeding and nebulizers to minimize contact with potentially ill children.

  ○ Ensure furniture and other surfaces can be easily disinfected.

  ○ Ensure trash cans and other receptacles are no-touch.

- Examine equipment such as thermometers to determine if adjustments need to be made to increase sterilization and minimize chances of reinfection or if new equipment is needed.

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm  HT*
EXHIBIT A

4/6/2021                                                         BoardDocs® Pro

**Blue Valley School District No. 229**

**Minutes for Special Board of Education Meeting**

**Tuesday, August 18, 2020**

Blue Valley Northwest High School Performing Arts Center, 5:30pm
Virtually Live Streamed

**Members present**
Mike Seitz, Patrick Hurley, Stacy Obringer-Varhall (via Zoom), Tom Mitchell, Michele Benjamin, Amy Tysseling, Jodie Dietz

**Members absent:**
None.

## 1. Opening Items

**A. The Board of Education stood and recited the Pledge of Allegiance.**

**B. Called the meeting to order and approve the agenda as modified.**

*Board President Tom Mitchell called the meeting to order at 5:31pm.*

The Board approved the agenda with the following modifications:
* Renumbering of Opening Item 1. B., "Public Comments" to item 1.D.
* Renumbering of Opening Item 1.C., "Call the meeting to order" to item 1.B. and adding the approval of the modified agenda.
* Addition of Opening Item 1.C., "Administrative Presentation."

Motion by Amy Tysseling, second by Michele Benjamin.
Final Resolution: Motion Carries 6-0
Yea: Mike Seitz, Patrick Hurley, Tom Mitchell, Michele Benjamin, Amy Tysseling, Jodie Dietz
Not Present at Vote: Stacy Obringer-Varhall (Zoom connectivity issue)

Stacy Obringer-Varhall rejoined the meeting at 5:35pm.

**C. Received Administrative Presentation.**

Dr. Tonya Merrigan, Superintendent, David Stubblefield, Executive Director of School Administration, Dr. Chris Jenson, District Medical Consultant, and Tara Asher, District Coordinator of Health Services, presented information related to current COVID-19 findings, Gating Criteria, activities and athletics.

**D. Public Comments**

The Board of Education listened to over 90 minutes of Public Comment. Twenty-nine patrons brought concerns regarding the start of the school year to the Board of Education.

*Initials of patrons were gathered orally by the Board of Education Clerk and were written phonetically, and may not be the correct or complete initials.*

<u>M.M.</u> - M.M. asked for parent choice in determining the risk for participation in activities as well as discussed mental health concerns.

<u>J.R.</u> - J.R. expressed concerns over the gating criteria being one-dimensional. J.R. also stated mental health concerns.

<u>J.M.</u> - J.M. expressed concerns over the accuracy of metrics being used, and suggested liability waivers to protect school so that students could participate in activities and athletics.

<u>C.W.</u> - C.W., a pediatrician, shared data regarding current COVID trends and expressed concerns over the gating criteria. C.W. expressed the desire for kids to be back in school.

<u>K.P.</u> - K.P., a teacher in a neighboring District, stated that they would be placing their Blue Valley students at a neighboring district due to limited choice from lack of childcare arrangements and financial implications. K.P. expressed concern over further exposure to teachers that a hybrid model would bring. K.P. asked the Board to reconsider the gating criteria.

<u>S.G.</u> - S.G. shared data regarding the Blue Valley High School dance team, and the precautions they took to be able to have tryouts and camp and various other activities. S.G. stated these events are proof that these events can still be done.

<u>E.W.</u> - E.W. asked the Board to reconsider the elementary exception on the Johnson County Gating Criteria. E.W. stated that Elementary students needed to be in school.

<u>S.R.</u> - S.R. stated the need for kids to be back in school and that a majority supported the current Johnson County protocols, but urged the Board to keep teachers in mind.

*Clerk of the District Court, Johnson County, Kansas*
*05/05/21  04:03pm JT*

EXHIBIT B

M.H. - M.H. stated that they owned two childcare centers with 200 children. M.H. stated information around area childcare centers in relation with COVID as well as services available or unavailable to parents. M.H. stated that if essential childcare workers could make childcare work with minimal incidents, then schools could as well.

M.B. - M.B. assured the audience and Board that they would be fighting for no financial cuts to schools and that legislators had their backs.

E.H. - Student E.H. expressed their desire for fall sports to continue and stated that student athletes would follow all guidelines to be able to play.

C.C. - C.C. disagreed with the gating criteria and expressed dissatisfaction with the manner in which it was approved.

P.S. - P.S. shared data regarding influenza, COVID, and infection rates. P.S. also expressed concern with the validity of current data, and asked that education be separate from athletics, and that parents not be excluded from the conversation.

D.S. - D.S. spoke in defense of activities and athletics continuing and discussed the disparage of club sports vs school sponsored sports. D.S. asked the Board to support the parents right to choose.

L. - L., a healthcare worker, expressed concern over the validity of data being used and stated that the Johnson County criteria should be set aside and parents should be able to choose to sign a COVID release for activities.

Name Not Heard - A District parent stated that it was vital for kids to attend school in person, and expressed concern over students falling behind as well as virtual education concerns. They also expressed concerns regarding the hybrid model, and stated that teachers were essential workers and needed to be in classrooms.

K.M. - K.M., Blue Valley coach and teacher, expressed concerns over the hybrid model. K.M. asked the Board to follow the advice of health care professionals because it is not worth losing kids. K.M. stated some things are bigger than sports and that we should want to reduce loss in our community.

E.S. - E.S., parent of Special Needs students, expressed concerns over the risk of virtual school not meeting IEP and Special Education needs and expressed the desire for an in person environment.

S.S. - Student S.S. stated that if the Board really cares, they should let them attend school in person.

M.C. - M.C., a District Elementary music teacher, expressed concerns over the return to school in person and if it could be done safely.

S.R. - S.R., a Blue Valley teacher, expressed the anxiety of teachers returning to school, and thanked the Board for the gating criteria, and implored them to keep it.

D.B. - D.B., a parent and District educator, expressed a desire for in person, five day a week school. D.B. expressed concerns over the gating criteria data and hybrid model.

A.T. - A.T., a parent and teacher, expressed concern over the hybrid model and childcare causing more exposure. A.T. also expressed concern over classroom set up and social distancing options. A.T. asked the Board to uphold their decision, keeping safety and health at the forefront of their decision.

M.H. - Student M.H. expressed concern over scholarship unavailability, stress, and mental health issues if sports are unable to continue.

M.R. - M.R. spoke in favor of sports continuing, and expressed concerns over mental health and lost scholarship opportunities.

L.B. - Student L.B. spoke on behalf of band students and stated that continuing in activities should be a choice and requested a normal season.

B.H. - B.H. expressed concern over the gating criteria data and methodology and asked the Board to create their own criteria.

A.A. - A.A. stated that Blue Valley education could not be duplicated at home and asked the Board to reconsider the gating criteria and stated that school was essential.

J.T. - J.T. requested that the Board revise the learning modes for Elementary School and stated the benefits outweighed the risks. J.T. stated concerns over the hybrid model and expressed the desire for the elderly to be removed from the gating data.


## 2. New Business

### A. The Board of Education Discussed the 2020-2021 School Gating Criteria.

**The Board of Education moved to rescind the Johnson County gating criteria for the 2020-2021 school year adopted by the Board of Education during its regularly scheduled board meeting on August 10, 2020.** Overland Park, Kansas

Motion by Amy Tysseling, second by Mike Seitz.

05/05/21  04:03pm JT

EXHIBIT B

Final Resolution: Motion Carries 7-0
Yea: Mike Seitz, Patrick Hurley, Stacy Obringer-Varhall, Tom Mitchell, Michele Benjamin, Amy Tysseling, Jodie Dietz

**The Board of Education moved to adopt the Kansas State Department of Education Navigating Change 2020 gating criteria utilizing local district data where available.**

Motion by Amy Tysseling, second by Michele Benjamin.
Final Resolution: Motion Carries 7-0
Yea: Mike Seitz, Patrick Hurley, Stacy Obringer-Varhall, Tom Mitchell, Michele Benjamin, Amy Tysseling, Jodie Dietz

## 3. Closing Items

### A. Adjournment.

Board of Education President Tom Mitchell entertained a motion for adjournment.

Motion by Mike Seitz, second by Amy Tysseling.
Final Resolution: Motion Carries 7-0
Yea: Mike Seitz, Patrick Hurley, Stacy Obringer-Varhall, Tom Mitchell, Michele Benjamin, Amy Tysseling, Jodie Dietz

*The August 18, 2020 Special Board of Education meeting concluded at 10:00pm.*

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT B



# Request for Face Mask Medical Exemption

*Masks/Face Coverings prohibit the spread of the virus even when the infected person is without symptoms.*
Based upon recommendations from the Centers for Disease Control and Prevention, American Academy of Pediatrics, and Kansas State Board of Education, students and staff will utilize masks/face coverings to reduce the spread of COVID-19 in schools. Masks/face coverings will be required indoors at all times and during all classes, including PE classes, weightlifting, etc. Students may be provided outdoor fresh air breaks to accommodate for this new school practice. The guideline set forth for wearing masks in school includes:

*Mask Availability:*
- The district will have masks available for employees. Employees should understand they may choose to wear masks they have chosen independently. Masks will be provided if and when an employee forgets a covering at home.
- The district will have masks available for students. Students may choose to wear masks they have chosen with their family independently. Masks will be provided if and when a student forgets a covering at home or soils their mask at school, making it incapable of safely being worn.

*Mask Should:*
- Be worn by staff and students at all times, only removing when eating or drinking, when outside for recess and during other physical activities when social distancing can be achieved.
- Fit snugly but comfortably against the side of the face and be secured with ties or ear loops.
- Include multiple layers of fabric, allowing for breathing without restrictions while covering both mouth and nose.
- Be able to be laundered and machine dried without damage or change to shape.

---------------------------------------------------------------------------------------------------------

There may be specific situations where a student might have a medical reason to avoid mask usage. **In order for students to be exempt from wearing a mask/facial covering, a discussion with a medical provider needs to occur (M.D., D.O., P.A. or NP).** This discussion should assess the risks and benefits of wearing a mask in school and recommended alternatives (ex: face shield). If an exemption is approved, the student will be flagged in our system, and not be required to wear a face covering. Please return this completed form to your student's school nurse.

Student Name_____Grade_____Date of Birth_____

Parent Name: _____Parent Signature: _____

The above named student has requested a medical waiver for an exemption to masks/face coverings. As a result, the Blue Valley School District requires medical verification.

**QUESTION #1:** Is it medically necessary for this student to **NOT** wear a mask to school?

◯ Yes      ◯ No   Please provide an explanation:

**QUESTION #2:** Is the family aware of the Johnson County Department of Health and Environment guidelines to send unmasked students home for 10 days when a direct contact exposure occurs?      ◯ Yes      ◯ No

**QUESTION #3:** Is this student able to wear a face shield in lieu of a mask?      ◯ Yes      ◯ No

Signature of Health Care Provider: _____Date: _____

Health Care Providers Name (Printed): _____

Address/Phone: _____

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*
*\*\*This form must be completed for each student in which you are requesting a waiver*

EXHIBIT C

SENATE BILL No. 40

AN ACT concerning governmental response to certain emergencies; prescribing powers, duties and functions of the board of education of each school district, the governing body of each community college and the governing body of each technical college related to the COVID-19 health emergency and establishing judicial review thereof; adding the vice president of the senate to the legislative coordinating council; modifying the procedure for the declaration and extension of a state of disaster emergency under the Kansas emergency management act; authorizing the legislative coordinating council and the legislature to take certain actions related to a state of disaster emergency; prohibiting certain actions by the governor related to the COVID-19 health emergency and revoking all executive orders related to such emergency on March 31, 2021; limiting powers granted to the governor during a state of disaster emergency; establishing judicial review for certain executive orders issued during a state of disaster emergency and certain actions taken by a local unit of government during a state of local disaster emergency; providing criminal penalties for a knowing violation of certain executive orders; adding 911 call center public safety telecommunicators and physician assistants to the definition of emergency responder; authorizing the legislature or the legislative coordinating council to revoke certain orders issued by the secretary of health and environment; limiting powers granted to local health officers related to certain orders and establishing judicial review thereof;  amending K.S.A. 46-1201, 65-101 and 75-3711 and K.S.A. 2019 Supp. 48-925, as amended by section 4 of 2021 Senate Bill No. 14, and K.S.A. 2020 Supp. 48-924, as amended by section 2 of 2021 Senate Bill No. 14, 48-924b, as amended by section 3 of 2021 Senate Bill No. 14, 48-925a, as amended by section 6 of 2021 Senate Bill No. 14, 48-932, 48-939, 48-949 and 65-201 and repealing the existing sections; also repealing K.S.A. 2019 Supp. 48-925, as amended by section 5 of 2021 Senate Bill No. 14, and K.S.A. 2020 Supp. 48-925b.

*Be it enacted by the Legislature of the State of Kansas:*

New Section 1.    (a) (1) During the state of disaster emergency related to the COVID-19 health emergency described in K.S.A. 2020 Supp. 48-924b, and amendments thereto, only the board of education responsible for the maintenance, development and operation of a school district shall have the authority to take any action, issue any order or adopt any policy made or taken in response to such disaster emergency that affects the operation of any school or attendance center of such school district, including, but not limited to, any action, order or policy that:

(A)   Closes or has the effect of closing any school or attendance center of such school district;

(B)   authorizes or requires any form of attendance other than full-time, in-person attendance at a school in the school district, including, but not limited to, hybrid or remote learning; or

(C)   mandates any action by any students or employees of a school district while on school district property.

(2)   An action taken, order issued or policy adopted by the board of education of a school district pursuant to paragraph (1) shall only affect the operation of schools under the jurisdiction of the board and shall not affect the operation of nonpublic schools.

(3)   During any such disaster emergency, the state board of education, the governor, the department of health and environment, a local health officer, a city health officer or any other state or local unit of government may provide guidance, consultation or other assistance to the board of education of a school district but shall not take any action related to such disaster emergency that affects the operation of any school or attendance center of such school district pursuant to paragraph (1).

(b)   Any meeting of a board of education of a school district discussing an action, order or policy described in this section, including any hearing by the board under subsection (c), shall be open to the public in accordance with the open meetings act, K.S.A. 75-4317 et seq., and amendments thereto, and may be conducted by electronic audio-visual communication when necessary to secure the health and safety of the public, the board and employees.

(c) (1)   An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or

SENATE BILL No. 40—page 2

policy, may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was taken, order was issued or policy was adopted by the board of education. Any such request shall not stay or enjoin such action, order or policy.

(2)   Upon receipt of a request under paragraph (1), the board of education shall conduct a hearing within 72 hours of receiving such request for the purposes of reviewing, amending or revoking such action, order or policy. The board shall issue a decision within seven days after the hearing is conducted.

(3)   The board of education may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

(d)   (1)   An employee, a student or the parent or guardian of a student aggrieved by a decision of the board of education under subsection (c)(2) may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the board. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the board of education is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.

(2)   Relief under this section shall not include a stay or injunction concerning the contested action taken, order issued or policy adopted by the board of education that applies beyond the county in which the petition was filed.

(3)   The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

New Sec. 2.   (a) (1) During the state of disaster emergency related to the COVID-19 health emergency described in K.S.A. 2020 Supp. 48-924b, and amendments thereto, only the governing body of a community college, as established pursuant to K.S.A. 71-201, and amendments thereto, or the governing body of a technical college, as established pursuant to K.S.A. 74-32,452, and amendments thereto, shall have the authority to take any action, issue any order or adopt any policy made or taken in response to such disaster emergency that affects the operation of the community college or technical college governed by such governing body, including, but not limited to, any action, order or policy that:

(A)   Closes or has the effect of closing any community college or technical college;

(B)   authorizes or requires any form of attendance at any community college or technical college; or

(C)   mandates any action by any students or employees of a community college or technical college while on college property.

(2)   During any such disaster emergency, the state board of regents, the governor, the department of health and environment, a local health officer, a city health officer, the Kansas association of community college trustees, the Kansas technical college association or any other state or local unit of government may provide guidance, consultation or other assistance to the governing body of a community college or

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT D

SENATE BILL No. 40—page 3

technical college, but shall not take any action related to such disaster emergency that affects the operation of any such college.

(b)   Any meeting of a governing body of a community college or technical college discussing an action, order or policy described in this section, including any hearing by such governing body under subsection (c), shall be open to the public in accordance with the open meetings act, K.S.A. 75-4317 et seq., and amendments thereto, and may be conducted by electronic audio-visual communication when necessary to secure the health and safety of the public, the governing body and employees.

(c) (1)   An employee or a student aggrieved by an action taken, order issued or policy adopted by the governing body of a community college or technical college pursuant to subsection (a)(1), or an action of any employee of such college violating any such action, order or policy, may request a hearing by such governing body to contest such action, order or policy. Any such request shall not stay or enjoin such action, order or policy.

(2)   Upon receipt of a request under paragraph (1), the governing body shall conduct a hearing within 72 hours of receiving such request for the purposes of reviewing, amending or revoking such action, order or policy. The governing body shall issue a decision within seven days after the hearing is conducted.

(3)   The governing body may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

(d) (1)   An employee or a student aggrieved by a decision of the governing body under subsection (c)(2) may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the governing body. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the governing body is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.

(2)   Relief under this section shall not include a stay or injunction concerning the contested action taken, order issued or policy adopted by the governing body that applies beyond the county in which the petition was filed.

(3)   The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

Sec. 3.   K.S.A. 46-1201 is hereby amended to read as follows: 46-1201. (a) There is hereby established the legislative coordinating council which shall have seven (7) *eight* members. Such members shall be the president of the senate, the speaker of the house of representatives, *the vice president of the senate,* the speaker pro tem of the house of representatives, the majority leader of the senate, the majority leader of the house of representatives, the minority leader of the senate, and the minority leader of the house of representatives.

(b)   In even-numbered years, the speaker of the house of representatives shall be chairman *chairperson* of the legislative

SENATE BILL No. 40—page 4

coordinating council, and the president of the senate shall be ~~vice chairman thereof~~ *vice chairperson*. In odd-numbered years, the president of the senate shall be ~~chairman~~ *chairperson* of the legislative coordinating council, and the speaker shall be ~~vice chairman thereof~~ *vice chairperson*.

(c)   The legislative coordinating council shall meet at least once each month in the interim between legislative sessions. Such council shall meet on the call of ~~its chairman~~ *the chairperson* or any three members of the council. The director of legislative administrative services, director of legislative research, revisor of statutes and each member of the legislature shall be given notice of each meeting of the council by ~~its chairman~~ *the chairperson*, except in cases of emergency. Each such notice shall state the date, time and place of the meeting. The ~~chairman~~ *chairperson* also shall cause minutes to be prepared for each meeting of the council, and a copy thereof shall be sent to each person who is required to receive notice of the council's meetings by this subsection. It shall not be necessary to transmit with such minutes any accompanying documents for any item of business, but the minutes shall indicate whether there are supportive documents for any item of business, the nature of such documents and where they are filed or stored.

Sec. 4.   K.S.A. 2020 Supp. 48-924, as amended by section 2 of 2021 Senate Bill No. 14, is hereby amended to read as follows: 48-924. (a) The governor shall be responsible for meeting the dangers to the state and people presented by disasters.

(b) (1)   Subject to the provisions of K.S.A. 2020 Supp. 48-924b, and amendments thereto, the governor, upon finding that a disaster has occurred or that occurrence or the threat thereof is imminent, shall issue a proclamation declaring a state of disaster emergency.

(2)   In addition to or instead of the proclamation authorized by K.S.A. 47-611, and amendments thereto, the governor, upon a finding or when notified pursuant to K.S.A. 47-611, and amendments thereto, that a quarantine or other regulations are necessary to prevent the spread among domestic animals of any contagious or infectious disease, may issue a proclamation declaring a state of disaster emergency. In addition to or instead of any actions pursuant to the provisions of K.S.A. 2-2114, and amendments thereto, the governor, upon a finding or when notified pursuant to K.S.A. 2-2112 et seq., and amendments thereto, that a quarantine or other regulations are necessary to prevent the spread among plants, raw agricultural commodities, animal feed or processed food of any contagious or infectious disease, may issue a proclamation declaring a state of disaster emergency.

(3)   The state of disaster emergency so declared shall continue until the governor finds that the threat or danger of disaster has passed, or the disaster has been dealt with to the extent that emergency conditions no longer exist. Upon making such findings the governor shall terminate the state of disaster emergency by proclamation, but except as provided in paragraph (4), no state of disaster emergency may continue for longer than 15 days unless ratified by concurrent resolution of the legislature, with the single exception that upon specific application by the governor to the ~~state finance council~~ *legislative coordinating council* and an affirmative vote of ~~a majority~~ *five* of the ~~legislative~~ members thereof, a state of disaster emergency may be extended ~~once for a~~ specified ~~period not to exceed 30 days beyond such 15-day period~~ *periods not to exceed 30 days each*.

(4)   If the state of disaster emergency is proclaimed pursuant to paragraph (2), the governor shall terminate the state of disaster emergency by proclamation within 15 days, unless ratified by

SENATE BILL No. 40—page 5

concurrent resolution of the legislature, except that when the legislature is not in session and upon specific application by the governor to the ~~state finance~~ *legislative coordinating* council and an affirmative vote of ~~a majority of the legislative~~ *five* members thereof, a state of disaster emergency may be extended for a specified period not to exceed 30 days. The ~~state finance~~ *legislative coordinating* council may authorize additional extensions of the state of disaster emergency by ~~a unanimous~~ *an affirmative* vote of ~~the legislative~~ *five* members thereof for specified periods not to exceed 30 days each. ~~No such extension granted by the state finance council shall continue past March 31, 2021.~~ Such state of disaster emergency shall be terminated on the 15th day of the next regular legislative session following the initial date of the state of disaster emergency unless ratified by concurrent resolution of the legislature.

(5)   The state of disaster emergency described in K.S.A. 2020 Supp. 48-924b, and amendments thereto, shall terminate ~~on September 15, 2020,~~ *as provided in K.S.A. 2020 Supp. 48-924b,* and amendments thereto, except that when the legislature is not in session or is adjourned during session for three or more days, and upon specific application by the governor to the ~~state finance~~ *legislative coordinating* council and an affirmative vote of ~~at least six of the legislative members of the council~~ *five members thereof,* this state of disaster emergency may be extended for specified periods not to exceed 30 days each. ~~No such extension granted by the state finance council shall continue past March 31, 2021.~~

(6)   At any time, the legislature by concurrent resolution may require the governor to terminate a state of disaster emergency. Upon such action by the legislature, the governor shall issue a proclamation terminating the state of disaster emergency.

(7)   Any proclamation declaring or terminating a state of disaster emergency ~~which~~ *that* is issued under this ~~subsection~~ *section* shall indicate the nature of the disaster, the area or areas *of the state* threatened or affected by the disaster and the conditions ~~which~~ *that* have brought about, or ~~which~~ *that* make possible the termination of, the state of disaster emergency. Each such proclamation shall be disseminated promptly by means calculated to bring its contents to the attention of the general public and, unless the circumstances attendant upon the disaster prevent the same, each such proclamation shall be filed promptly with the division of emergency management, the office of the secretary of state and each city clerk or county clerk, as the case may be, in the area *or areas of the state* to which such proclamation applies.

(c)   In the event of the absence of the governor from the state or the existence of any constitutional disability of the governor, an officer specified in K.S.A. 48-1204, and amendments thereto, in the order of succession provided by that section, may issue a proclamation declaring a state of disaster emergency in the manner provided in and subject to the provisions of subsection ~~(a)~~ *(b)*. During a state of disaster emergency declared pursuant to this subsection, such officer may exercise the powers conferred upon the governor by K.S.A. 48-925, and amendments thereto. If a preceding officer in the order of succession becomes able and available, the authority of the officer exercising such powers shall terminate and such powers shall be conferred upon the preceding officer. Upon the return of the governor to the state or the removal of ~~any~~ *the* constitutional disability of the governor, the authority of an officer to exercise the powers conferred by this section shall terminate immediately and the governor shall resume the full powers of the office. Any *such* state of disaster emergency and any actions taken by an officer under this subsection shall continue and shall have full force and effect as authorized by law unless modified or terminated by the governor in the manner prescribed by law.

SENATE BILL No. 40—page 6

(d)   A proclamation declaring a state of disaster emergency shall activate the disaster response and recovery aspects of the state disaster emergency plan and of any local and interjurisdictional disaster plans applicable to the ~~political subdivisions or~~ areas *of the state and any political subdivisions thereof* affected by the proclamation. Such proclamation shall ~~be~~ *constitute the* authority *necessary* for the deployment and use of any forces to which the plan or plans apply and for use or distribution of any supplies, equipment, materials or facilities assembled, stockpiled or arranged to be made available pursuant to this act during a disaster.

(e)   The governor, when advised pursuant to K.S.A. 74-2608, and amendments thereto, that conditions indicative of drought exist, ~~shall be~~ *is* authorized to declare by proclamation that a state of drought exists. This declaration of a state of drought can be for specific areas or communities, can be statewide or for specific water sources and shall effect immediate implementation of drought contingency plans contained in state approved conservation plans, including those for state facilities.

Sec. 5.   K.S.A. 2020 Supp. 48-924b, as amended by section 3 of 2021 Senate Bill No. 14, is hereby amended to read as follows: 48-924b. (a) The state of disaster emergency that was declared by the governor pursuant to K.S.A. 48-924, and amendments thereto, as a result of the COVID-19 health emergency, by proclamation on March 12, 2020, which was ratified and continued in force and effect through May 1, 2020, by 2020 House Concurrent Resolution No. 5025, adopted by the house of representatives with the senate concurring therein on March 19, 2020, declared by proclamation on April 30, 2020, which was extended and continued in existence by the state finance council on May 13, 2020, for an additional 12 days through May 26, 2020, and declared by proclamation on May 26, 2020, which was ratified and continued in existence through September 15, 2020, by this section, extended and continued in existence by the state finance council on September 11, 2020, for an additional 30 days through October 15, 2020, extended and continued in existence by the state finance council on October 7, 2020, for an additional 30 days through November 15, 2020, extended and continued in existence by the state finance council on November 13, 2020, for an additional 30 days through December 15, 2020, extended and continued in existence by the state finance council on December 11, 2020, for an additional 26 days through January 10, 2021, ~~and~~ extended and continued in existence by the state finance council on January 6, 2021, for an additional 16 days through January 26, 2021, *and ratified and continued in existence through March 31, 2021, by this section* for all 105 counties of Kansas, is hereby ratified and continued in existence from March 12, 2020, through ~~March 31~~ *May 28*, 2021.

(b)   The governor shall not proclaim any new state of disaster emergency related, *in whole or in part*, to the COVID-19 health emergency, *including, but not limited to, any economic, financial or other crisis caused by such emergency*, during 2020 or 2021, unless the governor makes specific application to the ~~state finance~~ *legislative coordinating* council and an affirmative vote of ~~at least six of the legislative~~ *five* members ~~of the council approve~~ *thereof approves* such action by the governor.

(c)   *Notwithstanding any other provision of law to the contrary, all executive orders issued during the state of disaster emergency ratified and continued in existence pursuant to this section related to the COVID-19 health emergency are hereby revoked on March 31, 2021, and shall be null and void. Any new executive orders issued during the state of disaster emergency ratified and continued in existence*

SENATE BILL No. 40—page 7

*pursuant to subsection (a) or during a state of disaster emergency authorized pursuant to subsection (b) that are related to the COVID-19 health emergency shall be subject to revocation by the legislature or the legislative coordinating council pursuant to K.S.A. 48-925, and amendments thereto.*

Sec. 6.    K.S.A. 2019 Supp. 48-925, as amended by section 4 of 2021 Senate Bill No. 14, is hereby amended to read as follows: 48-925. (a) During any state of disaster emergency declared under K.S.A. 48-924, and amendments thereto, the governor shall be commander-in-chief of the organized and unorganized militia and of all other forces available for emergency duty. To the greatest extent practicable, the governor shall delegate or assign command authority by prior arrangement, embodied in appropriate executive orders or in rules and regulations of the adjutant general, but nothing ~~herein~~ shall restrict the authority of the governor to do so by *executive* orders issued at the time of a disaster.

(b)    Under the provisions of this act and for the implementation of this act, the governor may issue *executive* orders to exercise the powers conferred by subsection (c) that have the force and effect of law during the period of a state of disaster emergency declared under K.S.A. 48-924(b), and amendments thereto, or as provided in K.S.A. 2020 Supp. 48-924b, and amendments thereto. ~~Within 24 hours of the issuance of any such order,~~ The ~~governor~~ *chairperson of the legislative coordinating council* shall call a meeting of the ~~state finance~~ council *to occur within 24 hours of the issuance of an executive order issued pursuant to this section* for the purposes of reviewing such order. Such *executive* orders shall be null and void after the period of a state of disaster emergency has ended. Such *executive* orders may be revoked at any time by concurrent resolution of the legislature *or, when the legislature is not in session or is adjourned during session for three or more days, such orders may be revoked by the legislative coordinating council with the affirmative vote of five members thereof.*

(c)    *Except as provided in K.S.A. 2020 Supp. 48-924b, and amendments thereto,* during a state of disaster emergency declared under K.S.A. 48-924, and amendments thereto, in addition to any other powers conferred upon the governor by law and subject to the provisions of ~~subsection (d), (e) and (f)~~ *subsections (d) and (e)*, the governor may:

(1)    Suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders or rules and regulations of any state agency which implements such statute, if strict compliance with the provisions of such statute, order or rule and regulation would prevent, hinder or delay in any way necessary action in coping with the disaster;

(2)    utilize all available resources of the state government and of each political subdivision as reasonably necessary to cope with the disaster;

(3)    transfer the supervision, personnel or functions of state departments and agencies or units thereof for the purpose of performing or facilitating emergency management activities;

(4)    subject to any applicable requirements for compensation under K.S.A. 48-933, and amendments thereto, commandeer or utilize any private property if the governor finds such action necessary to cope with the disaster;

(5)    direct and compel the evacuation of all or part of the population from any area of the state stricken or threatened by a disaster, if the governor deems this action necessary for the preservation of life or other disaster mitigation, response or recovery;

(6)    prescribe routes, modes of transportation and destinations in

SENATE BILL No. 40—page 8

connection with such evacuation;

(7)   control ingress and egress of persons and animals to and from a disaster area, the movement of persons and animals within the area and the occupancy by persons and animals of premises therein;

(8)   suspend or limit the sale, dispensing or transportation of alcoholic beverages, explosives and combustibles;

(9)   make provision for the availability and use of temporary emergency housing;

(10)   require and direct the cooperation and assistance of state and local governmental agencies and officials; and

(11)   perform and exercise such other functions, powers and duties in conformity with the constitution and the bill of rights of the state of Kansas and with the statutes of the state of Kansas, except any regulatory statute specifically suspended under the authority of subsection (c)(1), as are necessary to promote and secure the safety and protection of the civilian population.

(d)   The governor shall not have the power or authority to ~~temporarily or permanently seize, or authorize seizure of, any ammunition or to suspend or limit the sale, dispensing or transportation of firearms or ammunition~~ *limit or otherwise restrict the sale, purchase, transfer, ownership, storage, carrying or transporting of firearms or ammunition, or any component or combination thereof, including any components or combination thereof used in the manufacture of firearms or ammunition, or seize or authorize the seizure of any firearms or ammunition, or any component or combination thereto, except as otherwise permitted by state or federal law* pursuant to subsection (c)(8) or any other executive authority.

(e)   ~~Notwithstanding any provision of this section to the contrary and pursuant to the governor's state of disaster emergency proclamation issued on May 26, 2020, the governor shall not have the power or authority to restrict businesses from operating or to restrict the movement or gathering of individuals. The provisions of this subsection shall expire on September 15, 2020.~~

~~(f)~~   The governor shall not have the power under the provisions of the Kansas emergency management act or the provisions of any other law to alter or modify any provisions of the election laws of the state including, but not limited to, the method by which elections are conducted or the timing of such elections.

~~(g)~~*(f)*   The governor shall exercise the powers conferred by subsection (c) by issuance of *executive* orders under subsection (b). Each *executive* order issued pursuant to the authority granted by subsection (b) shall specify the provision or provisions of subsection (c) by specific reference to each paragraph of subsection (c) that confers the power under which the *executive* order was issued. The adjutant general, subject to the direction of the governor, shall administer such *executive* orders.

~~(h)~~*(g)* *(1)   Any party aggrieved by an executive order issued pursuant to this section that has the effect of substantially burdening or inhibiting the gathering or movement of individuals or the operation of any religious, civic, business or commercial activity, whether for-profit or not-for-profit, may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after the issuance of such executive order. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds such executive order is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. The court*

SENATE BILL No. 40—page 9

*shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.*

*(2)   Relief under this section shall not include a stay or injunction concerning the contested executive order that applies beyond the county in which the petition was filed.*

*(3)   The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.*

*(h) (1)*   The board of county commissioners of any county may issue an order relating to public health that includes provisions that are less stringent than the provisions of an executive order effective statewide issued by the governor. Any board of county commissioners issuing such an order must make the following findings and include such findings in the order:

(1)*(A)*   The board has consulted with the local health officer or other local health officials regarding the governor's executive order;

(2)*(B)*   following such consultation, implementation of the full scope of the provisions in the governor's executive order are not necessary to protect the public health and safety of the county; and

(3)*(C)*   all other relevant findings to support the board's decision.

*(2)   If the board of county commissioners of a county issues an order pursuant to paragraph (1), such order shall operate in the county in lieu of the governor's executive order.*

Sec. 7.   K.S.A. 2020 Supp. 48-925a, as amended by section 6 of 2021 Senate Bill No. 14, is hereby amended to read as follows: 48-925a. (a) During any state of disaster emergency related to the COVID-19 public health emergency declared pursuant to K.S.A. 48-924, and amendments thereto, the governor may not issue an order that substantially burdens or inhibits the gathering or movement of individuals or operation of any religious, civic, business or commercial activity, whether for-profit or not-for-profit.

(b)   Any order issued that violates or exceeds the restrictions provided in subsection (a) shall not have the force and effect of law during the period of a state of disaster emergency declared under K.S.A. 48-924(b), and amendments thereto, and any such order shall be null and void.

(c)   The provisions of this section shall expire on March 31, 2021.

Sec. 8.   K.S.A. 2020 Supp. 48-932 is hereby amended to read as follows: 48-932. (a) A state of local disaster emergency may be declared by the chairman *chairperson* of the board of county commissioners of any county, or by the mayor or other principal executive officer of each city of this state having a disaster emergency plan, upon a finding by such officer that a disaster has occurred or the threat thereof is imminent within such county or city. No state of local disaster emergency shall be continued for a period in excess of seven days or renewed, except with the consent of the board of county commissioners of such county or the governing body of such city. Any order or proclamation declaring, continuing or terminating a local disaster emergency shall be given prompt and general publicity and shall be filed with the county clerk or city clerk. Any such declaration may be reviewed, amended or revoked by the board of county commissioners or the governing body of the city, respectively, at a meeting of such governing body.

(b)   In the event of the absence of the chairman *chairperson* of the board of county commissioners from the county or the incapacity of such chairman *chairperson*, the board of county commissioners, by

SENATE BILL No. 40—page 10

majority action of the remaining members thereof, may declare a state of local disaster emergency in the manner provided in and subject to the provisions of subsection (a). In the event of the absence of the mayor or other principal executive officer of a city from the city or the incapacity of such mayor or officer, the governing body of the city, by majority action of the remaining members thereof, may declare a state of local disaster emergency in the manner provided in and subject to the provisions of subsection (a). Any state of local disaster emergency and any actions taken pursuant to applicable local and interjurisdictional disaster emergency plans, under this subsection shall continue and have full force and effect as authorized by law unless modified or terminated in the manner prescribed by law.

(c)   The declaration of a local disaster emergency shall activate the response and recovery aspects of any and all local and interjurisdictional disaster emergency plans which are applicable to such county or city, and shall initiate the rendering of aid and assistance thereunder.

(d)   No interjurisdictional disaster agency or any official thereof may declare a local disaster emergency, unless expressly authorized by the agreement pursuant to which the agency functions. However, an interjurisdictional disaster agency shall provide aid and services in accordance with the agreement pursuant to which it functions in the case of a state of local disaster emergency declared under subsection (a).

*(e) (1)   Any party aggrieved by an action taken by a local unit of government pursuant to this section that has the effect of substantially burdening or inhibiting the gathering or movement of individuals or the operation of any religious, civic, business or commercial activity, whether for-profit or not-for-profit, may file a civil action in the district court of the county in which such action was taken within 30 days after such action is taken. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds such action is narrowly tailored to respond to the state of local disaster emergency and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.*

*(2)   Relief under this section shall not include a stay or injunction concerning the contested action that applies beyond the county in which the action was taken.*

*(3)   The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.*

Sec. 9.   K.S.A. 2020 Supp. 48-939 is hereby amended to read as follows: 48-939. (a) *(1) Except as provided in paragraph (2),* a person who intentionally violates any provision of this act, any rule and regulation adopted by the adjutant general under this act or any lawful order or proclamation issued under authority of this act whether pursuant to a proclamation declaring a state of disaster emergency under K.S.A. 48-924, and amendments thereto, or a declaration of a state of local disaster emergency under K.S.A. 48-932, and amendments thereto, may incur a civil penalty in an amount not to exceed $2,500 per violation. Each penalty may be assessed in addition to any other penalty provided by law.

*(2)   A knowing violation of an executive order issued pursuant to*

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT D

SENATE BILL No. 40—page 11

*K.S.A. 48-925, and amendments thereto, that mandates a curfew or prohibits public entry into an area affected by a disaster is a class A nonperson misdemeanor.*

(b)   Violations of ~~this section~~ *subsection (a)(1)* shall be enforced through an action brought under chapter 60 of the Kansas Statutes Annotated, and amendments thereto, by the attorney general or the county or district attorney in the county in which the violation took place. Civil penalties sued for and recovered by the county or district attorney shall be paid into the general fund of the county where the proceedings were instigated.

(c)   The attorney general or any county or district attorney may bring an action to enjoin, or to obtain a restraining order, against a person who has violated, is violating or is otherwise likely to violate this act.

Sec. 10.   K.S.A. 2020 Supp. 48-949 is hereby amended to read as follows: 48-949. As used in ~~this~~ *the Kansas intrastate emergency mutual aid* act:

(a)   "Division" means the division of emergency management within the office of the adjutant general.

(b)   "Emergency responder" means any person in the public or private sector who: (1) Has special skills, qualifications, training, knowledge and experience which would be beneficial to a participating political subdivision in response to a locally-declared emergency as defined in any applicable law or ordinance or authorized drill or exercises; and (2) is requested or authorized, or both, to respond. An emergency responder may or may not be required to possess a license, certificate, permit or other official recognition for the emergency responder's expertise in a particular field or area of knowledge. "Emergency responder" ~~may include~~ *includes*, but is not limited to, the following: Law enforcement officers, ~~fire fighters~~ *firefighters, 911 call center public safety telecommunicators*, emergency medical services personnel, physicians, nurses, *physician assistants,* public health personnel, emergency management personnel, public works personnel and persons with skills or training in operating specialized equipment or other skills needed to provide aid in a declared emergency.

Sec. 11.   K.S.A. 65-101 is hereby amended to read as follows: 65-101. (a) The secretary of health and environment shall exercise general supervision of the health of the people of the state and may:

(1)   Where authorized by any other statute, require reports from appropriate persons relating to the health of the people of the state so a determination of the causes of sickness and death among the people of the state may be made through the use of these reports and other records;

(2)   investigate the causes of disease, including especially, epidemics and endemics, the causes of mortality and effects of locality, employments, conditions, food, water supply, habits and other circumstances affecting the health of the people of this state and the causes of sickness and death;

(3)   advise other offices and agencies of government concerning location, drainage, water supply, disposal of excreta and heating and ventilation of public buildings;

(4)   make sanitary inspection and survey of such places and localities as the secretary deems advisable;

(5)   take action to prevent the introduction of infectious or contagious disease into this state and to prevent the spread of infectious or contagious disease within this state;

(6)   provide public health outreach services to the people of the state including educational and other activities designed to increase the individual's awareness and appropriate use of public and other

SENATE BILL No. 40—page 12

preventive health services.

(b)    The secretary of health and environment may adopt rules and regulations necessary to carry out the provisions of ~~paragraphs (1) through (6), inclusive, of~~ subsection (a). In addition to other remedies provided by law, the secretary is authorized to apply to the district court, and such court shall have jurisdiction upon a hearing and for cause shown to grant a temporary or permanent injunction to compel compliance with such rules and regulations.

*(c)    In the event of a state of disaster emergency declared by the governor pursuant to K.S.A. 48-924, and amendments thereto, or a state of local disaster emergency declared pursuant to K.S.A. 48-932, and amendments thereto, the legislature may revoke an order issued by the secretary to take action related to such disaster emergency as provided in this subsection. Such order may be revoked at any time by concurrent resolution of the legislature or, when the legislature is not in session or is adjourned during session for three or more days, such order may be revoked by the legislative coordinating council with the affirmative vote of five members thereof.*

Sec. 12.   K.S.A. 2020 Supp. 65-201 is hereby amended to read as follows: 65-201. (a) The board of county commissioners of each county shall act as the county board of health for the county. Each county board shall appoint a person licensed to practice medicine and surgery, preference being given to persons who have training in public health, who shall serve as the local health officer and who shall act in an advisory capacity to the county board of health. The appointing authority of city-county, county or multicounty health units with less than 100,000 population may appoint a qualified local health program administrator as the local health officer if a person licensed to practice medicine and surgery or person licensed to practice dentistry is designated as a consultant to direct the administrator on program and related medical and professional matters. The local health officer or local health program administrator shall hold office at the pleasure of the board.

(b) *(1)    Except as provided in paragraph (2),* any order issued by the local health officer, including orders issued as a result of an executive order of the governor, may be reviewed, amended or revoked by the board of county commissioners of the county affected by such order at a meeting of the board. Any order reviewed or amended by the board shall include an expiration date set by the board and may be amended or revoked at an earlier date by a majority vote of the board.

*(2)    If a local health officer determines it is necessary to issue an order mandating the wearing of face masks, limiting the size of gatherings of individuals, curtailing the operation of business, controlling the movement of the population of the county or limiting religious gatherings, the local health officer shall propose such an order to the board of county commissioners. At the next regularly scheduled meeting of the board or at a special meeting of the board, the board shall review such proposed order and may take any action related to the proposed order the board determines is necessary. The order shall become effective if approved by the board or, if the board is unable to meet, if approved by the chairperson of the board or the vice chairperson of the board in the chairperson's absence or disability.*

(c)    The board of county commissioners in any county having a population of less than 15,000 may contract with the governing body of any hospital located in such county for the purpose of authorizing such governing body of the hospital to supply services to a county board of health.

*(d) (1)    Any party aggrieved by an order issued pursuant to subsection (b)(2) may file a civil action in the district court of the*

SENATE BILL No. 40—page 13

*county in which the order was issued within 30 days after such order is issued. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds such order is narrowly tailored to the purpose stated in the order and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.*

*(2)   Relief under this section shall not include a stay or injunction concerning the contested action that applies beyond the county in which the action was taken.*

*(3)   The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.*

Sec. 13.   K.S.A. 75-3711 is hereby amended to read as follows: 75-3711. (a) The governor shall:

(1)   Hear and determine appeals by any state agency from final decisions or final actions of the secretary of administration or the director of computer services.

(2)   Approve, modify and approve or reject proposed rules and regulations submitted by the secretary of administration as provided in K.S.A. 75-3706, and amendments thereto.

(3)   Make allocations to, and approve expenditures by a state agency, from any appropriations to the governor for that purpose, of funds for unanticipated and unbudgeted needs, under guidelines and limitations prescribed by K.S.A. 75-3711c, and amendments thereto, or other legislative enactment enhancing or altering K.S.A. 75-3711c, and amendments thereto.

(4)   Exercise powers and perform functions specified for the state finance council or governor by the Kansas civil service act.

(b) (1)   The chairperson and five or more other members of the state finance council shall constitute a quorum. Approval by the governor and approval by a majority vote of the legislative members of the state finance council shall govern, unless a unanimous vote is required by statute in any particular case.

(2)   Whenever a matter is to be acted on by the state finance council and a unanimous vote is required to approve the particular matter by K.S.A. ~~48-924,~~ 75-3713, 75-3713b or 75-3713c, and amendments thereto, or by any other statute, each member who is unable to attend the meeting at which the matter was voted on, may vote on the motion by written absentee vote in the manner prescribed by this subsection. In any such case, an absent member may vote on the motion by ~~(A)~~ writing the member's signature on a copy of the resolution setting forth the matter that is the subject of the motion, writing the date and indicating the member's vote for or against adoption of the resolution~~,~~ and ~~(B)~~ submitting the copy of the resolution bearing the absentee vote to the secretary of the state finance council either before or not more than 10 days after the date of the meeting at which the motion was voted on. The secretary of the state finance council shall maintain each copy of a resolution bearing an absentee vote as part of the minutes and records of the meeting at which the motion on the resolution was voted on. The secretary shall indicate in the minutes of the meeting the name of each member voting in writing by absentee vote and the date on which the absentee vote was submitted to the secretary. If a particular matter requiring a unanimous vote receives the affirmative vote of each member of the state finance

*Clerk of the District Court, Johnson County Kansas*
*05/05/21   04:03pm JT*

EXHIBIT D

SENATE BILL No. 40—page 14

council attending the meeting and the affirmative absentee vote pursuant to this subsection of each member not attending the meeting, then the matter shall be deemed to have received the unanimous vote of all members of the state finance council.

(c)   Whenever statutes provide for any matter to receive state finance council action, ~~the same~~ *such matter* shall be made a matter of business before ~~said~~ *such* council, if and only if the matter is characterized as a legislative delegation, and in other such cases the governor shall exercise the function specified for the state finance council by applying the guidelines and limitations of K.S.A. 75-3711c, and amendments thereto, or other legislative enactment enhancing or altering ~~the same~~ *such function*.

New Sec. 14.   The provisions of this act are severable. If any portion of the act is declared unconstitutional or invalid, or the application of any portion of the act to any person or circumstance is held unconstitutional or invalid, the invalidity shall not affect other portions of the act that can be given effect without the invalid portion or application, and the applicability of such other portions of the act to any person or circumstance shall remain valid and enforceable.

Sec. 15.   K.S.A. 46-1201, 65-101 and 75-3711 and K.S.A. 2019 Supp. 48-925, as amended by section 4 of 2021 Senate Bill No. 14, and 48-925, as amended by section 5 of 2021 Senate Bill No. 14, and K.S.A. 2020 Supp. 48-924, as amended by section 2 of 2021 Senate Bill No. 14, 48-924b, as amended by section 3 of 2021 Senate Bill No. 14, 48-925a, as amended by section 6 of 2021 Senate Bill No. 14, 48-925b, 48-932, 48-939, 48-949 and 65-201 are hereby repealed.

SENATE BILL No. 40—page 15

Sec. 16.   This act shall take effect and be in force from and after its publication in the Kansas register.

I hereby certify that the above BILL originated in the SENATE, and passed that body

_____

SENATE adopted
    Conference Committee Report _____

                                        _____
                                                    *President of the Senate.*

                                        _____
                                                    *Secretary of the Senate.*

Passed the HOUSE
        as amended _____

HOUSE adopted
    Conference Committee Report _____

                                        _____
                                                    *Speaker of the House.*

                                        _____
                                                    *Chief Clerk of the House.*

APPROVED _____

                                        _____
                                                    *Governor.*

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT D

21CV01464
Div6

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
### CIVIL COURT DEPARTMENT

CHARLOTTE I. O'HARA,                              )
                                                 )
    Plaintiff,                )
                                                 )
    v.                        )   **Case No. 21CV01464**
                                                 )   **Court No. 6**
BLUE VALLEY SCHOOL DISTRICT (USD 229)             )
and                                              )
BLUE VALLEY SCHOOL DISTRICT BOARD                 )
OF EDUCATION,                                     )
                                                 )
    Defendants.               )

### JOURNAL ENTRY OF JUDGMENT

The above case, filed under Kansas Senate Bill 40 (2021), came on for hearing before the Court on April 9, 2022. Plaintiff Charlotte I. O'Hara appeared *pro se*. Defendant Unified School District No. 229, Johnson County, State of Kansas, appeared through its counsel W. Joseph Hatley and Stephanie Lovett-Bowman.

As a preliminary matter, the Court notes that this matter is being heard under special procedural rules included established by SB40. Plaintiff filed her petition on April 7, 2021 at 2:39 p.m. Section 1(d)(1) of SB40 requires the Court to conduct hearings on petitions filed against school districts under SB40 within 72 hours after the Court receives such a petition. The hearing on plaintiff's petition commenced at 3:00 p.m., within the time required by SB40. Both plaintiff and defendant were allowed to be heard on plaintiff's petition, and the Court finds and concludes that SB40 has been complied with.

The Court notes that defendant filed a motion to dismiss plaintiff's petition, and the Court first heard argument on that motion. After hearing argument from counsel for defendant and from plaintiff *pro se*, the Court announces that it is prepared to rule on defendant's motion, and that defendant's motion should be GRANTED. The following is the basis for the Court's ruling:

1

*Clerk of the District Court, Johnson County Kansas*
*04/28/2021 10:00am AHT*

EXHIBIT E

1.      Plaintiff lacks standing to file her petition. The part of SB40 applicable to school districts (Section 1) allows only certain individuals to seek relief: employees of a school district, students in a school district, or parents or guardians of such a student. Plaintiff's petition alleges that she is the grandparent of a student attending defendant's schools, but this is not sufficient to confer standing on plaintiff to bring this action.

2.      SB40 represents a substantive change in the law, for the reasons stated by defendant in its motion to dismiss. Since SB40 does not expressly reflect a legislative intent that it be applied retroactively, and since it effects a substantive change in the law, it may not be applied retroactively.

3.      Plaintiff may be able to pursue claims arising from this under other laws, but not under SB40.

4.      Defendant also argued that plaintiff had not been harmed by defendant's requirement that she wear a mask at the scheduled April 6 hearing, since that hearing was postponed and conducted virtually the following day. The Court will not rule on this argument, since there may be a factual dispute relevant to this defense, and resolution of this argument is not essential to the Court's decision.

IT IS THEREFORE ORDERED that defendant's motion to dismiss be GRANTED, and that plaintiff's petition be DISMISSED WITH PREJUDICE.

/s/ ROBERT WONNELL
Dated: 04/28/21

_____
Hon. Robert J. Wonnell
Judge of the District Court

APPROVED AS TO FORM:

_____
Charlotte I. O'Hara, *pro se*
15712 Windsor Street

2

Overland Park, Kansas 66224
913-304-4148
charlotteiohara@gmail.com
Plaintiff *pro se*

SPENCER FANE LLP

/s/ W. Joseph Hatley_____
W. Joseph Hatley     KS #12929
Stephanie Lovett-Bowman     KS #24842
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone:  (816) 474-8100
Fax:  (816) 474-3216
jhatley@spencerfane.com
slovettbowman@spencerfane.com

ATTORNEYS FOR DEFENDANTS

3          *Clerk of the District Court, Johnson County Kansas*
           *04/20/2021 10:00am AH*

                                    EXHIBIT E

# IN THE SUPREME COURT OF THE STATE OF KANSAS

FILED

### Administrative Order

April 13, 2021

2021-RL-032

DOUGLAS T. SHIMA
CLERK OF APPELLATE COURTS

## Emergency Rules of Procedure for Hearings under 2021 Senate Bill 40

2021 Senate Bill 40 provides the supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of district court hearings requested under 2021 Senate Bill 40.

The court approves these emergency rules of procedure with an understanding some petitioners may be unrepresented. Accordingly, failure to comply with this order or complete the attached forms is not a reason for a clerk to reject a submission. A court must allow a petitioner to supplement the petition with omitted information required by this order when justice so requires.

Under the authority of 2021 Senate Bill 40, the court adopts the following emergency rules of procedure.

## Petition

1. To assist district courts in prioritizing cases for hearing, the petition must clearly state in the case caption or document title that the petition is filed under 2021 Senate Bill 40.

2. The person filing the petition (also called the petitioner) must state the petitioner's or the petitioner's attorney's address, e-mail address, telephone number, and fax number (if available).

3. The petitioner must identify the county in which the petitioning party resides, county in which the challenged action was taken, or name of the county where the order was issued, as applicable under 2021 Senate Bill 40, and amendments thereto.

4. The petitioner must identify the body or entity whose decision, action, or order the petitioner is challenging.

5. The petitioner must identify the date the decision, action, or order which the petitioner is challenging was issued or taken.

1

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT F

6. The petitioner must identify and describe the decision, action, or order the petitioner is challenging.

7. The petitioner must briefly state the relief the petitioner is requesting.

8. The petitioner must list any other action he or she has previously filed involving a common question of law or fact. The petition must list where the action was filed, when the action was filed, and the case number (if available).

9. A form to assist petitioners with filing the petition is attached to this order and is available from the Office of Judicial Administration. If the form is not used, the filing should be in substantial compliance with the information on the form.

**Certificate of Service**

10. The petitioner must file a certificate of service listing the date and time that the petition was served on the body or entity responsible for the challenged decision, action, or order.

11. A form to assist petitioners with filing a certificate of service is attached to this order and is available from the Office of Judicial Administration. If the form is not used, the filing should be in substantial compliance with the information on the form.

**Consolidation**

12. Consolidation is permitted under existing Kansas statutes and Supreme Court Rules, including K.S.A. 60-242, and amendments thereto, to the extent practicable under 2021 Senate Bill 40's time constraints.

13. Any party may file notice of related actions involving a common question or law or fact.

**Documents Deposited in a Drop Box**

14. Any document deposited in a district court drop box for self-represented litigants must contain a signed statement of when the document was deposited in the district court drop box. If a document does not include this information, the court will deem the document received at 9:00 a.m. on the next day that is not a Saturday, Sunday, or Supreme Court holiday.

2   *Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*

EXHIBIT F

Failure to include some or all of the information listed in this order does not deprive the reviewing court of jurisdiction over the action.

These emergency rules should be read in conjunction with other applicable rules, statutes, and Supreme Court Administrative Orders. But these rules control if any provision of a (a) Supreme Court rule or order or (b) district court rule or order conflicts with these rules.

Dated this 13th day of April 2021.

FOR THE COURT

MARLA LUCKERT
Chief Justice

Attachments

3        *Clerk of the District Court, Johnson County Kansas*
         *05/05/21  04:03pm JT*
         EXHIBIT F

IN THE DISTRICT COURT OF _____COUNTY, KANSAS

_____ )
*(Name of person who filed the Petition)* )
                                          )
v.                                        )          Case No. _____
                                          )
_____ )
*(Name of person or entity who did not file the Petition)* )

## INSTRUCTIONS—READ CAREFULLY

This form is intended to assist you in filing an action under 2021 Senate Bill 40. You must:

- submit your answers in writing (legibly handwritten or typewritten);
- complete each applicable section of the form;
- provide your or your attorney's address, e-mail address, telephone number, and fax number (if available);
- attach a certificate of service (or file a separate certificate of service); and
- sign the form.

## PETITION
(Under 2021 Senate Bill 40; Supreme Court Administrative Order 2021-RL-032)

The Petitioner (the person who is filing this action), _____, alleges and states as follows:

1) **I reside in _____ County;**

2) **I am challenging the following decision, action, or order under 2021 SB 40: [Check one of the following five options, selecting the one that fits your grievance, and complete information under that box.]**

    ☐**A Decision of the Board of Education of a School District** [2021 SB 40, Sec. 1(d)]
        Name of the school district: _____
        Date of the decision you are challenging: _____
        I am [check the applicable line]
            ☐ an employee of the school district,
            ☐ a student of the school district, or
            ☐ a parent or guardian of a student of the school district.

☐ **A Decision of the Governing Body of a Community College or Technical College**
[2021 SB 40, Sec. 2(d)]

Name of the Governing Body of the community college or technical college:

_____

Date of the decision you are challenging: _____

I am [check the applicable line]

☐ an employee of the community college or technical college, or

☐ a student of the community college or technical college.

☐ **An Executive Order from the Governor** [2021 SB 40, Sec. 6(g)]

Name or subject of the order you are challenging: _____

Date of the executive order you are challenging: _____

☐ **A Local Unit of Government Action Issued During a State of Local Disaster Emergency**
[2021 SB 40, Sec. 8(e)]

Name of local unit of government: _____

Name or subject of the action you are challenging: _____

Date of the action you are challenging: _____

☐ **An Order issued by a Local Health Officer and Approved by the Board of County Commission, Chairperson of the Board, or Vice-chairperson of the Board**
[2021 SB 40, Sec. 12(d)]

Name or subject of the order you are challenging: _____

Date of the order you are challenging: _____

3) **Briefly describe the decision, action, or order you are challenging. If you have a document or documents that describe(s) the decision, action, or order you may attach it/them to this petition:**

4) **Briefly describe how you are aggrieved by the decision, action, or order you are challenging. If you are challenging an executive order of the governor [under 2021 SB 40, Sec. 6(g)] or a local unit of government action issued during a state of local disaster emergency [under 2021 SB 40, Sec. 8(e)], explain how the order or action substantially burdens or inhibits (a) your ability to gather with others, (b) your movement, or (c) any religious, civic, business, or commercial activity, whether for-profit or not-for-profit, with which you are involved, explaining your involvement.**

5) **Briefly describe the relief you are requesting (In other words, what do you want the court to do?):**

6) **List any other court cases you have previously filed involving the decision, action, or order you are challenging in this case. List where the case was filed, when the case was filed, and the case number (if available).**

_____
Petitioner or Petitioner's Attorney

Name (Print): _____
Address 1: _____
Address 2: _____
City, State, Zip: _____
Telephone: _____
[Fax Number, if available]:_____
[E-mail Address]: _____

**(Attach a certificate of service listing the date and time this petition was served on the body or entity responsible for the challenged decision, action, or order. If you have not yet completed service, you must file a separate certificate of service with the clerk of the court.)**

_____
Signature of Petitioner

Page **3** of **3**    _Clerk of the District Court, Johnson County Kansas_
                       _05/05/21  04:03pm JT_

EXHIBIT F

IN THE DISTRICT COURT OF _____ COUNTY, KANSAS

_____
*(Name of person who filed the Petition)*

Case No. _____

and

_____
*(Name of person who did not file the Petition)*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that service of the attached document, _____,
was accomplished as follows:

| Name | Manner of Service | Date/Time |
|------|-------------------|-----------|
|      |                   |           |
|      |                   |           |
|      |                   |           |
|      |                   |           |
|      |                   |           |

_____
Signature, name and title of individual
accomplishing service

Name (Print): _____
Address 1:_____
Address 2:_____
City, State, Zip:_____
Telephone:_____
[Fax Number (if available)]:_____
[E-mail Address]: _____

*Clerk of the District Court, Johnson County Kansas*
*05/05/21  04:03pm JT*
EXHIBIT F